# EXHIBIT A

State Court of Fulton County
**E-FILED**
20EV006633
11/9/2020 2:09 PM
LeNora Ponzo, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

GINA SPEARMAN,

    Plaintiff,

v.

BROKER SOLUTIONS, INC., d/b/a NEW AMERICAN FUNDING,

    Defendant.

Case No. _____

## COMPLAINT FOR DAMAGES

Plaintiff, Gina Spearman, files the following claims for damages and respectfully shows the Court as follows:

**1. PARTIES AND JURISDICTION**

1. Plaintiff is a Georgia resident.

2. Defendant, Broker Solutions, Inc., d/b/a New American Funding ("NAF"), is a California corporation with its principal place of business located in Tustin, California. NAF may be served with process through its registered agent, Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

3. NAF is subject to personal jurisdiction of this Court because NAF transacts business in this County and is registered to conduct business in Georgia.

4. This Court has subject matter jurisdiction over the claims asserted herein.

5. Venue properly lies in Fulton County.

## 2. NAF HIRES SPEARMAN

6. NAF originates residential mortgage loans throughout the continental United States.

7. On or about November 6, 2016, NAF made an Offer of Employment to Ms. Spearman ("Letter Offer").

8. NAF and Ms. Spearman executed the Letter Offer on November 6, 2016.

9. Attached to the Letter Offer was NAF's Regional Manager Agreement ("Agreement") also executed by Ms. Spearman on November 6, 2016.

10. NAF hired Ms. Spearman as a Senior Vice-President and Regional Manager for NAF's newly-created Southeast Division.

11. NAF acknowledged that Ms. Spearman's "knowledge, skills and expertise will be among our most valuable assets."

12. NAF hired Ms. Spearman due to her experience and expertise as a mortgage broker.

13. Prior to November 2016, NAF had no presence in the Southeastern region.

14. NAF sought to leverage Ms. Spearman's expertise to create and develop NAF's presence in the Southeast.

15. During her employment, Ms. Spearman was instrumental in opening offices on behalf of NAF in the Southeastern region, staffing those offices with well-qualified loan officers, directing them, and developing NAF's Southeastern Division.

16. NAF and Spearman executed an amendment to the Agreement on March 1, 2020 ("Amendment").

17. Ms. Spearman resigned effective April 13, 2020.

### III.     NAF BREACHES THE AGREEMENT

#### A. NAF unilaterally tried to modify the Agreement

18. By its express terms, the Agreement may not be modified or amended by verbal agreement, or course of conduct, but only by a written agreement presented by Human Resources, COO (Christy Bunce) or CEO (Rick Arvielo). NAF's own documents require any change to compensation be made by a written agreement presented by HR, the COO or CEO.

##### i. NAF reduced Ms. Spearman's compensation without her consent and did not place such changes in writing.

19. Under the Agreement, NAF promised to compensate Ms. Spearman in a variety of ways, including commissions and a monthly override bonus as set forth on Schedule 1 to the Agreement ("Override Bonus").

20. Paragraphs 1.3 and 1.4 of Schedule 1 to the Agreement delineate the terms of Ms. Spearman's Override Bonus.

21. NAF failed to pay Ms. Spearman her Override Bonuses.

22. Ms. Spearman notified several company executives of NAF's failure to comply with this provision. Specifically, Ms. Spearman notified NAF's officers, Christy Bunce, Jon Reed, and Jan Preslo, that she was not being compensated in accordance with Agreement.

23. NAF's officers did not respond to Ms. Spearman.

24. In August 2018, Christy Bunce reaffirmed the value of NAF's partnership with Ms. Spearman and admitted then that NAF did not discuss or change the terms of Ms. Spearman's Schedule 1.

25. In November 2018, Ms. Spearman advised NAF about concerns she had with NAF's new policy decision to reduce Loan Officer compensation on DPA/Bond loans which might

disincentivize a Loan Officer from offering a Down Payment Assistance loan to a client in violation of the Dodd-Frank Act.

26. In January and February of 2019, Ms. Spearman again voiced her concern over NAF's introduction of two (2) new source codes that might incentivize a Loan Officer to charge higher rates to customers in order to earn higher bps.

