IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GINA SPEARMAN, | ) |
| *Plaintiff*, | ) ) |
| v. | ) Civil Action No. 1:20-cv-04981-CAP ) |
| BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING, | ) ) ) |
| *Defendant.* | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Broker Solutions, Inc. d/b/a New American Funding ("NAF"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 15(a)(3), respectfully submits the following reply in support of its Motion to Dismiss the Amended Complaint of Plaintiff Gina Spearman ("Plaintiff"), showing the Court as follows:

## I.   INTRODUCTION

Both the Offer Letter and Regional Manager Agreement (the "Agreement") presented to and signed by Plaintiff expressly provided that NAF could change Plaintiff's compensation in its sole discretion. To avoid this dispositive language, Plaintiff first argues that NAF did not sign the Agreement, ignoring that she received compensation for years under the terms of the Agreement. Plaintiff then argues, contrary to this Court's decision in *Hollan*, that a written agreement had to

16244187v5

be presented to her to effectuate any changes in her compensation even though she recognizes that she did not have to consent to such changes. In so doing, Plaintiff relies on a fundamentally illogical construct to avoid the plain and controlling words of the Agreement (and the Offer Letter).

Here, the Court can hold, based <u>solely</u> on Plaintiff's factual allegations, that the Agreement was valid notwithstanding Plaintiff's legal conclusion that it was not. Indeed, Plaintiff alleges that (1) she signed the Agreement after it was presented by NAF (and she is the party against whom it is being enforced) (FAC ¶ 30); (2) the Agreement was attached to the Offer Letter (which was signed by both parties) (*Id.* ¶ 28-30); (3) the Offer Letter expressly incorporates the Agreement (including Schedule 1) (*Id.* ¶ 29; Ex. 1 at 2 ¶ 3); and (4) NAF clearly performed under the Agreement (FAC ¶¶ 51, 60). Plaintiff also brings claims for alleged Override Bonuses due to her (FAC ¶¶ 68-69, 97-98), when those Override Bonuses are detailed only in the Agreement and not in the Offer Letter. (*See* Ex. 1 at 2 ¶ 3.)

Understanding that the Agreement was valid, this Court's decision in *Hollan v. Web.com Group, Inc.*, No. 1:14-CV-00426-LMM-WEJ, 2015 WL 11237023, at *12 (N.D. Ga. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 11237033 (N.D. Ga. July 1, 2015), plainly applies to warrant dismissal of Plaintiff's claims whether

brought under the Agreement or the Offer Letter. In *Hollan*, a case on all fours with this dispute, this Court held that when an agreement allows an employer to change compensation in its sole discretion, while also requiring a written agreement for changes to the agreement's terms, a change in compensation is <u>not</u> a change to the agreement that triggers the requirement to do so by written agreement. *Id.* at *13. This is because, by changing compensation, the employer is simply exercising the discretion already afforded to it by the agreement's very terms.

Because the Agreement gave NAF the sole discretion to modify Plaintiff's compensation, such a modification was not a "change" to the Offer Letter's terms triggering the written-agreement requirement. Indeed, even the Offer Letter relied upon by Plaintiff as the controlling document, stated that NAF "may change the terms and conditions of your employment, including your position, duties, **compensation**, [and] benefits …." (Ex. 1 at 1 § 1 (emphasis added).) Thus, NAF did not breach the Agreement (or the Offer Letter) by simply making compensation changes without presenting Plaintiff with a formal amendment to the Agreement. Accordingly, the Court should dismiss Plaintiff's breach of contract claim as a matter of law.

In addition, Plaintiff's unjust enrichment claims are precluded by the existence of an express contract. Plaintiff's argument that the Agreement and Offer

Letter do not preclude her claims because they do not specifically mention pricing exceptions or marketing costs is wrong. Here, both documents specifically mention that NAF may change Plaintiff's compensation and benefits. (Ex. 1 at 1 § 1; at 13 § 5.2; at 26 § 4.) Because the allocation of pricing exceptions and marketing costs are part of Plaintiff's compensation and benefits, the contract precludes Plaintiff's unjust enrichment claim.

