## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GINA SPEARMAN,

      Plaintiff,

v.

      Case No. 1:20-cv-04981-CAP

BROKER SOLUTIONS, INC., d/b/a
NEW AMERICAN FUNDING,

      Defendant.

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY
## FROM DEFENDANT AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to Rules 26, 33, and 37 of the Fed. R. Civ. P., Plaintiff, Gina Spearman ("Ms. Spearman"), moves this Court for an order compelling responses from: (1) Defendant Broker Solutions, Inc., d/b/a New American Funding ("NAF" or "Defendant"), to Plaintiff Gina Spearman's First Interrogatories to Defendant served on July 2, 2021, attached hereto as Composite Exhibit 1; and (2) Plaintiff's First Request for Production to Defendant served on July 2, 2021, attached hereto as Exhibit 2. Ms. Spearman also requests an award of attorneys' fees and expenses pursuant to Rule 37(a)(5)(A) because Defendant lacked substantial justification for refusing to fully respond to the interrogatories and requests for production, causing unnecessary delay and expense.  In support hereof, Ms. Spearman respectfully shows the Court as follows:

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1

**A.    NAF hired Ms. Spearman and has been in breach of her employment contract since the inception of her employment.**

In November 2016, NAF simultaneously presented Ms. Spearman with two (2) documents: a Letter Offer Contract ("signed Contract") and a Regional Manager Agreement ("RMA"). Ms. Spearman's signed Letter Offer Contract (Doc 9-1) at Pgs. 1-7 ("signed Contract"); the RMA (Doc 9-1) at Pgs. 9-29 ("RMA"). Schedule 1 Regional Manager Compensation Details was attached to the RMA. *Id.*  at ¶ 36; Schedule 1 of the RMA at Pgs. 22-29 [ECF 9-1] ("Schedule 1"). NAF has failed to compensate Ms. Spearman in accordance with her employment contract which required that modifications to material terms of Plaintiff's employment (compensation) be made in a written agreement presented by HR, the COO or CEO. [ECF 9 at ¶ 27]. Defendant did not amend the agreement to eliminate Override Bonuses via a written agreement until it presented Plaintiff with the March 1, 2020, amendment that the parties signed.

The terms of the contract that NAF drafted regarding Ms. Spearman's compensation do not address pricing exceptions, marketing costs or expenditures she incurred in developing territories (not damages resulting from reduction in territory).  Ms. Spearman is entitled to be compensated for her expenditures related to: (1) pricing exceptions and marketing costs; and (2) personal expenditures made *prior* to NAF's removal of Tennessee and Virginia from her territory. For years, NAF paid pricing exceptions and marketing costs associated with mortgage loans.

2

*See* [ECF 9 at ¶ 70-92]. However, at a February 2019 Leadership Meeting, NAF announced it misallocated 30 million dollars and, as a result, Ms. Spearman was notified that she would have to absorb the costs of both the pricing exceptions and marketing costs. *Id.* at ¶ 75, 80. These funds, expended by Ms. Spearman as a result of NAF's "misallocation" greatly benefited the company, and Ms. Spearman should be compensated for such.

Plaintiff has repeatedly requested documents from NAF specifically related to the March 1, 2020, amendment and February 2019 Leadership meeting where NAF announced a 30-million-dollar misallocation of money and as a result forced Plaintiff and others to pay marketing costs and absorb pricing exceptions.  NAF has refused to produce documents responsive to the discovery requests.

## B.    Defendant's obligation to respond to Ms. Spearman's discovery requests.

The central issues in this case are whether Ms. Spearman is entitled to be compensated, and if so, how much she is entitled to be compensated. This notion is based on two main theories of recovery—breach of contract and unjust enrichment. Defendant denies these claims, but has offered no evidence to support its defenses. Even more concerning, Defendant has out right refused to provide Ms. Spearman with the documents necessary to prove her claims because NAF has unilaterally decided the March 1, 2020, written amendment is not relevant and its announcement at the February 2019 Leadership meeting is not relevant – the very meeting where

3

NAF announced a misallocation of 30 million dollars leading to its decision to force Plaintiff to absorb marketing costs and pricing exceptions.  In the Court's Order denying Defendant's Motion to Dismiss, the Court stated, "[a]t this point, there is no explanation from the defendant as to why the plaintiff was not paid override bonuses". [ECF 21, p. 13.]  This remains true.

