# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GINA SPEARMAN,<br><br>  Plaintiff,<br><br>v.<br><br>BROKER SOLUTIONS, INC., d/b/a<br>NEW AMERICAN FUNDING,<br><br>  Defendant. | Case No. 1:20-cv-04981-CAP |

**DEFENDANT BROKER SOLUTIONS, INC., D/B/A NEW AMERICAN FUNDING'S RESPONSES AND OBJECTIONS TO PLAINTIFF GINA SPEARMAN'S FIRST INTERROGATORIES**

COMES NOW Defendant Broker Solutions, Inc., d/b/a New American Funding ("NAF") and, pursuant to Fed. R. Civ. P. 26 and 33, submits the following objections and responses to Plaintiff Gina Spearman's First Interrogatories as follows:

**Interrogatory No. 1**: **Describe with specificity each component of compensation discussed in negotiations between NAF and Ms. Spearman, specifically identifying each individual who participated in said negotiations and the date of said negotiations, leading up to the November 4, 2016 Letter Offer made by NAF.**

16919653v3

**Response**: NAF objects to Interrogatory No. 1 on the ground that it seeks information that is not relevant to the issues in dispute given the "entire agreement" provisions in Plaintiff's Regional Manager Agreement (the "RMA") or proportional to the needs of this dispute. Furthermore, Plaintiff is equally aware of the discussions that she had with representatives of NAF prior to signing her Offer Letter and RMA.

Subject to the foregoing objections, NAF responds that Jan Preslo engaged in pre-contract discussions predominantly with Kelly Allison over the phone. These discussions largely concerned the employment opportunity, as opposed to negotiating specific forms of compensation. The foregoing discussions took place in the period preceding the signing of the Offer Letter and RMA, the contents of which are the best evidence of the agreements between the parties regarding the compensation offered to Plaintiff.

**Interrogatory No. 2**: **Describe with specificity each loan for which NAF paid Ms. Spearman an override bonus on a monthly basis that originated in Ms. Spearman's territories from November 2016 through March 2020.**

**Response**: NAF objects to Interrogatory No. 2 on the basis that it would be unduly burdensome to attempt to describe each loan for which Plaintiff was paid an override bonus over a period of several years, and describing with specificity each such loan is not proportional to the needs of this case.

2

Subject to and without waiving the foregoing objections, NAF will produce business records that identify loans for which Ms. Spearman was paid an override bonus on a monthly basis that originated in Plaintiff's territories from November 2016 through March 2020. NAF refers Plaintiff to these documents in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 3**: **Describe with specificity how NAF calculated the override bonuses that it did pay to Ms. Spearman from November 2016 through March 2020.**

Response: NAF will produce business records that identify how NAF calculated the override bonuses it paid to Ms. Spearman from November 2016 through March 2020. NAF refers Plaintiff to these documents in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 4**: **Describe with specificity the loans originated in Ms. Spearman's territories which NAF contends are excluded under paragraph 1.4B of Schedule 1 with an effective date of November 1, 2016.**

Response: NAF objects to Interrogatory No. 4 because "loans originated" is vague and undefined. For example, is Plaintiff seeking a description of *each individual* loan originating in Plaintiff's territories since November 1, 2016, that NAF contends was excluded under paragraph 1.4B, or the *categories* of loans NAF contends are excluded? To the extent Plaintiff is seeking a description of each

individual loan in Plaintiff's territories since November 1, 2016, that NAF contends was excluded under paragraph 1.4B, NAF objects that such a request would be unduly burdensome, not relevant to any party's claims or defenses, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, NAF will produce business records identifying the loans originating from Plaintiff's territories from November 2016 through March 2020 that NAF contends were excluded under paragraph 1.4B. NAF refers Plaintiff to these documents in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 5**: **Identify each and every Regional Managers [sic] to whom NAF did pay an override bonus for any of the loans listed in 1.4B of Schedule 1 attached to Ms. Spearman's Regional Manager Agreement from 2014 to the present.**

**Response**: NAF objects to Interrogatory No. 5 on the basis that it seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, the Override Bonuses that NAF paid other Regional Managers who had separate agreements with NAF are irrelevant to whether NAF was obligated to pay Plaintiff certain Override Bonuses at any given point in time. NAF further objects to Interrogatory No. 5 on the basis that it would be unduly burdensome to attempt to conduct a search of the Override Bonuses paid

to all Regional Managers. In addition, NAF objects to Interrogatory No. 5 as overbroad since it requests documents from years before Plaintiff began work at NAF.

