# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GINA SPEARMAN,

      Plaintiff,

v.

BROKER SOLUTIONS, INC., d/b/a
NEW AMERICAN FUNDING,

      Defendant.

Case No. 1:20-cv-04981-CAP

## FED. R. CIV. P. 37(a)(1) CERTIFICATE OF MARYBETH V. GIBSON

On behalf of Plaintiff, Gina Spearman, ("Ms. Spearman"), I, MaryBeth V. Gibson, counsel of record for Ms. Spearman, certify pursuant to Fed. R. Civ. P. 37(a)(1) that I have in good faith conferred with counsel for Defendant on several occasions to resolve the discovery disputes which form the basis of Ms. Spearman's *Motion to Compel and Memorandum in Support Thereof* (the "Motion"), which is filed concurrently herewith, and state as follows:

1.  The Motion seeks an order from the Court compelling responses from Defendant to Plaintiff's First Interrogatories Nos. 5, 7, 8, 10, 12, and 18, served July 2, 2021, and Defendant's responses to Plaintiff's First Requests for Production Nos. 10, 14, 15, 16, 17, 18, 26, 27, 35, 38, 39, and 40 served on July 2, 2021.

2.  Prior to filing the Motion, I sent several letters (and email correspondence) to Defendant's counsel about Defendant's incomplete discovery

responses, including correspondence dated September 9, 2021, and October 1, 2021, attached hereto as Exhibits A and B respectively.

3.      I also conferred with counsel for Defendant by telephone to discuss the disputed discovery responses in an effort to address the parties' disagreement and avoid seeking the Court's intervention.  This call occurred on September 20, 2021.

4.      On October 7, 2021, Defendant's counsel sent correspondence in which they affirmed that Defendant would not supplement their responses as requested.  A copy of that letter is attached as Exhibit C.

5.      Because Ms. Spearman's good faith efforts have not been successful and because Defendant continues to refuse to provide complete responses, and in most instances provides no responses at all to the disputed discovery requests, Ms. Spearman has been forced to file this Motion.

This 21st day of October, 2021.

/s/ MaryBeth V. Gibson
MARYBETH V. GIBSON
Georgia Bar No. 725843
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Telephone: (404) 320-9979
Facsimile: (404) 320-9978
macgibson@thefinleyfirm.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I served the foregoing **FED. R. CIV. P. 37(a)(1) CERTIFICATE OF MARYBETH V. GIBSON** via the CM/ECF system, which will automatically provide-email notification and service of such filing to counsel of record for all parties registered with the Court for electronic filing, as follows:

Henry M. Perlowski
Henry.Perlowski@agg.com
T. Chase Ogletree
Chase.Ogletree@agg.com
**ARNALL GOLDEN GREGORY LLP**
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

This 21st day of October, 2021.

I further certify that the foregoing pleading has been prepared with Times New Roman, 14-point font, in compliance with L.R. 5.1B.

*/s/ MaryBeth V. Gibson*
MARYBETH V. GIBSON

# EXHIBIT A



THE FINLEY FIRM, P.C.
ATTORNEYS AT LAW

**MaryBeth V. Gibson**
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305

MGibson@TheFinleyFirm.com
404.320.9979
1.866.538.7033
Fax: 404.320.9978
www.TheFinleyFirm.com

September 9, 2021

*<u>Sent Via Email</u>*
Broker Solutions, Inc., d/b/a New American Funding
c/o Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
Arnall Golden Gregory LLP
171 17th St. NW, Suite 2100
Atlanta, GA  30363
henry.perlowski@agg.com
chase.ogletree@agg.com

      RE:    *Spearman v. Broker Solutions, Inc., d/b/a New American Funding*
             (N.D. Ga. Civil Action No. 1:20-cv-04981-CAP)

Dear Counsel:

    This letter is sent pursuant to Fed. R. Civ. P. 37 and N.D. Ga. L.R. 37.1 in a good faith effort to identify deficiencies in Broker Solutions, Inc., d/b/a New American Funding's ("NAF") responses to Gina Spearman's First Interrogatories and First Requests for Production of Documents. We hope this letter (and any subsequent discussions that may be necessary) will resolve any potential discovery dispute concerning the issues identified herein.

## BOILERPLATE OBJECTIONS

    NAF's Responses to Plaintiff's First Interrogatories and First Request for Production of Documents contain boilerplate objections that are not warranted.  The boilerplate objections obfuscate NAF's intentions – is there information that is being withheld due to these objections or not? If not, Plaintiff requests that NAF withdraw them the boilerplate objections.

    NAF objects to every Interrogatory Ms. Spearman served.  The information Ms. Spearman requested and which it appears NAF is refusing to provide is pivotal to Ms. Spearman's case. NAF's narrow framing of the parties' dispute is antithetical to the broad purposes the Federal Rules promote. As you know, an interrogatory may relate to any matter that may be inquired into under Rule 26(b).  Fed. R. Civ. P. 33(a)(2); *see also*, Fed. R. Civ. P. 26(b)(1)("parties may obtain discovery regarding any nonprivileged matter that is relevant to any

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 2

party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."). Further, NAF's efforts to oversimplify the underlying dispute does not excuse NAF from providing responsive information even if that may be detrimental to NAF's defense.

Each response to Plaintiff's Requests for Production contain rote, boilerplate objections. The Federal Rules, The Sedona Conference and the Court prohibit boilerplate and general objections in response to written discovery requests. More specifically, the Northern District of Georgia has held that boilerplate objections are improper. *Bailey v. Trans Union, LLC*, Case No. 1:20-CV-173-AT-JKL, 2020 WL 10056271, at \*9 (N.D. Ga. Dec. 16, 2020) (citing *U.S.C.F.T.C. v. Am. Derivatives Corp.*, No. 1:05-CV-2492-RWS, 2007 WL 1020838, at \*3 (N.D. Ga. Mar. 30, 2007) (finding that boilerplate objections to discovery requests "are improper and will not be considered by the Court").

