# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GINA SPEARMAN,            )

*Plaintiff,*                  )

                             )

v.                           )   Civil Action No. 1:20-cv-04981-CAP

                             )

BROKER SOLUTIONS, INC. d/b/a   )

NEW AMERICAN FUNDING,      )

*Defendant.*                 )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER REGARDING THE PROPOSED DEPOSITION OF ITS PRESIDENT, PATRICIA ARVIELO

Defendant Broker Solutions, Inc. d/b/a New American Funding ("NAF"), pursuant to Federal Rule of Civil Procedure 26(c), respectfully submits the following reply in support of its Motion for Protective Order regarding the proposed deposition of its President, Patricia Arvielo, showing as follows:

### I.    INTRODUCTION

In support of her attempt to take the deposition of NAF's President, Patricia Arvielo ("Ms. Arvielo"), in this breach of contract case involving four narrow compensation issues, Plaintiff Gina Spearman ("Plaintiff") has resorted to her safe ground: make arguments in broad generalities that are untethered to the actual issues before the Court and the evidence provided in discovery. Moreover, in bad

faith, Plaintiff now appears to be reneging on concessions made in the meet and confer process by now claiming that she also intends to take the deposition of NAF's Chief Executive Officer, Rick Arvielo ("Mr. Arvielo," and together with Ms. Arvielo, the "Arvielos").[1] The simple truth is that nothing has changed since this lawsuit was filed and nothing in the three depositions taken to date has established that the Arvielos have any unique knowledge regarding the compensation disputes of Plaintiff, who was three levels removed from them within NAF's organizational structure. (*See* Declaration of Patricia Arvielo ("Arvielo Decl."), Doc. No. 49-3, ¶¶ 4-5.)

Exhibiting the fallacy of her positions, despite the fact that NAF's legal name is "Broker Solutions, Inc.," Plaintiff amazingly contends, without any supporting law, that Ms. Arvielo cannot be an apex witness because NAF is a family-run business and not a corporation. (Pl.'s Resp. Br. at 6.) Despite noting that NAF is a corporation earlier in her response brief (*id.* at 2), Plaintiff somehow suggests to this Court that a family-run business that is incorporated should be treated

---

[1]      NAF originally only moved for a protective order relative to Ms. Arvielo and not both of the Arvielos because Plaintiff had agreed not to depose Mr. Arvielo. (*See* Doc. No. 49-2 at 44, Ex. 5.)

17433389v3

differently from other corporations. In so doing, Plaintiff also ignores the fact that NAF actually employs over 4,700 people. (Arvielo Decl. ¶ 3.)

Plaintiff also falsely maintains that Ms. Arvielo has unique knowledge of relevant issues despite the fact that Chief Operating Officer, Christy Bunce ("Ms. Bunce"), and/or Executive Vice President of Retail Production, Jan Preslo ("Ms. Preslo"), appear on *every* email sent or received by Ms. Arvielo that has been produced in this case. Furthermore, while NAF has offered to make Ms. Bunce, Ms. Preslo and Chief Investment Officer, Jason Obradovich, all available to be deposed, Plaintiff has offered no explanation for why she cannot secure relevant information from these witnesses, instead of Ms. Arvielo. Indeed, the fact that actual testimony from Plaintiff, who was deposed for a full day, has not been offered to explain why either of the Arvielos have unique knowledge of facts relevant to this dispute is telling.

Instead, Plaintiff attempts to contend that the recent deposition of NAF's Executive Vice President, Kelly Allison ("Ms. Allison"), shows that Ms. Arvielo was directly involved in "compensation issues" (without any more specificity). (Pl.'s Resp. Br. at 3.) However, Ms. Allison only testified that Ms. Arvielo participated on calls related to profit and loss ("P&L") models that are not at issue in this litigation. In fact, Ms. Allison expressly testified that she did not remember

3

whether Ms. Arvielo participated in calls on compensation issues. As to the Arvielos collectively, Ms. Allison did not testify to any *new* evidence that would justify deposing them. Rather, she testified about an *already-produced* email discussing a phone call Mr. Arvielo had with her, Plaintiff and others. The import of Ms. Allison's testimony only supports NAF's motion.

