# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GINA SPEARMAN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BROKER SOLUTIONS, INC., d/b/a<br>NEW AMERICAN FUNDING,<br><br>　　　　Defendant. | Case No. 1:20-cv-04981-CAP |

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S
## FIRST INTERROGATORIES DIRECTED TO PLAINTIFF

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Gina Spearman ("Plaintiff") sets forth herein the following responses and objections to Defendant's First Interrogatories ("Interrogatories") Directed to Plaintiff dated June 10, 2021.

No incidental or implied admissions are intended in these Responses. Plaintiff's Response to all or any part of the RFPs should not be taken as an admission that (1) Plaintiff accepts or admits the existence of any fact(s) set forth or assumed by the Interrogatories; (2) Plaintiff has possession, custody or control of information responsive to that Interrogatory; or (3) documents exist that are responsive to the Interrogatories.



Plaintiff's Responses are based upon, and therefore limited by, Plaintiff's present knowledge, recollection, and access to information. Plaintiff has not completed her investigation of facts relevant to this case, discovery in the action, or preparation for trial. Plaintiff reserves the right to revise these Responses as additional facts become available. Plaintiff's Response to all or any part of any Interrogatory is not intended to be, and shall not be, a waiver by Plaintiff of all or any part of any objection(s) to that Interrogatory. To the extent that paragraphs six through ten of Defendant's "Definitions and Instructions" ns purport to impose obligations greater than or different from those imposed by the Federal Rules of Civil Procedure or other applicable law, Plaintiff objects to said paragraphs and will respond in accordance with the duties imposed by the Federal Rules of Civil Procedure. Plaintiff also notes that Defendant's Interrogatories contain impermissible subparts and will respond to the number of Interrogatories permitted by the Federal Rules of Civil Procedure.

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST INTERROGATORIES DIRECTED TO PLAINTIFF

**INTERROGATORY NO. 1:** Describe in detail your Override Bonus compensation during your employment with NAF, including but not limited to (1) the categories of Override Bonuses you received from NAF by the type of loan/transaction closed (including dates and amounts received); and (2) the specific Override Bonuses you did not receive from NAF that you allege you were entitled to receive.

**ANSWER: Plaintiff objects to this Interrogatory to the extent that this information is specifically within Defendant's knowledge and possession.**

Subject to and without waiving the foregoing, Plaintiff states she was paid Override Bonuses on some loans during her employment with Defendant. However, there were loans excluded for which Plaintiff was not paid an Override Bonus in accordance with her employment agreement. The list of each type of loan for which an Override Bonus was paid and those that were excluded from override were maintained by Defendant and provided by Defendant on a monthly basis in a report called the "Monthly Recap" which Defendant has in its possession. The categories of Override Bonuses are described in paragraph 3 of the Letter Offer Contract and paragraph 1.4A, 1.4B and 1.4C of Schedule 1 Regional Manager Compensation Details. See also documents Plaintiff is producing in response to Request for Production No. 1 which identifies these categories.

**INTERROGATORY NO. 2:** Other than the Override Bonus categories listed in Paragraph 1.4B of Schedule 1, describe in detail any other categories of Override Bonuses you did not receive from NAF from November 2016 to the present that you allege you were entitled to receive.

**ANSWER: In addition to the categories of loans provided in 1.4B, Plaintiff states that she was not paid on loans described in schedule 1.4C and 1.4A. Furthermore, her overall pay was reduced by certain Pricing Exceptions**

and Marketing Costs beginning in March 2019 and lasting through March 2020.

**INTERROGATORY NO. 3:** Describe in detail the marketing costs compensation (or reimbursement) you received during your employment with NAF, including (1) the dates and amounts received; (2) how you received such compensation (*e.g.*, either by reimbursement of amounts expended by you or by direct payment of marketing expenses by NAF); and (3) any changes communicated to you by NAF regarding the amounts of marketing costs that NAF would pay and/or reimburse you (including when and how Plaintiff was notified of any change; by whom you were notified of any change; and the substance of each change).