27. In February 2019 at a Leadership Meeting, NAF told Ms. Spearman that her compensation was being reduced for a period of ninety (90) days to assist the Company during a period of financial difficulty stemming from the Company's misallocation of thirty million dollars ($30,000,000.00).

28. Additionally, NAF told Ms. Spearman that the she and other Senior Vice-Presidents would have to pay for Pricing Exceptions beyond a certain tolerance and would have to absorb all marketing costs.

29. It was not until this February 2019 Leadership Meeting that NAF told Ms. Spearman for the first time that it was reducing her compensation.

30. NAF never modified Ms. Spearman's Agreement in writing to reflect these purported changes in compensation until March 1, 2020.

31. NAF breached the Agreement by failing to pay Ms. Spearman the Override Bonuses and improperly forced her to pay for Pricing Exceptions and absorb marketing costs.

32. As a result of NAF's conduct, Ms. Spearman has suffered damages in the amount of $544,383.00 in unpaid Override Bonuses.

33. As a result of NAF's conduct, Ms. Spearman has suffered damages in the amount of $466,046.00 for certain Pricing Exceptions and marketing costs that NAF improperly deducted from Ms. Spearman's pay.

34. Before the Parties signed the March 1, 2020 Schedule 1, Ms. Spearman expressed her disagreement with NAF's new payment practices that deviated from the terms of her written Agreement with NAF to NAF officers, and Ms. Spearman told NAF that she did not consent to them.

### ii. NAF shrinks Ms. Spearman's territory.

35. In November 2019, NAF further reduced Ms. Spearman's compensation by unilaterally removing the Tennessee and Virginia territories from her market area.

36. Ms. Spearman spent three (3) years investing her expertise, time and funds to create the branches in these territories.

37. Just as these branches were to turn a profit for which Ms. Spearman would recoup her investment, NAF removed these territories from her domain without consultation.

38. Ms. Spearman was not consulted by NAF in making this decision.

39. As a result of NAF shrinking Ms. Spearman's territory, she has suffered damages.

40. NAF breached the Agreement by unilaterally withdrawing territories from Ms. Spearman's Region which she had developed and for which NAF should have paid bonuses.

41. Ms. Spearman has suffered damages for the expense she incurred in developing the Tennessee and Virginia territories and for bonuses NAF refused to pay when these territories turned a profit.

### B. Ms. Spearman issued a demand letter to NAF.

42. On July 27, 2020, Ms. Spearman sent a letter demanding NAF to pay her the amounts that she is owed in an attempt to resolve this matter. NAF refused and has forced Ms. Spearman to file this action.

## COUNT I
## (Breach of Contract)

43. Ms. Spearman incorporates by reference paragraphs 1 through 42 above as if fully set forth herein verbatim.

44. NAF had a duty to perform all material provisions of the Agreement.

45. NAF breached the Agreement.

46. As a result of NAF's breaches of the Agreement, Ms. Spearman has sustained and is entitled to recover damages in an amount to be determined at trial.

47. Ms. Spearman is entitled to recover interest on the amounts NAF owes from the date the amounts were due at the legal rate.

48. Ms. Spearman is entitled to recover attorneys' fees and other costs and expenses related to NAF's defaults.

49. NAF has acted in bad faith, has been stubbornly litigious, and has caused Ms. Spearman unnecessary trouble and expense, which also entitles her to recover her costs, expenses, and reasonable attorneys' fees for which NAF is legally responsible pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Ms. Spearman requests the Court:

a) Enter judgment for all damages to which she is entitled to recover in an amount to be determined by the enlightened conscience of the jury;

b) Award Ms. Spearman her costs, expenses, and reasonable attorneys' fees related to enforcing its rights;

c) Have a trial by jury; and

d) Award such other and further relief as this Court deems just and proper.

Respectfully submitted, this 9th day of November, 2020.

*/s/ Marybeth V. Gibson*
MARYBETH V. GIBSON
Georgia Bar No. 725843

**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Telephone: (404) 320-9979
Facsimile: (404) 320-9978
mgibson@thefinleyfirm.com
*Counsel for Plaintiff*

7