Plaintiff also argues that the Offer Letter and attached Agreement do not mention Plaintiff's pre-territory-change expenditures, and thus her other unjust enrichment claim should proceed. However, again, Plaintiff's pre-territory-change expenditures were encompassed within NAF's right to change her compensation, location/territory, and duties. (Ex. 1 at 1 § 1; at 22.) Accordingly, the contract precludes her unjust enrichment claim for pre-territory-change expenditures, and the Court should dismiss the entirety of this claim as a matter of law.

## II.   ARGUMENT AND CITATION TO AUTHORITY

**A.   Plaintiff's Breach of Contract Claim Fails Based on the Plain Rules of Contract Construction.**

**1. The Agreement (including the attached Schedule 1) was a valid contract and defeats Plaintiff's breach of contract claim as a matter of law.**

Based *solely* on Plaintiff's allegations, the Court should find that the Agreement was valid. Notably, the Agreement was not "unsigned" as Plaintiff

4

repeatedly claims. (*See* Response, Doc. No. [18] ("Resp.") at 9, 10, 11, 12, 17, and 18.) Rather, it was presented by NAF as part of NAF's signed offer of employment given to Plaintiff and was attached to the Offer Letter. (FAC ¶ 29.) Plaintiff then *simultaneously* signed the Offer Letter and the Agreement (with its attached Schedule 1 detailing the Override Bonuses now at issue). (*Id.* ¶¶ 28, 30.) Thus, NAF made an offer to Plaintiff, inclusive of the terms of the Agreement, which Plaintiff then accepted by signing both the Offer Letter and the attached Agreement.

In addition, the Offer Letter *expressly incorporates* the Agreement. (*Id.* ¶ 29.) Specifically, Paragraph 3 of the Offer Letter states that Plaintiff "is eligible to receive a Regional Manager Override [Override Bonus]" as "[o]utlined in Schedule 1" of the Agreement. (Ex. 1 at 2 ¶ 3.) This incorporation shows that the Agreement is binding, noting that only the Agreement provides the actual details of Plaintiff's Override Bonus compensation. Plaintiff cannot have it both ways by suing for Override Bonuses allegedly due under Schedule 1 to the Agreement and then try to disavow the rest of the Agreement.

Further, Plaintiff alleges that NAF accepted and performed the Agreement, contending that NAF employed her under the Agreement's *terms.* Specifically, she alleges that NAF then paid her (albeit subject to her disputes) pursuant to the mechanics of the Override Bonus provisions of the Agreement until NAF chose to

replace this form of bonus compensation with a different kind of bonus in March 2020. (*See* FAC ¶¶ 44-50.)[1]

While "a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions"; here, the contention that the Agreement was not a valid contract. *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017) (citing *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam)). "The Court also does not have to accept as true 'unwarranted deductions of fact[] or legal conclusions masquerading as facts.'" *Id.* (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)). Here, Plaintiff's claim that the Agreement was not a valid contract is nothing more than a legal conclusion that should be disregarded.

It is black letter Georgia law that, even if one party has not signed a contract, acceptance is inferred from performance under the contract, either in part or in

---

[1] Plaintiff also alleges that NAF told her in August 2018 that it "did not discuss or change any of the terms of Ms. Spearman's compensation." (FAC ¶ 60.) Clearly, NAF was talking about the compensation terms found in the Agreement and Schedule 1 because those are the documents that actually detail her compensation terms, including for Override Bonuses. (*See, e.g.*, Ex. 1 at 2 ¶ 3 (stating that Plaintiff "is eligible to receive a Regional Manager Override [Override Bonus]" as "[o]utlined in Schedule 1" of the Agreement).)