Ms. Spearman has explained to Defendant on multiple occasions why the requested documents are relevant to Plaintiff's claims and proportional to the needs of the case given the importance of the issues and in light of this Court's Order denying Defendant's Motion to Dismiss [ECF 21] where the Court explained that NAF's actions may even give rise to a fraud count.  Defendant's outright refusal to produce documents pertaining to the very issues in this case undermines discovery in this case, has caused delay and will lead to further delay in the resolution of this matter.  To satisfy Ms. Spearman's good faith duty to avoid a discovery dispute, Ms. Spearman's counsel have sent many emails and attended numerous telephone conferences in an effort to address the parties' disagreement and avoid seeking the Court's assistance. *See* Rule 37 Certificate of MaryBeth V. Gibson ("Gibson Certification")[1] and Correspondence to Defendants' counsel dated September 9, 2021, and October 1, 2021, attached thereto as Exhibits A, and B, respectively, which are incorporated herein as if fully set forth *verbatim.* Nevertheless, Ms.

---

[1] The Gibson Certification is attached hereto as Exhibit 3.

Spearman's good faith efforts have only been met with outright refusals by NAF, leaving Ms. Spearman no choice but to file this Motion.

## ARGUMENT AND CITATION OF AUTHORITY

The discovery disputes concern (1) NAF's responses to Plaintiff's First Interrogatories Nos. 7, 8, 10, 12, and 18, served July 2, 2021, attached hereto as Composite Exhibit 1 (the "Interrogatories"); and (2) NAF's responses to Plaintiff's First Requests for Production Nos. 10, 14, 15, 16, 17, 18, 26, 27, 35, 38, 39, and 40 served on July 2, 2021, attached hereto as Exhibit 2 (the "Requests").

### A.   Standard for Motion to Compel

Federal Rule of Civil Procedure 26 provides that "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, a court may order discovery of "any matter relevant to the subject matter involved in the action." *Id.* When a party fails to answer an interrogatory or fails to produce a requested document or item, the Court may order that party

to respond. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Importantly, Federal Rule of Civil Procedure 37(a)(4) states, "[f]or the purposes of this subdivision (a), an evasive or incomplete designation, answer, or response must be treated as a failure to disclose, answer, or respond."[2]

### B.    NAF's Deficient Responses

Defendant's discovery responses are deficient for the reasons set forth below. For each request, the information is within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims and proportional to the needs of the case given the significance and importance of the issues. Fed. R. Civ. P. 26(b)(1).

### a.  Plaintiff's First Interrogatories to Defendant

**Interrogatory No. 7** **Describe with specificity why NAF amended Schedule 1 to the Regional Manager Agreement effective March 1, 2020 and who participated in the decision to amend Schedule 1.**

*Response*: NAF objects to Interrogatory No. 7 on the basis that it seeks

---

[2] In each of the disputed Interrogatories and Requests discussed herein, Defendant littered its responses with boilerplate objections that the interrogatory or request is "vague" and "overbroad." Yet, Defendants do not provide any substantiation for these objections. Therefore, they do not warrant consideration. *See, e.g.*, *See, e.g.*, Williams v. Taser Int'l, Inc., Civil Action No. 1:06-CV-0051-RWS, 2007 WL 1630875, at *3 (N.D. Ga. June 4, 2007) ("[O]bjections to discovery requests must be sufficiently plain and specific to allow the Court to understand precisely how the challenged discovery requests are alleged to be objectionable."); U.S.C.F.T.C. v. Am. Derivatives Corp., Civil Action No. 1:05-CV-2492-RWS, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007) (finding that defendants' boilerplate objections to discovery requests "are improper and will not be considered by the Court"); Red Bull GmbH v. Kassir Import-Export Co., Civil Action No. 1:06-CV-2301-CC, 2008 WL 6875113, at *4 (N.D. Ga. Mar. 31, 2008).

*information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, Plaintiff has not argued that NAF breached the Amended Schedule 1, nor that she suffered damages Amended Schedule 1. NAF also objects to Interrogatory No. 7 on the ground that it invades the attorney-client privilege and work product doctrine following Plaintiff's engagement of counsel as early as October 2019.*

*In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.*

**Grounds to Compel**:  This Interrogatory seeks information regarding why NAF amended Schedule 1 and who participated in the decision to do so. The Offer Letter and Regional Manager Agreement explicitly provide that material terms of Ms. Spearman's employment may only be altered by written agreement. Ms. Spearman's compensation was not amended in writing until the March 1, 2020, amendment became effective. If her compensation had already been altered prior to the March 1, 2020, amendment, there would have been no reason for same.  NAF produced hundreds of pages of documents in its production, none of which constitute a written agreement altering Ms. Spearman's compensation (a material term of her employment) *until* the March 1, 2020, amendment.  The Court's Order held that "more evidence is necessary to ascertain [that] intent."  The subject matter of Interrogatory No. 7 pertains to NAF's intent.  NAF cannot unilaterally eliminate this written agreement from the scope of discovery.