In light of the foregoing objections, NAF is declining to provide information responsive to this Interrogatory.

**Interrogatory No. 6**: **Describe with specificity each basis for any change in Ms. Spearman's compensation after she signed NAF's employment agreements on November 6, 2026 [sic] and prior to March 1, 2020 and provide the name, address, and telephone number of any individual who made the decision to alter Ms. Spearman's compensation and/or participated in the decision, as well as any and all documents, materials, and reports used to arrive at said decision.**

**Response**: NAF objects to Interrogatory No. 6 as overboard and unduly burdensome as it seeks "any and all documents, materials, and reports used to arrive at" the decision to change Plaintiff's compensation.

Subject to and without waiving the foregoing objection, NAF will produce business records that identify the changes to Ms. Spearman's compensation from November 2016 to March 2020. These documents include written amendments to Plaintiff's various compensation schedules. NAF refers Plaintiff to these documents in accordance with Fed. R. Civ. P. 33(d). These documents moreover provide the

5

names of the persons involved in these compensation decisions, contact information for which has been provided in NAF's Initial Disclosures.

**Interrogatory No. 7**: **Describe with specificity why NAF amended Schedule 1 to the Regional Manager Agreement effective March 1, 2020 and who participated in the decision to amend Schedule 1.**

    **Response**: NAF objects to Interrogatory No. 7 on the basis that it seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, Plaintiff has not argued that NAF breached the Amended Schedule 1, nor that she suffered damages Amended Schedule 1. NAF also objects to Interrogatory No. 7 on the ground that it invades the attorney-client privilege and work product doctrine following Plaintiff's engagement of counsel as early as October 2019.

    In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.

**Interrogatory No. 8**: **Describe with specificity why NAF eliminated "Override Bonuses" from its March 1, 2020 Amendment to Schedule 1 to the Regional Manager Agreement and who participated in that decision.**

    **Response**: NAF objects to Interrogatory No. 8 on the basis that it seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, Plaintiff has not argued that NAF

6

16919653v3

breached the Amended Schedule 1, nor that she suffered damages Amended Schedule 1. NAF also objects to Interrogatory No. 8 on the ground that it invades the attorney-client privilege and work product doctrine following Plaintiff's engagement of counsel as early as October 2019.

In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.

**Interrogatory No. 9**: **Describe with specificity who was involved in implementing NAF's policy relating to the reduction of Loan Officer compensation on DPA/Bond loans which disincentivize a Loan Officer from offering a Down Payment Assistance loan to a client.**

**Response**: NAF objects to Interrogatory No. 9 on the basis that it seeks information that is overbroad, unduly burdensome, and not proportional to the needs of the case as NAF's decision regarding Loan Officer compensation on DPA/Bond loans did not directly affect the compensation of Senior Vice Presidents like Plaintiff. Thus, requests that seek information on NAF compensation decisions relative to other employees – and are not at issue in this dispute -- are unduly burdensome and not proportional to the needs of the case.

In light of the foregoing objections, NAF notes that Jan Preslo and Jon Reed were involved in implementing NAF's policy regarding the reduction of Loan Officer compensation on DPA/Bond loans.

**Interrogatory No. 10**: Describe with specificity who was involved in implementing NAF's policy related to the introduction of two (2) new source codes that incentivize a Loan Officer to charge higher rates to customers in order to earn higher bps.

**Response**: NAF objects to Interrogatory No. 10 on the basis that it seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case. Specifically, NAF's decision regarding the introduction of source codes that could impact the rates on certain loans is entirely irrelevant to the breach of contract and unjust enrichment claims at issue.

In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.