In this case, NAF has carelessly invoked a litany of *verbatim* objections to each request, e.g., this request "conceivably seeks the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine" and this request is "overly overbroad, unduly burdensome, and not proportional to the needs of the case" and this request "seeks information that is not relevant to any party's claims or defenses." NAF also objects in part and responds in part to nearly every single discovery request. Per the Federal Rules of Civil Procedure, a party is not permitted to raise objections and then state, "subject to these objections and without waiving them, the response is as follows . . .," unless the party expressly indicates whether additional information would have been included in the response but for the objection(s). Fed. R. Civ. P. 34(b)(2)(C) (requiring party asserting objection to "state whether any responsive materials are being withheld on the basis of that objection"). The boilerplate objections obfuscate NAF's intentions – is there information that is being withheld due to these objections or not? With respect to each request, please state whether NAF is withholding materials based on the asserted objections. If not, Plaintiff requests that NAF withdraw the boilerplate objections.

NAF has also asserted a privilege objection to almost every Request for Production. Thus, NAF's claim must be supported by a privilege log or statement of particulars sufficient to enable the Plaintiff (and the Court) to assess its validity. *See* Fed. R. Civ. P. 25(b)(5)(A).

NAF responds to several Interrogatories that it "will produce business records … in accordance with Fed. R. Civ. P. 33(d)." Similarly, NAF states that in response to Requests for Production that "subject to and without waiving the foregoing objection, NAF will produce relevant, non-privileged documents." NAF's production is deficient in that the documents produced do not correspond with any Interrogatory or Request. Therefore, Plaintiff cannot appropriately determine which documents are produced in connection with each specific Interrogatory or Request. *See,* Fed. R. Civ. P. 33(d)(1); Rule 34(b)(2)(E)(i); *Velez v. Evy L&L Services*, Case No. 8:18-CV-1696-T60SPF, 2019 WL 7286601, at \*4 (M.D. Fla. Dec. 13, 2019)

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 3

("[Defendant] is directed to organize and label any documents that it has produced to correspond to the categories in the requests or to reproduce the documents with Bates stamp numbers and identify by Bates stamp numbers which documents are responsive to which requests."). Please modify your Responses to include the range of Bates Numbers that are responsive to Interrogatory Nos. 2, 3, 4, 6, 11, 13, 14 and 17 and Requests for Production Nos. 1, 4-12, 14-17, 19-21, 23, 25 28-33, 36 and 37.

We have addressed each individual request below and look forward to receiving NAF's response. It is our hope that this letter will resolve any discovery dispute, or potential dispute, concerning these issues.  If you would like to schedule a call to discuss in the next seven days, let me know.

## INTERROGATORY RESPONSES

**Interrogatory No. 5:** This Interrogatory asks NAF to identify the Regional Managers to whom NAF paid an Override Bonus for any of the loans listed in Section 1.4B of Schedule 1. This information is clearly relevant because the underlying action alleges a breach of contract stemming from NAF's failure to properly compensate Ms. Spearman according to the terms of her employment agreements with NAF. As a result, NAF's methods, practices, and procedures of paying *other* Regional Managers for the same loans identified in Section 1.4B is highly relevant to the breach at hand as the information sought may lend support to Plaintiff's claims as well as potential claims she may have. The request is proportional to the needs of the case because NAF did not employ an extraordinary number of Regional Managers for the time period requested. Please supplement NAF's response to identify as requested the Regional Managers to whom NAF did pay an override bonus for any loan listed in Section 1.4B.

**Interrogatory No. 7:** This Interrogatory seeks information regarding why NAF amended Schedule 1 and who participated in the decision to do so. The Offer Letter and Regional Manager Agreement explicitly provide that material terms of Ms. Spearman's employment may only be altered by written agreement. Ms. Spearman's compensation was not amended in writing until the March 1, 2020, amendment became effective.  Ms. Spearman is entitled to know why NAF decided to amend Ms. Spearman's agreement in writing on March 1, 2020. - This interrogatory is relevant to her claims.  NAF's refusal to respond is inappropriate.   Please supplement to provide a substantive response.

**Interrogatory No. 8:** One of the key questions in the case is whether NAF ever had any intention of paying Ms. Spearman an Override Bonus.  Interrogatory No. 8 asks NAF to describe why it amended Ms. Spearman's compensation in the March 1, 2020, amendment to eliminate the "Override Bonus" from Ms. Spearman's compensation.  For NAF to argue that this interrogatory is "not relevant to any party's claims or defenses and is not proportional to the needs of the case" is not credible.  In fact, this interrogatory seeks information that may lead to the discovery of information demonstrating NAF had no intention of paying Override Bonuses when it initially lured Ms. Spearman with a promise to pay her Override Bonuses.  The decision to amend Ms. Spearman's compensation, in writing, is relevant to this case. Please supplement to provide a substantive response.

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 4

**Interrogatory No. 10:** This Interrogatory requests information regarding the individuals involved in implementing two (2) new source codes that incentivize a Loan Officer to charge higher rates to customers in order to earn a higher bps. Ms. Spearman was opposed to NAF's implementation of these source codes and voiced her concern regarding this practice to NAF. NAF's objection that the introduction of these source codes is "entirely irrelevant" to the breach of contract and unjust enrichment claims at issue is misplaced. On the contrary, information surrounding these decisions relates to NAF's motive behind its actions towards Plaintiff. Please supplement to provide a substantive response.