Finally, Plaintiff contends that she needs to depose Ms. Arvielo to determine why NAF refused to pay Plaintiff override bonuses on loans listed in Section 1.4B of Plaintiff's agreement. While the plain language of Section 1.4B expressly exempts these loans from override bonuses (as Ms. Allison confirmed), Plaintiff offers nothing about the Arvielos to suggest why their testimony is needed on this issue notwithstanding her repeated and now stale reference to adding a fraud claim to this litigation that is in its second extension of discovery.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiff Cannot Renege on her Agreement to not Depose Mr. Arvielo.

While not the subject of NAF's initial motion, *see supra* n.1, NAF feels compelled to address Plaintiff's statement in her response that she also now intends to depose Mr. Arvielo. As part of the meet and confer process, Plaintiff agreed to not depose Mr. Arvielo. (*See* Doc. No. 49-2 at 44, Ex. 5.) Thus, NAF relied on this representation and only moved for a protective order with respect to Ms.

17433389v3

Arvielo. Especially considering the fact that no new evidence has come out relative to Mr. Arvielo, Plaintiff cannot renege on her agreement made during the meet and confer process. *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 11516516, at *2 (D. Kan. Nov. 20, 2014); *Fugate v. Polaris Indus., Inc.*, 08-2219, 2009 WL 10710824, at *4 (C.D. Ill. Oct. 20, 2009). Indeed, allowing a party to renege on such an agreement "would entirely defeat the meet-and-confer process." *Sprint*, 2014 WL 11516516, at *2.

While Plaintiff's mere reneging of her prior acknowledgement that Mr. Arvielo should not be deposed is in bad faith standing alone, this is even more true considering that no new facts have arisen justifying such a reversal. While Plaintiff cites to Ms. Allison's deposition for "new" testimony ostensibly justifying Mr. Arvielo's deposition (Pl.'s Resp. Br. at 3), Ms. Allison simply testified about an *already-produced* email discussing a phone call Mr. Arvielo had with Ms. Allison, Plaintiff, and others. Notably, this email was produced long before Plaintiff agreed to not depose Mr. Arvielo as part of the meet-and-confer process. Further, Ms. Allison's testimony did not add any additional relevant information regarding the email. (*Compare* Kelly Allison Email, Doc. No. 49-2 at 25, NAF 0352, *with* Deposition of Kelly Allison ("Allison Dep.") 64:18-65:19, Doc. No. 53-1 at 4-5.)

Accordingly, Plaintiff should not be permitted to depose Mr. Arvielo, the

17433389v3

CEO of NAF, and NAF asks that the Court enter an associated protective order under Rule 26(c) precluding his deposition as well.[2]

**B.     Ms. Arvielo is an Apex Witness who Should not be Subjected to a Deposition in this Dispute.**

Plaintiff's initial contention that Ms. Arvielo is not even an apex witness is, with all due respect, ludicrous. According to Black's Law Dictionary, an "Apex Deposition" is merely "[t]he deposition of a person whose position is at the highest level of a company's hierarchy." *Black's Law Dictionary* (11th ed. 2019). As its President, Ms. Arvielo is NAF's second highest ranking executive officer. (Arvielo Decl. ¶ 8.) Thus, she is a witness subject to the Apex Doctrine.

Plaintiff's argument that NAF is not an "Apex type company" because "it is not a corporation, but a family run business" also fails. (Pl.'s Resp. Br. at 6.) First, this statement is simply false: NAF is a corporation with the legal name "Broker Solutions, Inc." Plaintiff even admitted as much in her response brief: "NAF, albeit a large *corporation*, is a family-run business." (*Id.* at 2 (emphasis added).) Second, Plaintiff cites no authority whatsoever for her bold proposition that executives of family-run businesses cannot be subject to the Apex Doctrine. Setting aside that

---

[2]     To the extent that the Court requires additional briefing or evidence relative to Mr. Arvielo, NAF, of course, is willing to provide the same. Again, NAF did not move for a protective order initially as to Mr. Arvielo because it then understood that the parties reached agreement on this issue.