**ANSWER: Plaintiff states that Defendant agreed to a marketing budget equal to 7.5 Basis Points of the region's monthly production. Defendant paid marketing costs submitted by Plaintiff and her Co-Regional Manager until March 2019. After March 2019, Defendant deducted marketing costs from Plaintiff's compensation in the Monthly Recap reports.**

**Defendant is in possession of all marketing related payments and expense reports reflecting this information.**

**In February of 2019 Plaintiff was verbally notified at a leadership meeting by Christy Bunce and Jon Reed that Defendant was experiencing a major financial hardship due to a misallocation of thirty (30) million dollars,**

and that Defendant would no longer pay or reimburse for any marketing costs. After February 2019 through her resignation, Plaintiff continued to submit marketing invoices to NAF which it paid but then deducted from Plaintiff's compensation in the Monthly Recap reports.

**INTERROGATORY NO. 4:** For any marketing costs compensation you contend that you are owed, itemize (1) the amount of each specific expense; (2) when any such expense was incurred; (3) whether you sought approval for such expense and, if so, from whom; and (4) all documents reflecting such expense.

**ANSWER: All Marketing Expenses were approved by Defendant's Marketing Compliance. Defendant is in possession of all records pertaining to expenses Defendant paid and withheld from Plaintiff's compensation. These marketing expenses are itemized in the Monthly Recap reports for each month of Plaintiff's employment. See also Plaintiff's response to Request for Production No. 1 which itemizes these marketing costs.**

**INTERROGATORY NO. 5:** Describe in detail the Pricing Exception compensation Plaintiff received during your employment with NAF, including (1) dates and amounts received; (2) the process by which Pricing Exceptions were negotiated; (3) whether any loan or transaction would have been approved absent the Pricing Exception; (4) any changes to how Pricing Exceptions would be negotiated or approved (including when and how you were notified of any changes; by whom you

were notified of any change; the amount reduced; and when the reduction applied (ex. what "tolerance" needed to be exceeded for Plaintiff to have to "absorb" the Pricing Exception)); and (5) whether NAF required Plaintiff to offer loans with Pricing Exceptions that Plaintiff potentially would have to absorb.

**ANSWER: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to speculate as to what NAF would do and to the extent the Interrogatory is vague, unclear and overly burdensome as written. Plaintiff also objects to the extent that the information requested is specifically within Defendant's knowledge and possession. Subject to and without waiving the foregoing, Plaintiff explains that initially upon hire, she received compensation for the pricing exceptions granted on loans made by loan officers that were within NAF's stated tolerance. Loan officers negotiated loans with potential clients. To be competitive, a loan officer would ask Kelly Allison and sometimes Gina Spearman to approve a pricing exception consistent with NAF's tolerance and industry norms. It was NAF's customary practice and industry practice to approve pricing exceptions in competitive situations so that loan officers could close a loan. From November 2016 to February 2019, Kelly Allison approved pricing exceptions consistent with NAF's industry norms. In addition, there were loans each month that exceeded Defendant's tolerance and Plaintiff and her Co-Regional Manager were not paid compensation on those loans. These**

loans are identified as Tier IV or Tier V loans on the "Monthly Recap". Defendant is in possession of the "Monthly Recap" reports for each month of Plaintiff's employment that show the compensation she received on loans through February 2019.

Christy Bunce and Jon Reed notified Plaintiff in February of 2019 that Defendant would no longer approve pricing exceptions at the same tolerance it had previously approved pricing exceptions from November 2016 through February 2019 and that Plaintiff and her Co-Regional Manager would be required to absorb costs exceeding the new lower tolerance. While the tolerance was cut in half by Defendant, Plaintiff was still required to maintain loan production at the same rate prior to February 2019. Thus, Plaintiff was forced to absorb the pricing exceptions beyond the new lower tolerance established by Defendant in February 2019 which was done in an attempt to cover its 30-million-dollar shortfall.

The Monthly Recap also demonstrates how Plaintiff's compensation was reduced when NAF refused to approve pricing exceptions at the same tolerance it had before February 2019 and forced Plaintiff and her Co-Regional Manager to absorb the related costs exceeding the new (lower) tolerance.

**INTERROGATORY NO. 6:** Describe in detail any personal funds that you expended in connection with the Tennessee and Virginia markets during your

employment with NAF (including the amounts and dates of each expenditure), and identify all documents reflecting the expenditure of any such funds.