16244187v5

full, and the non-signing party is bound. *Gruber v. Wilner*, 213 Ga. App. 31, 34 (1994). Plaintiff's attempts to factually distinguish *Gruber* are unavailing as *Gruber* cited *multiple cases* all recognizing the same rule. In fact, the rule was cited in the context of an employment contract in *Nationwide Mut. Ins. Co. v. Teal*, 112 Ga. App. 236 (1965). There, the Court reversed a lower court ruling that incorrectly held that a contract signed by an employee, and accepted and acted on (but not signed) by the employer, was invalid. *Id.* at 236.

While Plaintiff appears to begrudgingly accept the rule that a valid contract can be signed by only one party, she next claims that the analysis required to find the Agreement valid cannot be conducted at the pleadings stage, citing *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594 (2000). Unlike here where Plaintiff's central allegations prove the Agreement's existence, in *Legg* there were disputed facts regarding the agreement's existence. For example, there was evidence that the defendant (who did not sign the agreement) told the plaintiff that any agreement was not binding until it had been "both accepted and signed by [defendant's] manager," which never occurred. *Id.* at 596. Plaintiff here does not allege that anyone from NAF ever told her that the Agreement was not binding until it was signed by NAF. To the contrary, Plaintiff's allegations show that NAF viewed the Agreement as valid. (FAC ¶ 60; *see also id.* ¶ 50 (referring to the alleged

7

March 1, 2020 revised Schedule 1 as an "Amendment," thus implying that both parties viewed the original Schedule 1 as valid).)

In addition, there was evidence in *Legg* that the plaintiff told the defendant that he would pursue a sale (which was contrary to the terms of the agreement) until he received a copy of the signed agreement. *Legg*, 245 Ga. App. at 596. Here, Plaintiff does not allege that she ever told NAF that she was waiting for a copy of the signed Agreement for the Agreement to take effect. Rather, Plaintiff worked for NAF for over 3 years as if the Agreement was effective and specifically benefitted from the compensation set forth in the Agreement and even questioned that compensation from time-to-time. (FAC ¶¶ 14, 17, 30, 46, 50, 51, 60, 64, 66, 74-76, 78-81, 89.)

Accordingly, the Agreement (including Schedule 1 thereto) was a valid contract understanding that NAF had the unilateral discretion to change Plaintiff's compensation.

### 2. Even if both the Offer Letter and Agreement are read together as a single contract, *Hollan* still forecloses Plaintiff's claim.

Plaintiff eventually acknowledges that the Offer Letter and Agreement (including Schedule 1) may be viewed as a single contract, as they were presented as contemporaneous documents. O.C.G.A. § 24-3-3; *Sofran Peachtree City, L.L.C. v.*

*Peachtree City Holdings, L.L.C.*, 250 Ga. App. 46, 50 (2001). This is true even if one of the writings has an integration clause.[2] *Duke v. KHD Deutz of Am. Corp.*, 221 Ga. App. 452, 452 (1996) (citing *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1984)). Thus, while the Court may view the documents as one contract, Plaintiff is wrong that doing so still means the specific provisions of the Offer Letter control and that NAF breached by not providing a written <u>agreement</u> to change her compensation.

Even if the Offer Letter is read together with the Agreement, both documents clearly provide that NAF was allowed to change Plaintiff's compensation in its sole discretion. (Ex. 1 at 1 § 1; at 2 ¶ 3; at 13 § 5.2; at 26 § 4.) As made clear in *Hollan*, 2015 WL 11237023, the requirement of a "written agreement" for changes made to the terms of the Offer Letter does not require that NAF present Plaintiff with a new written agreement every time it attempted to exercise the discretion afforded to NAF by the Offer Letter and the Agreement. Instead, the exercise of such discretion was consistent with and did not require a change to the contract's plain terms.

*Hollan* is on all fours with this case. The letter agreement in *Hollan* (1) allowed the employer to modify compensation in its discretion; but also (2)

---

[2]   Which integration clause controls is a moot point because even if both the Agreement and Offer Letter were read together, the result would not change.