**Interrogatory No. 8**: **Describe with specificity why NAF eliminated "Override Bonuses" from its March 1, 2020 Amendment to Schedule 1 to the Regional Manager Agreement and who participated in that decision.**

*Response*: *NAF objects to Interrogatory No. 8 on the basis that it seeks*

*information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, Plaintiff has not argued that NAF breached the Amended Schedule 1, nor that she suffered damages Amended Schedule 1. NAF also objects to Interrogatory No. 8 on the ground that it invades the attorney-client privilege and work product doctrine following Plaintiff's engagement of counsel as early as October 2019.*

*In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.*

**Grounds to Compel:** One of the key questions in the case is whether NAF ever had any intention of paying Ms. Spearman an Override Bonus. Interrogatory No. 8 asks NAF to describe why it amended Ms. Spearman's compensation in the March 1, 2020, amendment to eliminate the "Override Bonus" from Ms. Spearman's compensation.  For NAF to argue that this interrogatory is "not relevant to any party's claims or defenses and is not proportional to the needs of the case" is not credible.  In fact, this interrogatory seeks information that may lead to the discovery of information demonstrating NAF had no intention of paying Override Bonuses when it initially lured Ms. Spearman with a promise to pay her Override Bonuses.  The decision to amend Ms. Spearman's compensation, in writing, is relevant to this case. NAF also argues that its response to this interrogatory is privileged and is protected by the work product doctrine.  However, in a privilege log that NAF produced, attached hereto as Exhibit 4, only eleven (11) documents are shown to exist before Ms. Spearman's resignation in April of 2020. The elimination of the Override Bonus structure had nothing to do with NAF's alleged anticipation of litigation, because prior to the elimination of this clause from

the contract and Ms. Spearman's resignation, no threat of litigation existed. Moreover, any advice provided by internal or external counsel prior to this would constitute business advice, and not legal advice. Although Ms. Spearman had contested her compensation before this, at the time, this remained a basic employment dispute, and had NAF handled the matter appropriately, it would have never risen to the prospects of litigation. Ms. Spearman is entitled to know why this clause was eliminated from her contract years after her employment began.

**Interrogatory No. 10**: **Describe with specificity who was involved in implementing NAF's policy related to the introduction of two (2) new source codes that incentivize a Loan Officer to charge higher rates to customers in order to earn higher bps.**

*Response: NAF objects to Interrogatory No. 10 on the basis that it seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, NAF's decision regarding the introduction of source codes that could impact the rates on certain loans is entirely irrelevant to the breach of contract and unjust enrichment claims at issue.*

*In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.*

**Grounds to Compel:** This Interrogatory requests information regarding the individuals involved in implementing two (2) new source codes that incentivize a Loan Officer to charge higher rates to customers in order to earn a higher bps. NAF's policy regarding implementation and use of two new source codes is directly related to NAF's motive behind its actions towards Plaintiff and her compensation particularly since Ms. Spearman raised concerns over the use of these source codes

and how they may violate the Dodd-Frank Act.  NAF implemented a new strategy at the February 2019 Leadership meeting that allowed loan officers to improperly use two source codes, permitting loan officers discretion to use a source code for a company generated lead on which the LO would be paid 70 bps (or 50 bps on a Connect Lead) and a different source code for a loan officer generated lead on which the LO would be paid 125 bps.  A loan officer wants higher compensation (125 bps versus 70 or 50 bps) incentivizing a loan officer not to ask for pricing concessions on a loan officer generated lead, thus tying the loan officer compensation to the interest rate offered.  Significantly and highly relevant to the issues, fewer pricing exceptions means more profit for NAF.