**Interrogatory No. 11**: Describe in detail all instances in which NAF contends it notified Ms. Spearman of a change in compensation whether oral, or in writing, including who provided notification to Ms. Spearman.

**Response**: NAF incorporates its response to Interrogatory No. 6 as if fully stated herein. In addition, NAF will produce business records identifying its notifications to Plaintiff of her compensation changes. NAF refers Plaintiff to these documents in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 12**: Describe in detail NAF's practice and policies relating to payment of marketing costs from 2012 to November 2016 to Regional Managers

**in NAF's Divisions prior to the development of the Southeastern Region for which NAF hired Ms. Spearman.**

**Response**: NAF objects to Interrogatory No. 12 on the basis that it seeks information that is not relevant to any party's claims or defenses. Specifically, NAF's practice and policies regarding marketing costs for the years prior to Plaintiff's employment has no bearing on whether NAF was required to pay or reimburse marketing costs starting in February 2019, which is the only time period at issue in this dispute relative to marketing costs. In addition, NAF objects to Interrogatory No. 12 on the basis that requests that seek information on NAF policies predating Plaintiff's employment are overbroad, unduly burdensome, and not proportional to the needs of the case.

In light of the foregoing objections, NAF declines to provide information responsive to this Interrogatory.

**Interrogatory No. 13**: **Describe in detail NAF's practice and policies relating to payment of marketing costs to Regional Managers in NAF's Southeastern Region from 2016 to the present and how it changed, if at all, during that time period.**

**Response**: NAF objects to Interrogatory No. 13 on the basis that, in large part, it seeks information that is not relevant to any party's claims or defenses. Specifically, NAF's practice and policies regarding marketing costs prior to and after

9

16919653v3

Plaintiff's employment has no bearing on whether NAF was required to pay or reimburse marketing costs starting in February 2019, which is the only time period at issue in this dispute relative to marketing costs. In addition, NAF objects to Interrogatory No. 12 on the basis that requests that seek information on NAF policies predating and postdating Plaintiff's employment are overbroad, unduly burdensome, and not proportional to the needs of the case.

Subject to the foregoing objections, starting in November 2016, Plaintiff's marketing budget was 7.5 bps. In February 2019, Plaintiff was informed that marketing cost allowances were being adjusted to promote NAF's profitability. In a March 29, 2019 email, Plaintiff acknowledged that she and Ms. Allison would absorb all Southeast marketing expenses. Then, in April 2019, NAF stated via email that it would pay all marketing expenses for the Virginia and Tennessee Teams who were approved for such costs in their offer letters. From July through September 2019, NAF gave Plaintiff $10,000 per month for marketing costs.

In addition to the foregoing, NAF will produce business records showing its changes to marketing costs in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 14**: **Describe in detail NAF's practice and policies relating to NAF's compensation for Pricing Exceptions for each of NAF's Regional Managers from 2014 to the present and how it changed, if at all, during that time period.**

16919653v3

**Response**: NAF objects to Interrogatory No. 14 on the basis that it seeks information that is not relevant to any party's claims or defenses. Specifically, Pricing Exception compensation for each of NAF's Regional Managers, including for the years before and after Plaintiff's employment, is not relevant to Plaintiff's claim that NAF wrongfully changed her Pricing Exception compensation. In addition, NAF objects to Interrogatory No. 14 as overbroad and unduly burdensome because it seeks Pricing Exception compensation for all NAF Regional Managers (and not just Plaintiff), and includes years in which Plaintiff was not employed with NAF and periods in which Pricing Exception compensation is not at issue.

Subject to and without waiving the foregoing objections, NAF will produce business records showing its Pricing Exception compensation as to Plaintiff from November 2016 to April 2020 in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 15**: **Describe with specificity the criteria used by NAF to assign territories to Regional Managers and NAF's policies for reassigning territories from 2014 to the present and how that criteria and those policies changed, if at all, during this time period.**

**Response**: NAF objects to Interrogatory No. 15 on the basis that it is overbroad as it seeks information regarding NAF's policies for assigning and reassigning territories for years prior to and after Plaintiff's employment. NAF further objects to Interrogatory No. 15 on the ground that the reasons for any territory

changes is wholly irrelevant to and not proportional to the needs of this case given the Plaintiff's territory expressly could be changed at any time in NAF's sole discretion.