**Interrogatory No. 12:** This Interrogatory seeks information regarding NAF's practice and policies relating to the payment of marketing costs to Regional Managers prior to the time that Ms. Spearman was hired. NAF has objected to this Interrogatory and refused to respond. NAF's payment of marketing costs is at direct issue in this action. Plaintiff has sued NAF to recoup marketing costs that it expended on behalf of the Company. Thus, how NAF routinely handled paying marketing costs is relevant to Plaintiff's claims. Please supplement to provide a substantive response.

**Interrogatory No. 18:** This Interrogatory seeks information regarding NAF's thirty-million-dollar misallocation of funds that was proffered as the justification for reducing Plaintiff's compensation at the February 2019 meeting. At the meeting, NAF and its officers claimed that NAF was suffering financially stemming from the Company's misallocation of thirty-million-dollars. Up until this time, NAF refused to pay Ms. Spearman the Override Bonuses identified in her employment agreement. At the February 2019 meeting, NAF articulated a specious reason for not paying Ms. Spearman per the terms of her agreement. NAF told Ms. Spearman her compensation was being changed to assist the Company during its financial hardship. Furthermore, evidence relating to this Request may support a claim of fraud as it appears that NAF never intended to pay Ms. Spearman per the terms of her agreements. Therefore, NAF's objections are baseless. Please supplement to provide a substantive response.

## RESPONSES TO DOCUMENT REQUESTS

**Request No. 10:** Plaintiff requested NAF produce all written communications by and between its officers and Human Resources regarding Plaintiff's compensation, including Override Bonuses, for the term preceding, during and after Plaintiff's employment. NAF objected based on attorney-client privilege, work product and claimed in boilerplate fashion, that the Request was overly broad, unduly burdensome, and not proportional to the needs of the case." Nevertheless, it appears NAF agreed to produce documents responsive to these objections. If NAF is withholding any documents responsive to this request, please identify what is being withheld and the basis for such.

**Request No. 12:** NAF again raised boilerplate objections to producing Ms. Spearman's personnel file but agreed to produce responsive documents. Has NAF produced a complete and accurate copy Ms. Spearman's employment file? If NAF is withholding any documents responsive to this request, please identify what is being withheld and the basis for such.

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 5

**Request No. 13:** NAF objected to producing Plaintiff's loan production from 2016 through March 2020 based on attorney-client privilege, work product and raised boilerplate objections "overly broad, unduly burdensome, and not proportional to the needs of the case." NAF inquired how to reasonably limit this request. Plaintiff's Request seeks the monthly territory production sheets that NAF maintained in the ordinary course of business and provided to Ms. Spearman. These documents reflect the amount of compensation Ms. Spearman received, the amount of compensation Ms. Spearman should have received, as well the total loan production within her territory. If NAF intends to withhold any documents responsive to this request, please explain the basis for such.

**Request No. 14:** NAF objected based on attorney-client privilege, work product doctrine and raised boilerplate objections "overly broad, unduly burdensome, and not proportional to the needs of the case." It is inconceivable how Plaintiff's request for documents concerning payment of Override Bonuses to Gina Spearman and Kelly Allison from November 6, 2016, through March 1, 2020 during the course of Plaintiff's employment and before she resigned could involve any privilege or how this request could possibly be broad and burdensome given the routine nature of these documents. If NAF is withholding any documents responsive to this request, please identify what is being withheld and the basis for such.

**Request Nos. 15, 16 and 17:** NAF objected to these Requests seeking documents reflecting NAF's internal discussions relating to Ms. Spearman's employment agreements, NAF's practice of paying 7.5 bps for Marketing Expenses, and communications related to the February 2019 Leadership meeting that resulted in NAF no longer paying Marketing Expenses, based on attorney-client privilege, work product doctrine and raised boilerplate objections "overly broad, unduly burdensome, and not proportional to the needs of the case". Subject to its objections, NAF agreed to produce responsive documents. If NAF is withholding any documents responsive to these requests, please identify what is being withheld and the basis for such.

**Request No. 18:** NAF objected to producing documents concerning the misallocation of thirty million dollars NAF Officers reported at the February 2019 Leadership meeting based on attorney-client privilege, work product doctrine and claimed that Request is "not relevant to any claims or defenses as the reasons NAF may have changed compensation in February 2019 have no bearing on Plaintiff's entitlement to any such compensation." Plaintiff has alleged that NAF verbally reduced Ms. Spearman's compensation at the Leadership Meeting. ECF 9, Complaint, ¶ 63. Plaintiff alleged NAF breached the contract by reducing her compensation without a writing as required by the employment agreements. ECF 9, ¶ 52. This Request seeks all documents concerning the misallocation of thirty-million-dollars that was reported at the 2019 Leadership meeting as the basis for reducing Plaintiff's compensation. Ms. Spearman is entitled to know whether that representation was true when it was made. As discussed in Ms. Spearman's response to Interrogatory No. 18, NAF's alteration of Ms. Spearman's compensation as a result of the thirty-million-dollar misallocation is pertinent to the claims alleged and whether NAF ever had any intention of paying Plaintiff the bonuses promised in her employment agreements. Plaintiff rejects NAF's unilateral narrowing of the parties' dispute and what it deems to have "bearing on Plaintiff's entitlement" to compensation. These documents are relevant to the claims, and thus, these documents should be produced.