17433389v3

NAF has over 4,700 employees and has annual revenue in excess of $1.3 billion,[3] the principles supporting the Apex Doctrine – avoiding the unnecessary harassment and diversion of top executives – apply equally, if not more so, to family-run businesses than other kinds of businesses.

In addition, Plaintiff's attempt to cast herself as a "direct[] report[ ]" of Ms. Arvielo in order to create some impression of proximity to her, (see Pl.'s Resp. Br. at 2), likewise is false. While Plaintiff was a Senior Vice President of NAF's Southeast Region (and not even the top-ranking executive within that region), she reported to Ms. Preslo, who reported to Ms. Bunce, who, in turn, reported to Ms. Arvielo. (Arvielo Decl. ¶¶ 4-5.) Here, NAF is making the two people between Plaintiff and Ms. Arvielo within NAF's hierarchy available for deposition because they were actually involved in the narrow issues relevant to this litigation.

## C.   An Apex Witness's Personal Knowledge of Facts Standing Alone is not Sufficient to Allow a Deposition.

Plaintiff's citation to a decision outside of this District allowing an apex deposition if an executive has personal knowledge of certain facts is unavailing. Unlike cases within this District which examine whether apex witnesses have

---

[3]   *See New American Funding Ranks #13 on OC's Top Private Company List,* YAHOO!, https://www.yahoo.com/now/american-funding-ranks-13-ocs-120500878.html (last visited Dec. 2, 2021).

17433389v3

unique knowledge that cannot be obtained by other means before they can be deposed,[4] Plaintiff's out-of-district case only required personal knowledge or that corporate conduct be relevant to the case. *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2009 WL 4730321, at *1 (M.D. Ga. Dec. 1, 2009). However, even under *Mentor*, Plaintiff would still not be able to depose Ms. Arvielo because the *Mentor* court's decision hinged on the fact that the proposed deposition was not for a single case, but rather for *multiple* cases pending in a MDL proceeding. *Id.* at *1-2. Thus, obtaining the executive's testimony was perceived as more necessary as it affected multiple cases (not a *single* breach of contract case, like the instant dispute).

Indeed, not only is an apex witness's unique or superior knowledge required under authority from the Northern District of Georgia, the party seeking to depose the apex witness has the burden of showing that the executive's deposition is necessary. *Cuyler*, 2014 WL 12547267, at *6. Plaintiff has not done so here.

---

[4]   *See Dashtpeyma v. Liberty Ins. Corp.*, No. 1:11-CV-3809-JEC-AJB, 2012 WL 13013007, at *3 (N.D. Ga. Apr. 9, 2012); *Porter v. Eli Lilly & Co.*, No. CIVA 106CV-1297-JOF, 2007 WL 1630697, at *3 (N.D. Ga. June 1, 2007); *Cuyler v. Kroger Co.*, No. 1:14-CV-1287-WBH-AJB, 2014 WL 12547267, at *6 (N.D. Ga. Oct. 3, 2014), *report and recommendation adopted*, 2015 WL 12621041 (N.D. Ga. Jan. 8, 2015).

**D.    Plaintiff has not Shown That Ms. Arvielo's Deposition is Necessary Because she has no Unique Knowledge of Relevant Facts and Therefore Her Deposition is Precluded by the Apex Doctrine.**

Plaintiff's argument that Ms. Arvielo has unique knowledge because she authored a few emails flouts basic common sense. As NAF noted in its initial Motion, Ms. Bunce and Ms. Preslo were primarily involved in Plaintiff's compensation issues. (Arvielo Decl. ¶¶ 4, 6.) Indeed, at least one of them appears on every email produced in this case that Ms. Arvielo either sent or received. (Perlowski Cert., Doc. No. 49-2 ¶ 5, Ex. 4.) And again, NAF is making both of these executives available for deposition, both individually and as 30(b)(6) designees.