**ANSWER: Plaintiff states she expended her personal funds on the cost of the Real Estate Partners Advertising agreement and Desk Rental as evidenced by deductions in pay on the "Monthly Recap". Plaintiff expended personal funds on other recruiting and business development costs that were not reimbursed by Defendant.**

**INTERROGATORY NO. 7:** Describe in detail the facts supporting your allegations in Paragraph 89 of the Amended Complaint regarding NAF's removal of Tennessee and Virginia from Plaintiff's territory, including that NAF removed those states (1) because it "believ[ed] Ms. Spearman was planning to leave NAF"; and, (2) to prevent Plaintiff from "recoup[ing] the costs of her personal investment in developing NAF's presence in these states."

**ANSWER: Christy Bunce told Plaintiff and her Co-Regional Manager on a phone call that the Sales Managers from the Tennessee and Virginia Regions told Ms. Bunce (incorrectly) that they were leaving Defendant and starting their own company. Thereafter, NAF removed these territories from Plaintiff and her Co-Regional Manager just as they were about to be profitable. These territories were removed just as loan production was increasing, which would allow Plaintiff to recoup her personal investment in these territories.**

8

**INTERROGATORY NO. 8:** Describe in detail any objections that Plaintiff communicated to NAF regarding any aspect of Plaintiff's compensation during Plaintiff's employment with NAF. For each communication reflecting any objection, identify the participants to the communication, the date of the communication, the substance of each communication, and any documents reflecting the communication.

**ANSWER: Plaintiff objects to this interrogatory as unduly burdensome and not proportional to the needs of the case to the extent it requires Plaintiff to identify every single conversation she had with NAF over the course of several years. Subject to the foregoing, Plaintiff states that she objected to her compensation on several occasions prior to February of 2019. During numerous verbal and email communications, Plaintiff and her Co-Regional Manager told Christy Bunce, Jon Reed, and Jan Preslo that Plaintiff and her Co-Regional Manager were not being paid per the terms of their agreement. Christy Bunce stated the agreements were confusing and needed to be re-written. After the February 2019 Leadership meeting, when Plaintiff and her Co-Regional Manager were verbally notified of changes to their compensation, Jon Reed advised them they would receive an amended agreement which they did not receive until March 1, 2020.**

**INTERROGATORY NO. 9:** Describe in detail any communications Plaintiff had

with NAF or its employees regarding the March 1, 2020 Amended Schedule 1. For each communication, identify the participants to the communication, the date of the communication, the substance of each communication, and any documents reflecting the communication.

**ANSWER: Plaintiff states that the only communication she had with Defendant or its employees regarding the March 1, 2020 Amended Schedule 1 included multiple phones calls and an in-person meeting with Jon Reed and Scott Frommert in the months leading up to March 2020. Defendant is in possession of Outlook calendar invites verifying these communications. Plaintiff is also producing documents in response to Request for Production No. 2.**

**INTERROGATORY NO. 10:** Describe in detail any communications Plaintiff had with NAF or any third-party regarding Plaintiff's April 13, 2020 resignation from NAF. For each communication, identify the participants to the communication, the date of the communication, the substance of each communication, and any documents reflecting the communication.

**ANSWER: Plaintiff objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and work product doctrine. Subject to and without waiving the foregoing, Plaintiff did not discuss her resignation with anyone at NAF or any third party prior to submitting her**

resignation. Plaintiff states Kelly Allison communicated with Plaintiff after she submitted the resignation. While Plaintiff did not discuss her resignation with Kelly Allison before submitting it, Plaintiff and Ms. Allison did have conversations throughout the years leading up to Plaintiff's resignation about NAF's failure to pay Override Bonuses, marketing costs and pricing exceptions as promised and contracted for. Plaintiff recalls that several NAF employees and loan officers texted her upon hearing about her resignation to thank her for her leadership, tell her she will be missed, and wish her the best. Plaintiff saved these texts.