9

required any changes to the letter agreement to be via written agreement; and (3) stated that the plaintiff's commissions "will not change." *Id.* at *2, 13. Based on this contract structure, the Court rejected the plaintiff's argument that eliminating commissions was a change triggering the written-agreement requirement. *Id.* at *13. Rather, it found that the letter agreement was "clear and unambiguous" that the employer "had the unilateral right to 'modify [the plaintiff's] compensation from time to time at its discretion.'" *Id.* The Court held that the written-agreement requirement simply meant that changes "to the *terms* of the letter agreement" needed to be in a written agreement (such as changes to at-will employment or the employer *giving up* the right to unilaterally modify the plaintiff's compensation). *Id.* (emphasis added). The Court's underlying premise is clear from the examples given: The defendant exercising its discretion to modify compensation was not a change to the letter agreement's terms since the letter agreement's very terms afforded the defendant that discretion.

Like in *Hollan*, the Agreement gave NAF the express right to modify Plaintiff's compensation (including Override Bonuses) *in its discretion*. (Ex. 1 at 13 § 5.2; at 26 § 4.) Even the Offer Letter gave NAF the same unilateral right to modify Plaintiff's compensation. (*Id.* at 1 § 1.) Thus, the written-agreement requirement in the Offer Letter was not be triggered by mere compensation changes. This is

10

because, as *Hollan* recognized, NAF's exercise of its unilateral right to change compensation is not a "change" to the Offer Letter's terms.[3]

Plaintiff's argument that a specific contract provision prevails over a conflicting general provision also fails based on *Hollan*. Although Plaintiff cites to *HA&W Fin. Advisors, LLC v. Johnson*, 336 Ga. App. 647 (2016), that case correctly notes that "neither provision prevails over the other if the two provisions are *consistent* with one another." *Id.* at 660 (emphasis added). Following *Hollan*, the sole discretion language in the Offer Letter and Agreement clearly can be read consistently with the Offer Letter's written-agreement requirement. Specifically, the written-agreement requirement is triggered only when there is an actual change to the Offer Letter's terms (such as a change to at-will[4] employment or NAF

---

[3] Notably, *Hollan* held that commissions could be modified without triggering the written-agreement requirement despite the fact that the letter agreement stated that plaintiff's commissions "will not change." *Hollan*, 2015 WL 11237023, at *2. That is far stronger language than the Offer Letter here, which merely states that Plaintiff "is eligible to receive a Regional Manager Override [Override Bonus]" as "[o]utlined in Schedule 1" of the Agreement. (Ex. 1 at 2 ¶ 3 (emphasis added).) And, of course, Schedule 1 explicitly allows NAF to modify Plaintiff's Override Bonuses in its sole discretion. (*Id.* at 26 § 4.)

[4] Plaintiff completely misconstrues why NAF discussed the Offer Letter's at-will provision in its opening brief. NAF cited the at-will provision to show that it was the kind of provision that could be changed only by written agreement (in stark contrast to the preceding provision regarding changes to compensation). (Ex. 1 at 1 § 1.)

11

*giving up* its unilateral right to modify Plaintiff's compensation). *Hollan*, 2015 WL 11237023, at *13. NAF exercising its discretion to change compensation, however, does not trigger the written-agreement requirement because both the Offer Letter and the Agreement afforded NAF that very discretion.

Plaintiff's contention that ambiguities should be construed against NAF, as the drafter, likewise is unavailing. Such a rule applies only if the Court first determines that there is an ambiguity. As explained above, there is no ambiguity between the sole discretion and written-agreement language that would warrant construing ambiguity against the drafter. *See Bulford v. Verizon Bus. Network Servs., Inc.*, 970 F. Supp. 2d 1363, 1371 (N.D. Ga. 2013) (quoting *First Data POS, Inc. v. Willis*, 273 Ga. 792, 794 (2001)) ("Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning.").

**B.   The existence of the Agreement (and Offer Letter) precludes Plaintiff's unjust enrichment claims.**

Plaintiff argues that because the specific terms under which she brings her unjust enrichment claims were not in any contract, then neither the Agreement nor the Offer Letter precludes this claim. Plaintiff simply is wrong, as an express

contract precludes an unjust enrichment claim where the contract concerns the claim's subject matter even if it does not mention the specific term(s) itself.