**Interrogatory No. 12**: **Describe in detail NAF's practice and policies relating to payment of marketing costs from 2012 to November 2016 to Regional Managers in NAF's Divisions prior to the development of the Southeastern Region for which NAF hired Ms. Spearman.**

*Response*: NAF objects to Interrogatory No. 12 on the basis that it seeks information that is not relevant to any party's claims or defenses. Specifically, NAF's practice and policies regarding marketing costs for the years prior to Plaintiff's employment has no bearing on whether NAF was required to pay or reimburse marketing costs starting in February 2019, which is the only time period at issue in this dispute relative to marketing costs. In addition, NAF objects to Interrogatory No. 12 on the basis that requests that seek information on NAF policies predating Plaintiff's employment are overbroad, unduly burdensome, and not proportional to the needs of the case.
    In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.

**Grounds to Compel:**  This Interrogatory seeks information regarding NAF's practice and policies relating to the payment of marketing costs to Regional

Managers prior to the time that Ms. Spearman was hired. NAF has objected to this Interrogatory and refused to respond. NAF's payment of marketing costs is in dispute in this action. Plaintiff has sued NAF to recoup marketing costs that she expended on behalf of the Company. Thus, how NAF routinely handled paying marketing costs is relevant to Plaintiff's claims.  In the spirit of compromise, Plaintiff adjusted her request based on NAF's objections to NAF's practice and policies relating to NAF's provision of a marketing budget for the Southeast Region from November 2016 through March 2020; however, NAF has still refused to supplement this response.

**Interrogatory No. 18**: **Describe with specificity the $30 million shortfall NAF sustained that was discussed at the February 2019 meeting.**

*Response: NAF objects to Interrogatory No. 18 on the basis that it seeks information that is not relevant to any party's claims or defenses. Specifically, any revenue shortfall has nothing to do with whether Plaintiff has any viable breach of contract or unjust enrichment claims.*
*In light of the foregoing objection, NAF declines to provide information responsive to this Interrogatory.*

**Grounds to Compel:** This Interrogatory seeks information regarding NAF's thirty-million-dollar misallocation of funds that was proffered as the justification for reducing Plaintiff's compensation at the February 2019 meeting for a period of ninety (90) days. At the meeting, NAF and its officers claimed that NAF was suffering financially stemming from the Company's misallocation of thirty-million-dollars. Up until this time, NAF refused to pay Ms. Spearman the Override Bonuses

identified in her employment agreement.  At the February 2019 meeting, NAF articulated a specious reason for not paying Ms. Spearman per the terms of her agreement and for further reducing her compensation by requiring her to absorb marketing costs and pricing exceptions.  NAF told Ms. Spearman her compensation was being changed for a period of only ninety (90) days to assist the Company during its "financial hardship."  NAF cannot simply refuse to respond to discovery because **now** it conveniently deems this alleged shortfall has no bearing on NAF's impetus to change compensation. Furthermore, evidence relating to this Request may support a claim of fraud as referenced in this Court's Order denying Defendant's Motion to Dismiss as Plaintiff believes the evidence will demonstrate there was no "misallocation" of 30 million dollars; rather, NAF did not intend to pay Ms. Spearman per the terms of her agreements. Thus, NAF's objections are baseless.

### b.  Plaintiff's First Requests for Production

**Request No. 10**: **All written communications amongst NAF's officers and Human Resource employees regarding Plaintiff's compensation, including Override Bonuses, for the time preceding, during, and after Plaintiff's employment.**

> *Response*: *NAF objects to Request No. 10 to the extent that, as drafted, it conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects to the phrases "[a]ll written communications . . . regarding Plaintiff's compensation" as overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to compensation changes and the specific forms of compensation at issue, and is not limited to communications during the period of Plaintiff's employment when she contends that she was underpaid regarding certain specific forms of compensation.*

12

*Subject to and without waiving the foregoing objections, NAF will produce relevant, non-privileged documents showing communications relating to Plaintiff's employment agreements and the specific forms of compensation at issue during Plaintiff's employment with NAF.*

**Grounds to Compel:** NAF objected to this Request that seeks all written communications amongst NAF officers and Human Resources regarding Plaintiff's compensation. NAF did produce some documents in response, however, it is still withholding documents based on attorney client privilege and the work-product doctrine. Exhibit 4. Ms. Spearman resigned in April 2020, prior to this time, there was no threat of litigation. Any advice offered by internal or external counsel would constitute general business advice, and not legal advice. Courts in this District have granted protection under the work product doctrine only when the documents satisfy two tests—that the documents "primary motivating purpose" was because of the anticipation of litigation and the documents were created "because of" the anticipation of litigation. United States ex rel. Bibby v. Wells Fargo Bank, N.A., 165 F.Supp.3d 1319, 1326 (N.D. Ga. 2015). Further, as it relates to attorney client privilege, the privilege does not apply if the purpose was for obtaining business advice. Colardo-Keen v. Rockdale Cty., Georgia, No. 1:14-CV-489-MHC, 2017 WL 4418669, at *2 (N.D. Ga. Mar. 24, 2017). NAF carries the burden of establishing that the documents and communications served a legal purpose and has failed to do so. Thus, any responsive documents for the time period preceding Ms. Spearman's resignation should be produced.