Subject to and without waiving the foregoing objection, NAF has no set policy regarding territory assignments. Rather, such assignments are made at NAF's discretion and based on its business needs from time-to-time.

**Interrogatory No. 16**: **Describe with specificity why NAF removed Tennessee and Virginia from Ms. Spearman's territory, including who participated in making the decision, and the rationale for the decision, including the timing of the action to remove these territories from Ms. Spearman.**

**Response**: In November 2019, NAF decided to have Eric Fellows ("Mr. Fellows") and Michelle Hoefle ("Ms. Hoefle") split off from the Southeast Region and have Virginia and Tennessee report directly to NAF. Christy Bunce ("Ms. Bunce"), Jan Preslo ("Ms. Preslo"), and Jon Reed ("Mr. Reed") participated in making that decision.

In terms of the reasons for this decision, NAF states as follows:

a. Mr. Fellows and Ms. Hoefle communicated to Ms. Preslo that they wanted to separate from the Southeast Region, in part, because they felt that they were not being supported in the Southeast Region.

    b.    Ms. Allison suggested to Mr. Fellows and Ms. Hoefle that they break off from the Southeast Region, as Ms. Allison noted that she and Plaintiff were not making any money off of production from Tennessee and Virginia.

    c.    NAF was concerned that Plaintiff was planning to leave NAF.

**Interrogatory No. 17**: **Describe with specificity NAF's budget, policies and practices for paying marketing costs (including but not limited to TV commercials, magazine ads, billboards, lead generation contracts, special events and promotional items).**

    **Response**: NAF objects to Interrogatory No. 17 as duplicative of Interrogatory No. 13. Subject to and without waiving the foregoing objection, NAF incorporates its response to Interrogatory No. 13 as if fully stated herein, and will produce business records showing its marketing costs policies in accordance with Fed. R. Civ. P. 33(d).

**Interrogatory No. 18**: **Describe with specificity the $30 million shortfall NAF sustained that was discussed at the February 2019 meeting.**

    **Response**: NAF objects to Interrogatory No. 18 on the basis that it seeks information that is not relevant to any party's claims or defenses. Specifically, any revenue shortfall has nothing to do with whether Plaintiff has any viable breach of contract or unjust enrichment claims.

16919653v3

In light of the foregoing objection, NAF declines to provide information responsive to this Interrogatory.

**Interrogatory No. 19**: **Identify each individual whom you expect to consult with or call at trial as an expert witness and state his or her field of expertise, the subject matter on which he or she is expected to testify, and a summary of the grounds for each opinion in accordance with Fed. R. Civ. P. 26(a)(2).**

**Response**: NAF objects to Interrogatory No. 19 as premature as NAF has not yet determined whether it will consult with or call any expert witnesses in this matter, NAF will supplement this response in accordance with Fed. R. Civ. P. 26.

Respectfully submitted this 13th day of August, 2021

/s/ *Henry M. Perlowski*
Henry M. Perlowski
Georgia Bar No. 572393
Henry.Perlowski@agg.com
T. Chase Ogletree
Georgia Bar No. 579860
Chase.Ogletree@agg.com

*Counsel for Defendant Broker Solutions, Inc. d/b/a New American Funding*

**ARNALL GOLDEN GREGORY LLP**
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
Telephone (404) 873-8684
Facsimile: (404) 873-8685

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2021, a true and correct copy of the above and foregoing was served, via electronic mail, on counsel for Plaintiff:

Marybeth V. Gibson
mbgibson@thefinleyfirm.com
Travis C. Hargrove
thargrove@thefinleyfirm.com
N. Nicholas Jackson
njackson@thefinleyfirm.com
THE FINLEY FIRM, P.C.
3535 Piedmont Road Building 14, Suite 230
Atlanta, Georgia 30305
Telephone (404) 320-9979
Facsimile: (404) 320-9978
*Counsel for Plaintiff*

                                                   /s/ *Henry M. Perlowski*
                                                   Henry M. Perlowski

16919653v3