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 6

Request No. 24: This Request seeks all documents concerning the productivity of Ms. Spearman's territories. These documents are a necessary component of Ms. Spearman's case, as her loan production determined her compensation. The word "productivity" is not vague in the context of this case, or in the mortgage industry, in general. Or, to the extent NAF does not know what we mean, we ask that you provide all documents reflecting the metrics that NAF used to assess the success of its territories. NAF maintained these documents in the regular course of business, and the documents should be produced.

Request No. 26: This Request seeks all documents reflecting the profit NAF made on the loans generated by loan officers in Ms. Spearman's territories. In its objections, NAF is clearly conflating the issue of proof of amount of Plaintiff's compensation with Defendant's breach of the employment agreements.   NAF's contention that its profit on any loan has no bearing on whether NAF could legally change Plaintiff's compensation is simply not responsive to its obligation to produce responsive documents.  The information may provide a basis from which a jury can determine the amount of damages to award or the extent of the malfeasance of NAF's officers.  This information is subject to discovery.  Yet, NAF has refused to produce **any** documents. Please supplement to provide a substantive response.

Request No. 27: This Request seeks documents concerning any communication regarding the March 1, 2020, written amendment to Schedule 1 of the RMA. NAF asserts that the request is not relevant to Ms. Spearman's claims. However, the alteration of Ms. Spearman's compensation is directly at issue in this action. How plain can Plaintiff make this? NAF recruited Plaintiff and promised to pay Override Bonuses and agreed that any change to material terms of her employment would be made in writing.  NAF refused to pay Plaintiff Override Bonuses. NAF did not change the material terms of Plaintiff's employment in writing until March 1, 2020. Therefore, at a minimum, Ms. Spearman may be entitled to recover Override Bonuses for the period prior to the written modification.  The Court made clear in its Order denying Defendant's Motion to Dismiss, this is relevant to Plaintiff's claims and may substantiate a fraud claim. NAF's objections are groundless.  Please let us know when we can expect to receive responsive documents.

Request No. 29: NAF unilaterally limited its response to "documents containing conversations regarding compensation and territory changes."  Plaintiff's request No. 29 sought all communications from Christy Bunce to Gina Spearman and/or Kelly Allison from November 6, 2016, to April 13, 2020.  There is no basis for NAF's undue narrowing of Plaintiff's request as Plaintiff's allegations are broader than "compensation and territory changes."  Please provide all responsive documents.

Request No. 30: NAF unilaterally limited its response to "documents containing conversations regarding compensation and territory changes."  Plaintiff's request No. 30 sought all communications from Jon Reed to Gina Spearman and/or Kelly Allison from November 6, 2016 to April 13, 2020.  There is no basis for NAF's undue narrowing of Plaintiff's request as Plaintiff's allegations are broader than "compensation and territory changes."  Please provide all responsive documents.

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 7

**Request No. 31:** NAF unilaterally limited its response to "documents containing conversations regarding compensation and territory changes." Plaintiff's request No. 31 sought all communications from Jan Preslo to Gina Spearman and/or Kelly Allison from November 6, 2016, to April 13, 2020. There is no basis for NAF's undue narrowing of Plaintiff's request as Plaintiff's allegations are broader than "compensation and territory changes." Please provide all responsive documents.

**Request No. 32:** Again, NAF unilaterally limited its response to "documents containing conversations regarding compensation and territory changes." Plaintiff's request No. 32 sought all communications from Rick Arvielo to Gina Spearman and/or Kelly Allison from November 6, 2016, to April 13, 2020. There is no basis for NAF's undue narrowing of Plaintiff's request as Plaintiff's allegations are broader than "compensation and territory changes." Please provide all responsive documents.

**Request No. 35:** This Request concerns the employment contracts for all Regional Managers from January 2016 through March 2020. NAF contends that the employment contracts of other Regional Managers have no bearing on Ms. Spearman's employment contract and claims pursuant to that contract. Nothing could be further from the truth. NAF's practice and procedure of paying Override Bonuses, Marketing Expenses, and Pricing Exceptions for all managers is highly relevant to Ms. Spearman's claims. This action alleges a breach of contract stemming from NAF's failure to properly compensate Ms. Spearman. NAF's practice and procedure of paying *other* Regional Managers pursuant to the terms of NAF's contracts is highly relevant to the claims made in this case. Accordingly, documents responsive to this request should be produced.

**Request Nos. 38-39:** These Requests seeks all communications from NAF officers and Regional Managers including but not limited to Rick Arvielo, Patty Arvielo, Kristin Ankeny, and Sam Ellsworth to Jason Redman and Eric Glick from October 2019 through March 2020. These Requests are narrow in time and scope and are relevant to the claims made by Plaintiff. Therefore, responsive documents should be produced.

**Request No. 40:** This Request concerns all documents relating to the chain of custody of Ms. Spearman's laptop. NAF improperly implied that Ms. Spearman retained her laptop when in fact she had promptly returned it to NAF after her resignation. NAF has refused to produce documents responsive to this Request with no justification. Other than simply refusing, NAF has not submitted a valid objection to this Request. Ms. Spearman's counsel sent a preservation letter to opposing counsel on May 5, 2021, regarding this issue. The chain of custody and possible spoliation of evidence contained on Plaintiff's laptop is relevant to this action and should, be produced. If NAF has the laptop, produce documents supporting its chain of custody after Ms. Spearman's return of the laptop on May 9, 2020.

Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
September 9, 2021
Page 8

I look forward to discussing these issues at a mutually convenient time.