Plaintiff's unique knowledge claim completely falls apart when these specific emails are examined. For example, Ms. Arvielo asking Ms. Bunce for a "total breakdown on the business [Plaintiff and Ms. Allison] came with and what has been built since" and stating that "they need to be put on a P&L" does not show unique or superior knowledge as she was asking *Ms. Bunce* for information. (Doc. No. 49-2 at 19, NAF 149.) Further, Ms. Arvielo was not even on the initial email with Plaintiff, but rather was responding to an email between Plaintiff and others, including Ms. Bunce and Ms. Preslo, that Ms. Bunce forwarded to Ms. Arvielo. (*Id.* at 19-20, NAF 149-150.) More broadly, none of Plaintiff's claims have anything to do with any P&L models as Plaintiff has not alleged that NAF

9

breached her employment agreement, as amended, or was unjustly enriched as a result of any P&L models that NAF implemented. (*See generally* First Am. Compl.)

Furthermore, Ms. Arvielo stating that NAF will not make any exceptions to its pricing exception[5] rules does not show her unique knowledge on this subject, as she sent this email to Mr. Obradovich, who NAF also is making available for deposition, and copied Ms. Bunce. (Doc. No. 49-2 at 32-33, NAF 558-559.) Ms. Arvielo responding to Ms. Bunce with "lets be real sometimes it just doesn't work out" does not show unique knowledge of anything, especially considering the statement was made to Ms. Bunce and Ms. Preslo, and Plaintiff's separation is not at issue. (*See id.* at 23, NAF 350.)

Moreover, the fact that Ms. Arvielo may have participated in calls for regional managers to gather different P&L models, (*see* Allison Dep. 67:15-20), is simply not relevant to this dispute because Plaintiff does not claim that NAF's P&L models were improper. Notably, when asked by Plaintiff's attorney whether Ms.

---

[5]    Pricing exceptions were not in Plaintiff's agreement. While NAF changed its policy so that NAF employees had to absorb pricing exceptions above a certain tolerance, Plaintiff did not *have* to make pricing exceptions on loans. (Deposition of Gina Spearman ("Spearman Dep.") 109:2-9, excerpts attached hereto as Ex. A.) Indeed, Plaintiff and Ms. Allison approved pricing exceptions knowing that NAF's policy changed and that they would have to absorb certain of these costs. (*Id.* at 107:8-14; *see id.* at 135:6-18.)

Arvielo's calls concerned "the way the current pay structure operated," Ms. Allison replied, "I don't remember that." (*Id.* 67:21-24.) While Ms. Allison may have testified that Ms. Arvielo was involved in P&L models (which are not at issue in the case), she did not testify at all that Ms. Arvielo was involved in compensation decisions. In the same vein, Plaintiff herself has offered no testimony indicating that Ms. Arvielo has any knowledge, much less unique knowledge, of the specific compensation issues in dispute.

Given the specific and superior knowledge possessed by Ms. Bunce and Ms. Preslo, Plaintiff has not carried her burden of showing that Ms. Arvielo's knowledge cannot be obtained through other means to overcome the Apex Doctrine. *See Dashtpeyma,* 2012 WL 13013007, at *3 (noting that under the Apex Doctrine, a party requesting the deposition of a high-ranking executive must prove that the deposition would not be unduly burdensome because the executive has "unique or superior knowledge of discoverable information" and the executive's unique knowledge cannot be "obtained by other means"). Instead, Plaintiff plainly can inquire of Ms. Bunce, Ms. Preslo, Mr. Obradovich and/or NAF in its corporate capacity on all relevant issues. *See Angelica M. Gonzalez Berrios v. Mennonite General Hosp., Inc.,* No. 18-1146 (RAM), 2019 WL 4785701, at *5-6 (D.P.R. Sept. 30, 2019) (acknowledging that Fed. R. Civ. P. 30(b)(6) can serve as an alternative to an Apex

17433389v3

Doctrine deposition as it gives a party the opportunity to seek discovery on the same topics on which the executive was to be deposed).

E.    **The Decision to not Pay Override Bonuses for Loans Listed in Section 1.4B was Based on the Agreement's Plain Language and is not a Valid Reason to Depose Ms. Arvielo.**

In passing, Plaintiff, without any factual nexus, argues that she needs to depose Ms. Arvielo to find out why NAF refused to pay Plaintiff "all of the override bonuses described in 1.4B of her agreement," "despite the fact that NAF's employment agreement says otherwise." (Pl.'s Resp. Br. at 3-4, n.1.) As an initial matter, and aside from Plaintiff's tortured view of the applicable employment agreement language, she does not (and cannot) explain why Ms. Arvielo's testimony is needed on this issue. Indeed, the persons with specific knowledge on this issue are Ms. Preslo and Ms. Bunce.