**INTERROGATORY NO. 11:** Describe in detail any communications that you had with Christy Bunce or any other NAF representative in connection with or regarding the August 2018 email in which Christy Bunce allegedly admitted that NAF did not discuss or change any of Plaintiff's compensation terms, as alleged in Paragraph 60 of the Amended Complaint. For each communication, identify the participants to the communication, the date of the communication, the substance of each communication, and any documents reflecting the communication.

**ANSWER: Plaintiff objects to this Interrogatory because it is overbroad and unduly burdensome, and not proportional to the needs of the case, to the extent that it calls for Plaintiff to describe "any communications" Plaintiff had with Ms. Bunch "in connection with or regarding the August 2018 email in**

which Christy Bunce allegedly admitted that NAF did not discuss or change any of Plaintiff's compensation terms". Subject to the foregoing, Plaintiff is producing responsive documents it in response to Request for Production No. 1.

**INTERROGATORY NO. 12:** With respect to the February 2019 Leadership Meeting referenced in your Amended Complaint, identify the participants of that meeting, what you were informed regarding any reductions or changes to your compensation (including what was being changed and when), and who informed you of any such changes to your compensation.

**ANSWER:** Plaintiff and her Co-Regional Manager were notified by Christy Bunce and Jon Reed that Defendant had misallocated 30 million dollars and was in financial hardship. Christy Bunce and Jon Reed, in turn, stated Defendant would not pay any marketing costs regardless of NAF's agreement and that Plaintiff and her Co-Regional would have to absorb pricing exceptions over a new established tolerance effective immediately. Defendant is in possession of documents and communications that should identify the individuals in attendance at this meeting. To the best of Plaintiff's recollection, Rick Arvielo, Patty Arvielo, Jon Reed, Christy Bunce, Jan Preslo, Tony Blodgett, Milt Karavites, Chris Garza Eli Fairfield, and Kelly Allison were present at this meeting.

**INTERROGATORY NO. 13:** Describe in detail Plaintiff's damages calculations, including the calculations behind the allegations that Plaintiff has suffered damages of (1) "$544,383.00 in unpaid Override Bonuses" as alleged in Paragraph 69 of the Amended Complaint; and (2) "$466,046.00 for certain Pricing Exceptions and Marketing Costs that NAF improperly deducted from Ms. Spearman's pay" as alleged in Paragraph 85 of the Amended Complaint.

**ANSWER: The calculations provided are derived from the "Monthly Recaps" generated by Defendant. The excluded loans in which Plaintiff was not paid an Override Bonus were totaled along with the deductions in Plaintiff's compensation for Marketing Costs and Pricing Exceptions identified on these spreadsheets. Plaintiff previously produced this detail in an email to Ken Block and is producing it again in response to Defendant's Requests for Production.**

**INTERROGATORY NO. 14:** Identify all facts that support Plaintiff's allegation that NAF breached its contract with Plaintiff regarding Override Bonuses.

**ANSWER: Plaintiff objects to this Interrogatory because it is overbroad and unduly burdensome, and not proportional to the needs of the case to the extent that it calls for Plaintiff to identify facts that Plaintiff has already meticulously described in the Complaint. Plaintiff also objects to this Interrogatory to the extent that it calls for a legal conclusion, attorney-client information and work-product. Plaintiff incorporates herein the facts**

identified in Plaintiff's complaint that demonstrate that Defendant did not pay the compensation as set forth in Plaintiff's employment agreement.

**INTERROGATORY NO. 15:** Identify all facts reflecting how NAF allegedly was unjustly enriched by adjusting Plaintiff's compensation as to marketing costs and Pricing Exceptions.

**ANSWER:** Plaintiff objects to this Interrogatory because it is overbroad and unduly burdensome, and not proportional to the needs of the case to the extent that it calls for Plaintiff to identify facts already meticulously described in the Complaint. Plaintiff also objects to this Interrogatory to the extent that it calls for a legal conclusion, attorney-client information and work-product. Subject to and without waiving the foregoing, Defendant expected Plaintiff's Region to continue to close the same amount of production but chose to transfer some of the expenses of that production to Plaintiff, personally, to increase the profitability to the company and to compensate for NAF's misallocation of 30 million dollars. If Plaintiff had not paid for the Pricing Exceptions and marketing costs personally, her Region's production would have been significantly reduced.