Unjust enrichment claims cannot arise where there is an express contract. *Fulton County v. S. Hope Humane Soc'y*, 302 Ga. App. 638, 640 (2010). Accordingly, this Court regularly dismisses unjust enrichment claims at the motion to dismiss stage when a valid contract governing the subject matter exists. *See, e.g., Cobra Tactical, Inc. v. Payment Alliance Int'l Inc.*, 315 F. Supp. 3d 1342, 1349 (N.D. Ga. 2018). Here, the contract precludes Plaintiff's unjust enrichment claim for compensation relating to pricing exceptions and marketing costs. Both Schedule 1 and the main body of the Agreement explicitly state that NAF may modify Plaintiff's compensation in its sole discretion. (Ex. 1 at 13 § 5.2, 26 § 4.) The Offer Letter likewise states that NAF may change Plaintiff's "compensation" and "benefits." (*Id.* at 1 § 1.) As the allocation of pricing exceptions for bonus compensation and marketing costs fall under "compensation," as best evidenced by the fact that Plaintiff now seeks additional unpaid compensation based on NAF's internal allocation of these items, Plaintiff cannot claim that NAF was unjustly enriched by modifying her compensation via pricing exceptions and marketing costs.

Furthermore, the contract precludes Plaintiff's unjust enrichment claim for pre-territory-change expenditures. Schedule 1 expressly provides that NAF may

13

change Plaintiff's territory in its discretion. (*Id.* at 22.) Even the Offer Letter states that NAF may change Plaintiff's "duties" and "location." (*Id.* at 1 § 1.) This forecloses Plaintiff's allegation that NAF was unjustly enriched by removing states from her market territory.

The fact that Plaintiff now is focused on her pre-territory-change expenditures (as opposed to the territory change itself) does not change the outcome. Pre-territory-change expenditures fall within the language affording NAF the right to change her territory. Also, NAF cannot be unjustly enriched merely by exercising its contractual right to change Plaintiff's territory. *See Huddle House, Inc. v. Two Views, Inc.*, No. 1:12-CV-03239-RWS, 2013 WL 1390611, at *4 (N.D. Ga. Apr. 4, 2013) (noting that a party may not assert a claim for unjust enrichment where any benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither party challenges).

Plaintiff also argues that she should be allowed to plead her unjust enrichment claims in the alternative. However, "[w]hile a party may plead equitable claims in the alternative, the party may only do so if one of the parties contests the existence of an express contract governing the subject of the dispute." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). Here, Plaintiff does not contest the existence of the Offer Letter. (FAC ¶ 18.) That

14

Offer Letter explicitly states that NAF "may change the terms and conditions of your employment, including your position, *duties*, *compensation*, *benefits*, *location* and/or work schedule." (Ex. 1 at § 1 (emphasis added).) Because there is a valid contract (the Offer Letter and Agreement) that Plaintiff does not contest, and that deals with the subject of the dispute ("compensation" and "benefits" due in connection with the allocation of pricing exceptions and marketing costs, and "location" and "duties" for territory changes), Plaintiff may not plead unjust enrichment in the alternative.

Because there was a valid contract governing the subject matter of Plaintiff's unjust enrichment claims, those claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons and the reasons stated in NAF's opening brief, the Court should grant NAF's Motion to Dismiss and dismiss all of Plaintiff's claims with prejudice under Rule 12(b)(6).

15

Respectfully submitted, this the 2nd day of March, 2021.

/s/ Henry M. Perlowski
Henry M. Perlowski
Georgia Bar No. 572393
henry.perlowski@agg.com
T. Chase Ogletree
Georgia Bar No. 579860
chase.ogletree@agg.com

ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
Telephone: 404-873-8684
Facsimile: 404-873-8685

*Counsel for Defendant Broker Solutions, Inc. d/b/a New American Funding*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), namely, Book Antiqua (13 point).

Respectfully submitted, this the 2nd day of March, 2021.

/s/ Henry M. Perlowski
Henry M. Perlowski

16244187v5