**Request No. 14**: All documents concerning payment of Override Bonuses to Gina Spearman and Kelly Allison from November 6, 2016 through March 1, 2020.

*Response: NAF objects to Request No. 14 to the extent that it, as drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to changes relating Plaintiff's Override Bonus compensation.*

*Subject to and without waiving the foregoing objections, NAF will produce relevant, non-privileged documents.*

**Grounds to Compel:** NAF objected to this Request seeking documents reflecting the payment of Override Bonuses to Ms. Spearman and Kelly Allison based on attorney-client privilege, work product doctrine and raised boilerplate objections. NAF stated it would produce all non-privileged documents; however, it is clear that NAF is withholding documents from Ms. Spearman. NAF asserts that privileged documents exist; yet, there are only eleven (11) documents that NAF designates as privileged and they were created before Ms. Spearman's resignation. *See* Exhibit 4. Similarly, any documents withheld based on the work product doctrine should be produced as no threat of litigation even remotely existed until well after Ms. Spearman's resignation.  Here, the documents were created for a business purpose and are not protected by these doctrines. Bibby, 165 F.Supp.3d at 1326; Colardo-Keen, 2017 WL 4418669, at *2.

**Request No. 15**: All documents and communications reflecting NAF's internal discussions relating to Ms. Spearman's employment agreements from June 2016 through the present.

14

*Response*: NAF objects to Request No. 15 to the extent that it, as drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to the employment agreement terms relevant to this case, or the time periods relevant to this case, specifically those periods during which Plaintiff contends that she was underpaid.

Subject to and without waiving the foregoing objection, NAF will produce relevant, non-privileged documents relating to Plaintiff's employment agreements during the period that Plaintiff was employed by NAF.

**Grounds to Compel:**   NAF objected to this Request seeking documents reflecting NAF's internal discussions relating to Ms. Spearman's employment agreements based on attorney-client privilege, work product doctrine and raised boilerplate objections "overly broad, unduly burdensome, and not proportional to the needs of the case." In the privilege log provided to Ms. Spearman's counsel, NAF only lists eleven (11) communications prior to her April 13, 2020, resignation that are "privileged." Exhibit 4. However, Ms. Spearman is entitled to see any documents pertaining to discussions regarding Ms. Spearman's employment agreements during the period of her employment, and thus, these documents should be produced.  If any communications involve in-house counsel, Ken Block, those communications were for a business purpose and not in anticipation of litigation – as Ms. Spearman did not resign until April 13, 2020. Documents created in the course of business and not for the purposes of providing legal advice or in the anticipation of litigation are not protected by attorney client privilege or the work

product doctrine. <u>Bibby</u>, 165 F.Supp.3d at 1326; <u>Colardo-Keen</u>, 2017 WL 4418669,

at *2. NAF bears the burden of establishing that the documents were created in

anticipation of litigation and communications withheld were for a legal, and not

business, purpose.  NAF failed to satisfy this burden in its privilege log and these

documents should be produced. Exhibit 4.

**<u>Request No. 16</u>: All documents reflecting NAF's practice of paying 7.5 bps for Marketing Expenses.**

*<u>Response</u>: NAF objects to Request No. 16 to the extent that it, as drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects to the Request as overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to changes in marketing costs, nor to payments to Plaintiff.*

 *Subject to and without waiving the foregoing objection, NAF will produce relevant, non-privileged documents relating to the payment of marketing expenses to Plaintiff.*

**<u>Grounds to Compel:</u>** NAF objected to this Request seeking documents

regarding NAF's practice of paying 7.5 bps for Marketing Expenses, based on

attorney-client privilege, work product doctrine and raised boilerplate objections

"overly broad, unduly burdensome, and not proportional to the needs of the case".