Sincerely,

*/s/ MaryBeth V. Gibson*
**THE FINLEY FIRM, P.C.**
MaryBeth V. Gibson

cc:    Travis Hargrove *via* email
       N. Nickolas Jackson *via* email

8

# EXHIBIT B



THE FINLEY FIRM, P.C.
ATTORNEYS AT LAW

**MaryBeth V. Gibson**
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305

MGibson@TheFinleyFirm.com
404.320.9979
1.866.538.7033
Fax: 404.320.9978
www.TheFinleyFirm.com

October 1, 2021

*Sent Via Email*
Broker Solutions, Inc., d/b/a New American Funding
c/o Henry M. Perlowski, Esq.
T. Chase Ogletree, Esq.
Arnall Golden Gregory LLP
171 17th St. NW, Suite 2100
Atlanta, GA  30363
henry.perlowski@agg.com
chase.ogletree@agg.com

      RE:    *Spearman v. Broker Solutions, Inc., d/b/a New American Funding*
                (N.D. Ga. Civil Action No. 1:20-cv-04981-CAP)

Dear Counsel:

Plaintiff sends this letter in response to Broker Solutions, Inc., d/b/a New American Funding's ("NAF") letter dated September 24, 2021. Plaintiff is writing in good faith in her second attempt pursuant to Fed. R. Civ. P. 37 and N.D.Ga. L.R. 37.1 to resolve the deficiencies Plaintiff identified in her letter of September 9, 2021 and NAF's ongoing blanket refusal to respond. If NAF is unwilling to provide documents and responses to the requests and interrogatories identified below, Plaintiff will have no choice other than to file a Motion to Compel with the Court. Plaintiff also responds to NAF's requests for supplementation from Ms. Spearman.

### NAF's Responses to Ms. Spearman's Letter of September 9, 2021

NAF admits that it is withholding non-privileged documents on "relevancy" and "proportionality" grounds and refuses to run additional searches for documents it deems are "irrelevant or otherwise objectionable." (P. 4, Para. 3, 4.). In a conclusory fashion, NAF deems information Plaintiff requested as "irrelevant" and dismissively states it will not supplement its response. These responses hardly meet even the threshold of a "good faith effort" required of Fed. R. Civ. P. 37 and Local Rule 37.1 to resolve discovery disputes. Plaintiff explained in painstaking detail in her eight page letter why the information requested is important to the issues at stake in the action, particularly in light of the Court's Order on the Defendant's Motion

Letter to Henry Perlowski, Esq.
October 1, 2021
Page 2

to Dismiss. [Doc. 21.]    In the spirit of seeking resolution without the Court's intervention, Plaintiff will address each of NAF's responses and again explain why NAF is obligated to provide the material and information requested given the importance of the discovery in resolving the issues before the Court.

## **Interrogatory Requests**

Interrogatory No. 5:   NAF refused to supplement its response to Plaintiff's request that NAF identify the Regional Managers to whom NAF paid an Override Bonus for any of the loans listed in Section 1.4B of Schedule 1, claiming the time period was overbroad and that the request is irrelevant.  Plaintiff agrees to shorten the time period to 2016 to 2019.  This information is clearly relevant because the underlying action alleges a breach of contract stemming from NAF's failure to properly compensate Ms. Spearman according to the terms of her employment agreements with NAF. NAF thought Plaintiff was overcompensated and sought to reduce her compensation.  NAF's methods, practices, and procedures of paying *other* Regional Managers that were not as successful as Plaintiff for the same loans identified in Section 1.4B is highly relevant to the breach at hand as the information sought may lend support to Plaintiff's claims as well as potential claims she may have.

Interrogatory No. 7:   NAF refused to supplement its response to Plaintiff's Interrogatory seeking information regarding why NAF amended Schedule 1 and who participated in the decision to do so. The Offer Letter and Regional Manager Agreement explicitly provide that material terms of Ms. Spearman's employment may only be altered by written agreement. NAF produced hundreds of pages of documents in its production, none of which constitute a written agreement altering Ms. Spearman's compensation (a material term of her employment) *until* the the March 1, 2020 amendment.  The Court's Order held that "more evidence is necessary to ascertain [that] intent."  The subject matter of Interrogatory No. 7 pertains to NAF's intent.

Interrogatory No. 8:   NAF and Ms. Spearman negotiated an agreement that obligated NAF to pay a number of Override Bonuses.  The agreements provided the only mechanism by which NAF could change that agreement.  NAF's implication that it paid Ms. Spearman over $2 million in Override Bonuses and thus, she should be content and go away is improper, arrogant and misplaced.  Ms. Spearman is a valued leader in the mortgage industry and negotiated a contract that entitled her to be paid for multiple types of Override Bonuses.  Simply because NAF deemed Plaintiff was paid enough does not alleviate NAF of its contractual duties, nor its obligation to respond to Plaintiff's discovery on the subject matter.

Interrogatory No. 10:  NAF's policy regarding implementation of two new source codes is directly related to NAF's motive behind its actions towards Plaintiff and her compensation particularly since Ms. Spearman raised concerns over the use of these source codes and how they may violate the Dodd-Frank Act.  NAF implemented two source codes that permitted loan officers discretion to use a source code for a company generated lead on which the LO would be paid 70 bps (or 50 bps on a Connect Lead) and a different source code for a loan officer generated lead on which the LO would be paid 125 bps.  A loan officer wants higher compensation (125 bps versus 70 or 50 bps) incentivizing a loan officer not to ask for pricing

Letter to Henry Perlowski, Esq.
October 1, 2021
Page 3

concessions on a loan officer generated lead, thus tying the loan officer compensation to the interest rate offered.  Fewer pricing exceptions also means more profit for NAF.

Interrogatory No. 12:  In the spirit of compromise, Plaintiff narrows her time frame for this request to NAF's practice and policies relating to NAF's provision of a marketing budget for the Southeast Region from November 2016 through March 2020.