Moreover, based on the plain language of her employment agreement, it is very clear that Plaintiff was not to be paid override bonuses on Section 1.4B loans. Indeed, Section 1.4B of Schedule 1 of Plaintiff's agreement states: "No Override Bonus will be paid on the following loans:" and then lists eight different loan types in bullet form, with the last type being "Loan Applications taken during Monetary

17433389v3

Guaranty Period" ("MGP Loans"). (Doc. No. 9-1 at 24-25.)[6] Thus, Section 1.4B starts with the exclusion of eight loan types from Plaintiff's override bonus compensation.

Directly underneath and indented inside the eighth bullet point exempting MGP Loans (and only MGP Loans) are two blanks. The first states: "YES, see attached Schedule 4—No Override During Guarantee Period." (*Id.* at 25.) The second, which is marked with an "X," states "NO, not applicable to this Area Manager Schedule 1." (*Id.*) These blanks accordingly show that the exemption for MGP Loans and *only* MPG loans may not have been applicable to Plaintiff for a limited period of time.[7]

That the "not applicable" blank only applies to MGP Loans (and not the other seven exempted loans in 1.4B) is evident by several facts. First, the "YES" blank directly above the "not applicable" blank explicitly references "No Override

---

[6]     That the loans listed in Section 1.4B are exempt from override bonus payments is reiterated throughout Section 1.4 of Schedule 1. For example, the second bullet in Section 1.4 states: "No Override Bonus is paid on the loan scenarios listed in 1.4B." (Doc. No. 9-1 at 23.) Further, the "Override Bonus Calculation Table" in Section 1.4 expressly says to "see 1.4B for loans excluded from override payout." (*Id.* at 24.)

[7]     Starting with Plaintiff's March 1, 2017 Amended Schedule 1, and continuing through additional amendments, the exemption for MGP loans was changed from not applicable to applicable so that it, too, was exempted from override bonuses, along with the seven other loan types in 1.4B. (*See* Doc. No. 47-4 at 4, 15.)

17433389v3

During Guarantee Period." (*Id.*) None of the other seven exempted loans are so referenced. Second, the position of the "not applicable" blank is both directly underneath, and indented to be completely inside of, the MGP Loans bullet. Third, Schedule 4 referenced in the "Yes" blank specifically relates to only MGP loans and not the other seven loan types.  And fourth, the very next section (1.4C) has "not applicable" blanks under three of the four bulleted individual items (as opposed to one "not applicable" blank at the end of the four bulleted items). Thus, it is clear that each "not applicable" blank only refers to the bulleted item directly above it, as opposed to each bulleted item in the section.

Because NAF did not pay Plaintiff override bonuses on Section 1.4B exempted loans per the agreement's plain language, Plaintiff has no reason to depose Ms. Arvielo to determine *why* NAF did not pay override bonuses on such loans.[8]

## CONCLUSION

For the foregoing reasons and the reasons stated in NAF's opening brief, the Court should grant NAF's Motion for Protective Order regarding Ms. Arvielo under Rule 26(c). Furthermore, Plaintiff should be held to her admission made

---

[8]    In addition, while Plaintiff again threatens to amend her complaint to assert a fraud claim, she has had over seven months to do so (and has not done so).

17433389v3

during the meet and confer process that Mr. Arvielo does not need to be deposed

(so that the parties do not need to brief his status as an Apex witness separately).

Respectfully submitted, this the 6th day of December, 2021.

/s/ Henry M. Perlowski
Henry M. Perlowski
Georgia Bar No. 572393
henry.perlowski@agg.com
T. Chase Ogletree
Georgia Bar No. 579860
chase.ogletree@agg.com

ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
Telephone: 404-873-8684
Facsimile: 404-873-8685

*Counsel for Defendant Broker Solutions,
Inc. d/b/a New American Funding*

17433389v3

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), namely, Book Antiqua (13 point).

Respectfully submitted, this the 6th day of December, 2021.

*/s/ Henry M. Perlowski*
Henry M. Perlowski

17433389v3