**INTERROGATORY NO. 16:** Identify all facts reflecting how NAF allegedly was unjustly enriched by removing Tennessee and Virginia from Plaintiff's market territory.

**ANSWER:** Plaintiff objects to this Interrogatory because it is overbroad and unduly burdensome, and not proportional to the needs of the case to the extent that it calls for Plaintiff to identify facts that Plaintiff has already meticulously described in the Complaint. Plaintiff also objects to this Interrogatory to the extent that it calls for a legal conclusion, attorney-client information and work-product. Subject to and without waiving the foregoing, Plaintiff and her Co-Regional Manager paid for the start-up costs (*e.g.*, desk rental fee) and investments for these new territories when the production was low, and they were not receiving a significant Override Bonus on this market. At the time the territory had just begun to increase production, NAF removed the territories from Plaintiff and her Co-Regional Manager preventing them from earning the Override Bonus to offset their original investments. Jan Preslo discussed compensating Plaintiff for this loss of income, but that did not come to fruition.

**INTERROGATORY NO. 17:** Identify all persons (other than your legal counsel) with whom you have discussed your disputes with NAF. For each such communication, identify the participants to the conversation, when the conversation allegedly occurred, and the substance of the conversation.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and work product

**doctrine. Other than her counsel, Plaintiff discussed her disputes with Christy Bunce, Jon Reed, Jan Preslo, Kelly Allison and other officers of NAF prior to resigning. The substance of the conversation concerned NAF's failure and refusal to pay Plaintiff pursuant to the terms of the employment agreement. Bunce, Reed and Preslo reaffirmed that NAF valued Plaintiff leading her believe NAF would pay her as promised. Bunce, Reed and Preslo did not elaborate other than to reaffirm Plaintiff's value to NAF.**

**INTERROGATORY NO. 18:** Identify each person you expect to consult with or call at trial as an expert witness and, as to each person, state his or her field of expertise, the subject matter on which he or she is expected to testify, and a summary of the grounds for each opinion in accordance with Fed. R. Civ. P. 26(a)(2).

**ANSWER: Plaintiff has not determined the expert witnesses she intends to call at trial. She will amend this response if, and when, appropriate pursuant to the Federal Rules of Civil Procedure.**

Respectfully submitted this 12th day of July, 2021.

/s/ MaryBeth V. Gibson
MaryBeth V. Gibson
Georgia Bar No. 725843
Travis C. Hargrove
Georgia Bar No. 141374
N. Nickolas Jackson
Georgia Bar No. 841433

**THE FINLEY FIRM, P.C.**
3535 Piedmont Road

> Building 14, Suite 230
> Atlanta, GA 30305
> Telephone: (404) 320-9979
> Facsimile: (404) 320-9978
> mgibson@thefinleyfirm.com
> thgargrove@thefinleyfirm.com
> njackson@thefinleyfirm.com
> *Counsel for Plaintiff*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLAINCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: July 12, 2021

/s/ MaryBeth V. Gibson
MARYBETH V. GIBSON

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, a true and correct copy of the above and foregoing was served, via electronic mail, on counsel for Defendant:

> Henry M. Perlowski
> Henry.Perlowski@agg.com
> T. Chase Ogletree
> Chase.Ogletree@agg.com
> ARNALL GOLDEN GREGORY LLP
> 171 17th Street, N.W., Suite 2100
> Atlanta, Georgia 30363
> Telephone: (404) 873-8684
> Facsimile: (404) 873-8685

/s/ MaryBeth V. Gibson
MARYBETH V. GIBSON

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GINA SPEARMAN,

    Plaintiff,

v.

BROKER SOLUTIONS, INC., d/b/a
NEW AMERICAN FUNDING,

    Defendant.

Case No. 1:20-cv-04981-CAP

## VERIFICATION OF GINA SPEARMAN

I, Gina Spearman, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts contained in DEFENDANT BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING'S FIRST SET OF INTERROGATORIES TO PLAINTIFF GINA SPEARMAN are true and correct according to the best of knowledge, information, and belief.

Respectfully submitted this 12th day of July, 2021.

                                                        _____
                                                        GINA SPEARMAN