NAF admitted it is "withholding one non-privileged document related to Request

No. 16 on the basis that it concerns NAF's marketing policy after Plaintiff left NAF

and thus is not relevant to this dispute."  For the reasons set forth above with respect

to Interrogatory No. 18, it is not up to NAF to refuse to produce based on its

evaluation of relevance.  NAF finally amended its marketing policy after Plaintiff

resigned and that document should be produced as whatever changes were made are relevant (or at least discoverable) on the issue of what the policy was before Plaintiff's departure.  By way of example, if the new policy had a certain restriction not present in the policy in effect when Plaintiff was employed with NAF, it can be inferred that that restriction was not part of the policy while Plaintiff was still employed.

**Request No. 17**: **All documents concerning any communications related to the February 2019 Leadership meeting that resulted in NAF no longer paying Marketing Expenses, including internal emails amongst NAF officers that in any way reflect the February 2019 Leadership meeting whether prepared before, during, or after said meeting.**

*Response: NAF objects to Request No. 17 to the extent that it, as drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case as it seeks "[a]ll documents" "that in any way reflect" the meeting.*
*Subject to and without waiving the foregoing objection, NAF will produce relevant, non-privileged documents reflecting the content of the February 2019 Leadership meeting.*

**Grounds to Compel:** NAF objected to this Request seeking documents related to the February 2019 Leadership meeting that resulted in NAF no longer paying Marketing Expenses, based on attorney-client privilege, work product doctrine and raised boilerplate objections "overly broad, unduly burdensome, and not proportional to the needs of the case".  NAF stated it will produce relevant, non-privileged documents reflecting the "content" of the February 2019 Leadership meeting. Plaintiff requested "communications related to the February 2019

17

Leadership meeting that resulted in NAF no longer paying Marketing Expenses, including internal emails amongst NAF officers that in any way reflect the February 2019 Leadership meeting whether prepared before, during, or after said meeting". NAF's attempt to improperly restrict Plaintiff's request should be rejected. NAF's delay of discovery is prejudicing Plaintiff's case. NAF should be compelled to produce documents concerning communications related to the February 2019 Leadership meeting – which to date it has failed to do.

**Request No. 18**: **All documents concerning the misallocation of thirty million dollars NAF Officers reported at the February 2019 Leadership meeting.**

*Response: NAF objects to Request No. 18 to the extent that it, as drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects to the Request as not relevant to any claims or defenses as the reasons NAF may have changed compensation in February 2019 have no bearing on Plaintiff's entitlement to any such compensation. In light of the foregoing objections, NAF will not be producing documents related to this Request.*

**Grounds to Compel:** NAF objected to producing documents concerning the misallocation of thirty million dollars NAF Officers reported at the February 2019 Leadership meeting based on attorney-client privilege, work product doctrine and claimed that Request is "not relevant to any claims or defenses as the reasons NAF may have changed compensation in February 2019 have no bearing on Plaintiff's entitlement to any such compensation." Plaintiff has alleged that NAF *verbally* reduced Ms. Spearman's compensation at the Leadership Meeting. [ECF 9, Complaint, ¶ 63]. Plaintiff alleged NAF breached the contract by reducing her

18

compensation without a writing as required by the employment agreements. [ECF 9, ¶ 52]. This Request seeks all documents concerning the misallocation of thirty-million-dollars that was reported by NAF Officers at the 2019 Leadership meeting as the basis for further reducing Plaintiff's compensation for a period of ninety (90) days. Ms. Spearman is entitled to know whether that representation was true when it was made. NAF's alteration of Ms. Spearman's compensation as a result of the thirty-million-dollar misallocation is relevant to the claims alleged and the overall intent of NAF with respect to whether NAF ever had any intention of paying Plaintiff as promised in her employment agreements. This information is within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims (whether NAF agrees or not), and proportional to the needs of the case given the significance and importance of this issue. *See* Fed. R. Civ. P. 26(b)(1). This information is within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims (whether NAF agrees or not), and proportional to the needs of the case given the significance and importance of this issue. *See* Fed. R. Civ. P. 26(b)(1). All documents concerning the "misallocation" of thirty million dollars that NAF reported at the February 2019 leadership meeting should be produced.