Interrogatory No. 18:  NAF verbally announced at its February 2019 Leadership meeting that it was going to change compensation, marketing budgets and pricing exceptions *because* it had misallocated 25-30 million dollars.  NAF cannot simply refuse to respond to discovery because *now* it conveniently deems its shortfall has no bearing on the NAF's impetus to change compensation. This information is within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims (whether NAF agrees or not), and proportional to the needs of the case given the significance and importance of this issue.

## Document Requests

Request Nos. 15, 16, and 17:  NAF admitted it is "withholding one non-privileged document related to Request No. 16 on the basis that it concerns NAF's marketing policy after Plaintiff left NAF and thus is not relevant to this dispute."  For the reasons set forth above with respect to Interrogatory No. 18, it is not up to NAF to refuse to produce based on its evaluation of relevance.  NAF finally amended its marketing policy after Plaintiff resigned – that document should be produced.

Request No. 18:  NAF refuses to produce documents to this request.  As explained above, NAF verbally announced at its February 2019 Leadership meeting that it was going to change compensation -  marketing budgets and pricing exceptions -  *because* it had misallocated 25-30 million dollars.  NAF cannot simply refuse to respond to discovery and produce responsive documents because it has *now* decided its shortfall has no bearing on NAF's changes to compensation. NAF can't change its tune to suit its needs.  This information is within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims (whether NAF agrees or not), and proportional to the needs of the case given the significance and importance of this issue.  All documents concerning the "misallocation" of thirty million dollars that NAF reported at the February 2019 leadership meeting should be produced.

Request No. 26:  Plaintiff's Override Bonuses were based on NAF's profits. NAF's profits and financial information is directly relevant to Plaintiff's claims and damages.  And, as explained, the information may provide a basis from which a jury can determine the amount of damages to award or the extent of the malfeasance of NAF's officers.  This information is plainly within the proper scope of discovery, is non-privileged, relevant to Plaintiff's claims (whether NAF agrees or not), and proportional to the needs of the case given the significance and importance of this issue.

Letter to Henry Perlowski, Esq.
October 1, 2021
Page 4

Request No. 27:    For the reasons explained above, documents concerning any communication regarding the March 1, 2020, written amendment to Schedule 1 of the RMA are material and relevant to the dispute.   The Offer Letter and Regional Manager Agreement explicitly provide that material terms of Ms. Spearman's employment may only be altered by written agreement. NAF produced hundreds of pages of documents in its production, none of which constitute a written agreement altering Ms. Spearman's compensation (a material term of her employment) *until* the March 1, 2020 amendment.   The Court's Order held that "more evidence is necessary to ascertain [that] intent."   The subject matter of Request No. 27 pertains to NAF's intent.   NAF states that "it has produced multiple written amendments to Schedule 1 and other schedules dating back to at least 2017 directly affecting Plaintiff's compensation. Accordingly, no additional documents are forthcoming."   But NAF can't unilaterally pick and choose what must be produced under the Rules, selecting documents it believes supports its position and withholding others.   Documents produced by NAF to date only demonstrate that NAF's officers were internally drafting various compensation models and didn't agree upon one until the March 1, 2020 Amendment presented to Ms. Spearman and signed by the parties.   NAF must produce **all** documents responsive to this request.

Request No. 35:   This Request concerns the employment contracts for all Regional Managers from January 2016 through March 2020. NAF contends that the employment contracts of other Regional Managers have no bearing on Ms. Spearman's employment agreement and her claims. Nothing could be further from the truth. Other Regional Managers who had the same agreement as Plaintiff and disputed NAF's refusal to pay Override Bonuses is highly relevant to Ms. Spearman's claims, especially if NAF caved and paid any other managers the Override when they persisted. Accordingly, documents responsive to this request should be produced.

Request Nos. 38-39:   NAF's response is convoluted, vague and non-responsive.  Plaintiff is confirming NAF's attestation that no responsive documents exist.

Request No. 40:   The chain of custody and possible spoliation of evidence contained on Plaintiff's laptop is relevant to this action and should, be produced.  If NAF has the laptop, produce documents supporting its chain of custody after Ms. Spearman's return of the laptop on May 9, 2020.

## **NAF's Requests for Supplementation from Ms. Spearman**

In response to NAF's requests for supplementation and alleged deficiencies in Ms. Spearman's responses to discovery, Plaintiff confirms that she has produced all documents in her possession regardless of the fact that these documents are in NAF's possession as they are documents generated by NAF.  No documents have been withheld on the basis that NAF generated and possesses these documents.  Plaintiff will supplement her production with and describe in detail the amounts she is owed for Override Bonuses that NAF did not pay on loans described in Schedule 1.4C and 1.4A.

Letter to Henry Perlowski, Esq.
October 1, 2021
Page 5


Please let us know by Monday at 5 pm if NAF intends to stand on these improper objections.  If so, Plaintiff will proceed with filing her Motion to Compel.  If NAF agrees to produce, please identify which responses NAF will respond to and provide responses by October 8, 2021.




Sincerely,

**THE FINLEY FIRM, PC**

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson


cc:    Travis Hargrove *via* email
       N. Nickolas Jackson *via* email

# EXHIBIT C



Atlanta Office
171 17th St. NW, Suite 2100
Atlanta, GA 30363
Direct Phone: 404.873.8684
Direct Fax: 404.873.8685
Email: henry.perlowski@agg.com

October 7, 2021

**Sent Via Electronic Mail**

MaryBeth V. Gibson, Esq.
Travis Hargrove, Esq.
N. Nickolas Jackson, Esq.
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
MGibson@thefinleyfirm.com
thargrove@thefinleyfirm.com
njackson@thefinleyfirm.com

> Re:    *Spearman v. Broker Solutions, Inc. d/b/a New American Funding* (N.D. Ga. Civil Action No. 1:20-cv-04981-CAP)

Dear Counsel:

This letter serves as Broker Solutions, Inc. d/b/a New American Funding's ("NAF") response to Plaintiff Gina Spearman's letter of October 1, 2021 regarding requested supplementation of the parties' respective discovery responses to date.