**Request No. 26**: **All documents reflecting the profit NAF made on the loans generated by loan officers in Ms. Spearman's territories.**

*Response*: *NAF objects to Request No. 26 to the extent it seeks production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is not relevant to the claims*

*or defenses in this action. Specifically, the profit NAF made on any particular loan has no bearing on whether NAF could legally change Plaintiff's compensation or the amount of Plaintiff's compensation.*

*In light of the foregoing objections, NAF will not produce any documents responsive to this Request.*

**Grounds to Compel:** This Request seeks all documents reflecting the profit NAF made on the loans generated by loan officers in Ms. Spearman's territories. In its objections, NAF conflates the issue of proof of amount of Plaintiff's compensation with Defendant's breach of the employment agreements. NAF's contention that its profit on any loan has no bearing on whether NAF could legally change Plaintiff's compensation is simply not responsive to its obligation to produce responsive documents to this specific request. The information may provide a basis from which a jury can determine the amount of damages to award and the extent of the malfeasance of NAF's officers. For example, these documents, such as P&Ls from the fourth quarter of 2018, may demonstrate there was no misallocation of 30 million dollars, and, in fact, that Plaintiff's retail market was highly profitable. This information is subject to discovery.

**Request No. 27**: **All documents concerning any communications regarding the written amendment to Schedule 1 of the RMA that altered Ms. Spearman's compensation effective March 1, 2020. See Amended Schedule 1.**

*Response*: *NAF objects to Request No. 27 to the extent that it, as conceivably drafted, conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is not relevant to the claims or defenses in this action since Plaintiff has not alleged that the March 1, 2020 Amended Schedule 1 breached the agreements or caused Plaintiff to suffer damages.*

*In light of the foregoing objections, Plaintiff will not produce documents responsive to this Request.*

**Grounds to Compel:** This Request seeks documents concerning any communication regarding the March 1, 2020, written amendment to Schedule 1 of the RMA. NAF asserts that the request is not relevant to Ms. Spearman's claims. However, the alteration of Ms. Spearman's compensation is directly at issue in this action. How plain can Plaintiff make this to NAF? NAF recruited Plaintiff and promised to pay Override Bonuses and agreed that any change to material terms of her employment would be made in writing.  NAF refused to pay Plaintiff Override Bonuses. NAF did not change the material terms of Plaintiff's employment in writing until March 1, 2020.  Therefore, at a minimum, Ms. Spearman may be entitled to recover Override Bonuses for the period prior to the written modification. The Court's Order held that "more evidence is necessary to ascertain [that] intent." The subject matter of Request No. 27 pertains to NAF's intent.  NAF states that "it has produced multiple written amendments to Schedule 1 and other schedules dating back to at least 2017 directly affecting Plaintiff's compensation.  Accordingly, no additional documents are forthcoming." But NAF can't unilaterally pick and choose what must be produced under the Federal Rules of Civil Procedure, selecting documents it believes supports its position and withholding others.  Documents produced by NAF to date only demonstrate that NAF's officers were internally drafting various compensation models and didn't agree upon one until the March 1,

2020 Amendment presented to Ms. Spearman and signed by the parties.  NAF should

be compelled to produce all documents responsive to this request.

**Request No. 35**: **Employment contracts for all Regional Managers from January 2016 through March 2020.**

*Response*: NAF objects to Request No. 35 on the basis that it is not relevant to the claims or defenses in this action. Specifically, the employment contracts of other Regional Managers have no bearing on Plaintiff's employment contract and claims pursuant to that contract.

In light of the foregoing objection, NAF will not produce documents responsive to this Request.

**Grounds to Compel:** This Request concerns the employment contracts for

all Regional Managers from January 2016 through March 2020. NAF contends that

the employment contracts of other Regional Managers have no bearing on Ms.

Spearman's employment contract and claims pursuant to that contract. Nothing

could be further from the truth.  NAF's practice and procedure of contracting to pay

Override Bonuses, Marketing Expenses, and Pricing Exceptions for all managers is

highly relevant to Ms. Spearman's claims. This action alleges a breach of contract

stemming from NAF's failure to properly compensate Ms. Spearman. NAF's

practice and procedure of paying *other* Regional Managers pursuant to the terms of

NAF's contracts is highly relevant to the claims made in this case, and, at a

minimum, within the bounds of discovery. Accordingly, documents responsive to

this request should be produced.