## I.     NAF's Requests for Supplementation from Ms. Spearman

Plaintiff confirmed that she has produced all documents in her possession regardless of whether those documents are also in NAF's possession, and that she will supplement her production by describing in detail the amounts she contends that she is owed for override bonuses described in Sections 1.4A and 1.4C of Schedule 1. Plaintiff, however, did not confirm that she would produce a privilege log. To that end, please ensure that Plaintiff provides a privilege log in the near future and sufficiently before depositions are taken, noting that Plaintiff engaged prior legal counsel well before she left her employment with NAF.

## II.    Ms. Spearman's Requests for Supplementation from NAF

### A.     Interrogatory Requests.

Interrogatory No. 5: This interrogatory requests that NAF identify the regional managers to whom NAF paid an override bonus for any of the loans excluded from override bonuses pursuant to Section 1.4B of Schedule 1. As continued justification for expanding this dispute beyond the

17168404v4



compensation sought by Plaintiff in connection with her breach of contract and unjust enrichment claims, Plaintiff argues that NAF's payment of Section 1.4B excluded loans to other regional managers who were not as successful as Plaintiff is relevant "as the information sought may lend support to Plaintiff's claims as well as potential claims she may have." Please understand that NAF still contends that this information is neither relevant nor proportional to the specific dispute at issue, whether NAF was contractually obligated to pay Plaintiff certain override bonuses. With this said, NAF never paid any regional manager override bonuses on loans excluded from override bonuses per Section 1.4B of Section 1 (or any other analogous provision). NAF will supplement this discovery response to state as much.

Interrogatory No. 7: This interrogatory requests information on why NAF amended Schedule 1 in March 2020 and who participated in that decision. Plaintiff argues that this is relevant to NAF's "intent," including whether a written agreement was required for compensation changes.

As NAF stated in its objection, why NAF amended Schedule 1 effective March 1, 2020, is irrelevant to the issues in dispute, as Plaintiff has not alleged that NAF breached the Amended Schedule 1, or that she suffered damages as a result of that amendment. Further, why and how NAF chose to amend Schedule 1 invades the attorney-client privilege and work product doctrine following Plaintiff's engagement of counsel as early as October 2019, and NAF's subsequent engagement of counsel. These communications are accounted for in NAF's privilege log. Furthermore, contrary to Plaintiff's claims, the March 2020 Amended Schedule 1 was not the first written amendment to Plaintiff's compensation as evidenced by the dozens of written amendments to various schedules that were provided to Plaintiff during her employment and that NAF has produced. Accordingly, NAF declines to supplement its response to Interrogatory No. 7.

Interrogatory No. 8: This interrogatory requests information on why NAF eliminated override bonuses in March 2020. Please refer to the discussion of Interrogatory No. 7 above. In addition, Plaintiff provides no additional reasons why this request is relevant to any of Plaintiff's claims, all of which relate to compensation allegedly owed prior to March 2020. Instead, Plaintiff merely accuses NAF of implying that because Plaintiff received approximately $2 million in override bonuses, "she should be content and go away." This statement is misleading at best. NAF referenced the approximately $2 million in override bonuses that NAF paid Plaintiff to rebut Plaintiff's false claim that NAF "lured" her to NAF without intending to pay her any override bonuses. Accordingly, NAF declines to supplement its response to Interrogatory No. 8.

Interrogatory No. 10: This interrogatory requests information on who implemented two new source codes. Plaintiff claims this issue is relevant because she "raised concerns" about the two source codes, which could have affected NAF's motive behind its decisions with respect to Plaintiff's compensation.

Responding to this wholly speculative assertion, Plaintiff has not brought a retaliation claim, noting that NAF did not terminate Plaintiff (she resigned) and NAF modified <u>every</u> regional manager's compensation (not just Plaintiff's). As NAF stated in its objection, <u>who</u> was involved in implementing NAF's policy regarding two new source codes has no bearing on the claims actually asserted in this



litigation: Plaintiff's breach of contract claim (that concerns override bonuses) and unjust enrichment claims (that concern pricing exceptions, marketing expenses, and territory changes). NAF rejects Plaintiff's apparent position that any NAF policy that even indirectly affected her compensation is somehow relevant to this lawsuit, particularly as Plaintiff has not articulated (and cannot articulate) why NAF would not be allowed to make changes to its own source codes. Accordingly, NAF declines to supplement this response.

Interrogatory No. 18: This interrogatory requests information on the alleged $30 million shortfall referenced by Plaintiff, who claims that such information is relevant because NAF allegedly admitted that the shortfall was the reason for its February 2019 compensation changes.

NAF continues to maintain that any alleged shortfall has no bearing on the *propriety* of NAF's compensation changes and whether Plaintiff has any viable breach of contract or unjust enrichment claims. This is particularly true given that the Regional Manager Agreement gave NAF the ability to change compensation "in its sole discretion." Accordingly, NAF will not supplement this response.