**Request No. 38**: **All communications from NAF officers and Regional Managers, including but not limited to Rick Arvielo, Patty Arvielo and Kristin Ankeny to Jason Redman from October 2019 through March 2020.**

   *Response*: *NAF objects to Request No. 38 to the extent that, as drafted, it conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to communications regarding the claims or defenses in this action.*
   *NAF is willing to confer with Plaintiff regarding how to reasonably limit thisrequest and then produce documents accordingly.*

**Request No. 39**: **All communications from NAF officers and Regional Managers, including but not limited to Sam Ellsworth, to Eric Glick from October 2019 through March 2020.**

   *Response*: *NAF objects to Request No. 39 to the extent that, as drafted, it conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine. NAF further objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to communications regarding the claims or defenses in this action.*
   *NAF is willing to confer with Plaintiff regarding how to reasonably limit this request and then produce documents accordingly.*

   **Grounds to Compel for Request Nos. 38-39:** These Requests seek all communications from NAF officers and Regional Managers including but not limited to Rick Arvielo, Patty Arvielo, Kristin Ankeny, and Sam Ellsworth to Jason Redman and Eric Glick for a very limited time period --  from October 2019 through March 2020. These Requests are narrow in time and scope and are relevant to the claims made by Plaintiff and proportional to the needs of the case given the significance and importance of this issue. *See* Fed. R. Civ. P. 26(b)(1). Therefore,

responsive documents should be produced.  No additional narrowing of scope is proper.

**Request No. 40**: **All documents concerning the chain of custody of the laptop Ms. Spearman returned to NAF via Federal Express in May, 2020.**

*Response*: *NAF objects to Request No. 40 as not relevant to the claims or defenses in this action. As already explained in communications between counsel, Ms. Spearman's laptop has remained in a secure location at NAF and has not been accessed or used since Ms. Spearman returned it to NAF in May 2020.*
   *In light of the foregoing objection, NAF will not be producing any documents responsive to this Request.*

**Grounds to Compel:** This Request concerns all documents relating to the chain of custody of Ms. Spearman's laptop.  NAF improperly implied that Ms. Spearman retained her laptop when in fact she had promptly returned it to NAF after her resignation. NAF has refused to produce documents responsive to this Request with no justification. Other than simply refusing, NAF has not submitted a valid objection to this Request.  Ms. Spearman's counsel sent a preservation letter to opposing counsel on May 5, 2021, regarding this issue. The chain of custody and possible spoliation of evidence contained on Plaintiff's laptop is relevant to this action and should, be produced.  If NAF has the laptop, NAF should produce documents supporting its chain of custody after Ms. Spearman's return of the laptop on May 9, 2020.

   **C.    Ms. Spearman should be awarded its reasonable fees and costs incurred in bringing this Motion.**

Rule 37 requires that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  The Eleventh Circuit reached the "inescapable conclusion," that "sanctions under [Rule 37(a)(5)(A)(ii)] are mandatory unless the court finds a substantial justification for discovery delays." Devaney v. Continental American Ins. Co., 989 F.2d 1154, 1162 (11th Cir. 1993).

Here, Ms. Spearman has attempted for several months to meet and confer with Defendant regarding the foregoing Interrogatory responses, which are central to Plaintiff's claims and Defendant's purported defenses. *See* Gibson Certification (Ex. 3).  Ms. Spearman set out to resolve this matter as expeditiously and prudently as possible.  NAF has flat out rejected to produce almost all documents central to this case including unreasonably refusing to disclose the facts supporting its so-called main defense—that Ms. Spearman was properly compensated. Yet, NAF has not produced any documents supporting this notion.  NAF's discovery practices have thwarted Plaintiff's prompt resolution of her case.

Ms. Spearman respectfully requests that this Court award it reasonable expenses incurred in filing this Motion after holding a hearing.

This 21st day of October, 2021.

/s/ MaryBeth V. Gibson
MARYBETH V. GIBSON
mgibson@thefinleyfirm.com

25

Georgia Bar No. 725843
TRAVIS C. HARGROVE
thargrove@thefinleyfirm.com
Georgia Bar No. 141374
N. NICKOLAS JACKSON
njackson@thefinleyfirm.com
Georgia Bar No. 841433
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Telephone: (404) 320-9979
Facsimile: (404) 320-9978
*Counsel for Plaintiff.*

## <u>CERTIFICATE OF SERVICE & COMPLIANCE</u>

I hereby certify that on this date I served the foregoing **Plaintiff's Motion to Compel Discovery From Defendant and Memorandum in Support Thereof** via the CM/ECF system, which will automatically provide-email notification and service of such filing to counsel of record for all parties registered with the Court for electronic filing, as follows:

Henry M. Perlowski
Henry.Perlowski@agg.com
T. Chase Ogletree
Chase.Ogletree@agg.com
**ARNALL GOLDEN GREGORY LLP**
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

This 21st day of October, 2021.

I further certify that the foregoing pleading has been prepared with Times New Roman, 14-point font, in compliance with L.R. 5.1B.

*/s/ MaryBeth V. Gibson*
MARYBTEH V. GIBSON