## B.     Specific Document Requests.

Request Nos. 15, 16, and 17: Plaintiff contends that NAF must produce its 2021 marketing policy because "it is not up to NAF to refuse to produce based on its evaluation of relevance." In response, we note that Federal Rule 26(b)(1) limits the scope of discovery to documents that are "relevant to any party's claim or defense" and discovery needs to be proportional to the disputes at issue, in this case whether NAF was unjustly enriched relative to marketing expenses actually expended by Plaintiff. Again, NAF maintains that because the 2021 marketing policy went into effect after Plaintiff resigned from NAF, it is not relevant to any claims or defenses in this lawsuit. However, in the spirit of good faith compromise, NAF will produce the 2021 marketing policy.

Request No. 18: This request seeks documents pertaining to the alleged $30 million shortfall. NAF incorporates by reference its response regarding Interrogatory No. 18. Accordingly, no additional documents are forthcoming on the basis of this request.

Request No. 26: This request seeks documents related to NAF's profits. Plaintiff argues these documents are relevant because Plaintiff's override bonuses were based on NAF's profits. Plaintiff also argues that NAF's profits are relevant to Plaintiff's damages and the "malfeasance" of NAF officers. This argument is misplaced at best, and reflects Plaintiff's continued to expand this dispute into completely tangential and irrelevant matters.

Specifically, as Plaintiff surely understands, her override bonuses were not calculated based on NAF's profits, but rather on the Southeast Region's loan *volume*, reports of which have already been produced in the form of monthly recaps. Further, as NAF stated in its objection, any profit made on a particular loan has no bearing on whether NAF could legally change Plaintiff's compensation or the amount of such Plaintiff's compensation. NAF's profits simply are not relevant to Plaintiff's damages. Indeed, the damages associated with Plaintiff's breach of contract claim are any override bonuses that Plaintiff was allegedly denied and were due to her. And the conceivable damages associated with

**Arnall
Golden
Gregory** LLP

MaryBeth V. Gibson, Esq.
Travis Hargrove, Esq.
N. Nickolas Jackson, Esq.
October 7, 2021
Page 4

Plaintiff's unjust enrichment claim are the benefits conferred on NAF from any marketing expenses and pricing exception modifications, as well as the value of Plaintiff's services performed for the Tennessee and Virginia sub-territories (understanding that Plaintiff already was compensated for such services). *See, e.g., C.A.F. & Assocs., LLC v. Portgage, Inc.*, No. 5:11CV-00074-R, 2012 WL 5077677, at *5 (W.D. Ky. Oct. 18, 2012) (denying motion to compel and holding that evidence of Defendants' profits is not relevant to Plaintiff's unjust enrichment claim because the measure of damages is the value of the services performed). Accordingly, no additional documents are forthcoming on the basis of this request.

Request No. 27: This request seeks communications regarding the March 1, 2020 Amended Schedule 1. NAF incorporates by reference its response regarding Interrogatory No. 7 above. In addition, NAF states that all of the amendments to Plaintiff's various schedules were presented to Plaintiff, regardless of whether Plaintiff signed them. Accordingly, no additional documents are forthcoming on the basis of this request except to the extent that NAF is able to locate additional documents showing the communication of these amendments to Plaintiff.

Request No. 35: This request seeks the employment contracts of other regional managers. Plaintiff argues that these contracts would be relevant if (1) they had a similar Section 1.4B excluded-loans provision; (2) certain regional managers complained about these contractually-excluded loans; and (3) NAF "caved" and paid certain regional managers override bonuses on these loans despite the contractual language.

As previously stated, NAF never paid override bonuses on loans excluded from override bonuses per Section 1.4B of Schedule 1 (or any analogous provision) to any regional managers. Relatedly, other regional managers' contracts are not relevant to this dispute, as they have no bearing on Plaintiff's employment contract and whether Plaintiff's compensation and changes thereto were appropriate. Accordingly, no additional documents are forthcoming on the basis of this request.

Request Nos. 38-39: This request seeks communications between NAF officers and Eric Glick and Jason Redman. Plaintiff has not provided any explanation for why these documents are relevant, only stating in her initial deficiency letter that "[t]hese requests are narrow in time and scope and are relevant to the claims made by Plaintiff."

As NAF stated in its initial objection, this request is overbroad, unduly burdensome, and not proportional to the needs of the case as it is not limited to communications concerning the claims or defenses in this action. Though NAF objects to producing all conversations, NAF is not withholding any non-privileged documents on the basis of any objections set forth in NAF's response to Request Nos. 38-39. However, because NAF does not view this request as relevant, it has not run additional email searches specifically for Eric Glick or Jason Redman. Accordingly, no additional documents are forthcoming on the basis of this request, understanding that we are willing to revisit this request upon an explanation of potential relevance from Plaintiff, which has not been offered as of yet.

Request No. 40: This request seeks documents pertaining to NAF's storage of Plaintiff's returned laptop. Plaintiff contends that the chain of custody and possible spoliation of evidence



MaryBeth V. Gibson, Esq.
Travis Hargrove, Esq.
N. Nickolas Jackson, Esq.
October 7, 2021
Page 5

contained on Plaintiff's laptop is relevant. As we have already explained in communications between counsel, this laptop has remained in a secure location at NAF and has not been accessed or used since Ms. Spearman returned it to NAF in May 2020. While NAF subsequently mistakenly questioned whether the laptop was returned, it was in fact returned and has been in the same location since its return. Accordingly, no additional documents are forthcoming on the basis of this request (to the extent any exist at all).

If you have any questions regarding NAF's positions, we are happy to discuss them further at a mutually convenient time and place. We also will be in touch shortly regarding deposition scheduling.

Sincerely,

ARNALL GOLDEN GREGORY LLP

*/s/ Henry M. Perlowski*

Henry M. Perlowski

cc:     T. Chase Ogletree, Esq.

17168404v4