Page 1

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF GEORGIA

3                    ATLANTA DIVISION

4     GINA SPEARMAN,

5            Plaintiff,          Case No:

6     vs.                        1:20-cv-04981-CAP

7     BROKER SOLUTIONS, INC.,

8     d/b/a NEW AMERICAN FUNDING,

9            Defendant.

10

11

12                    DEPOSITION OF

13                    CHRISTY BUNCE

14                    March 29, 2022

15                    11:03 a.m. EST

16           TAKEN BY REMOTE VIDEO CONFERENCE

17            LaRita J. Cormier, RPR, CCR-2578

18

19

20

21

22

23

24

25

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 2

1                       INDEX OF EXHIBITS

2     Exhibit No.         Description                    Page

3     Plaintiff's

4       Exhibit 1    NAF_0000774 spreadsheet                05

5       Exhibit 2    Copy of NAF Metadata              09

6       Exhibit 3    NAF_0000781, Rolling P&L, 01/18   10

7                    to 09/18

8       Exhibit 4    NAF_0000743, Kevlar, Rolling P&L  14

9                    10/18-12/18

10      Exhibit 5    NAF_0000782, 2017                 16

11      Exhibit 6    NAF_0000783, Confidential         18

12                   spreadsheet

13      Exhibit 7    NAF_0000739, OLA Division CM      22

14      Exhibit 8    NAF_0000738, SE Discretionary     24

15                   and Marketing Expenses

16      Exhibit 9    NAF_0000784 Spreadsheet           33

17      Exhibit 10   NAF_0000789 Spreadsheet           37

18      Exhibit 11   NAF_0000795 Spreadsheet           38

19

20

21

22

23

24

25

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                        Page 3

 1    APPEARANCES OF COUNSEL:

 2    On behalf of the Plaintiff:

 3            MARYBETH V. GIBSON, ESQUIRE

 4            TRAVIS C. HARGROVE, ESQUIRE

 5            N. NICKOLAS JACKSON, ESQUIRE

 6            THE FINLEY FIRM, P.C.

 7            3535 Piedmont Road

 8            Building 14, Suite 230

 9            Atlanta, Georgia  30305

10            Thargrove@thefinleyfirm.com

11            Mgibson@thefinleyfirm.com

12            Njackson@thefinleyfirm.com

13

14    On behalf of the Defendant:

15            HENRY M. PERLOWSKI, ESQUIRE

16            Arnall Golden Gregory LLP

17            171 17th Street, NW

18            Suite 2100

19            Atlanta, Georgia  30363

20            Hperlowski@agg.com

21

22    Also present:

23            Ken Block, NAF General Counsel

24            Andrew Westle, NAF Senior Counsel

25            Gina Spearman

                                                    Page 4

1                         CHRISTY BUNCE,

2      having been first duly sworn, was examined and

3      testified as follows:

4                          EXAMINATION

5      BY MS. GIBSON:

6          Q.   Good afternoon, Ms. Bunce.  As you

7      remember, back in January, we met through your

8      initial deposition as the 30(b)(6) witness for NAF

9      and partially in your individual capacity.  And

10     we're here to resume the deposition to discuss some

11     of the documents that were produced after your

12     deposition and some additional counts that the court

13     has allowed.

14          Do you remember all the instructions from

15     our initial meeting, or would you like me to go

16     through those again?

17          A.   I remember them.

18          Q.   Okay.  And if -- again, if you need a break

19     or need me to repeat anything, just let me know.

20     And do you have the Exhibit Share up on your

21     computer?

22          A.   No.  Let me pull it up.

23               (Off-the-record discussion.)

24          A.   Okay.  I'm in.

25

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                        Page 5

1    BY MS. GIBSON:

2         Q.   And if you click on Marked Exhibits, you

3    should be able to see Exhibit 1.  And before we

4    actually look at that, can you tell me, did you do

5    anything to prepare for your deposition today?

6         A.   Hold on one second.  I don't know if I'm in

7    the right thing.

8              (Off-the-record discussion.)

9         A.   I reviewed the P&Ls that Henry had sent me.

10   BY MS. GIBSON:

11        Q.   And do you know, were those P&Ls that were

12   produced in this litigation?

13        A.   Sorry.  I had a balloon in my office and it

14   just popped.  Yes.

15        Q.   Is it your birthday?

16        A.   Yesterday, yes.

17        Q.   Happy birthday, belated.

18        A.   Yes.  Sorry.

19        Q.   Okay.  Other than review the P&Ls that

20   Henry sent you, did you do anything else to prepare

21   for the deposition today?

22        A.   No, I did not.

23             (Plaintiff's Exhibit 1 marked)

24   BY MS. GIBSON:

25        Q.   Okay.  So you have Exhibit 1 up on your

Christy Bunce                                           March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                              Page 6

1    screen.  Is this one of the P&Ls that you reviewed?

2         A.  It is.

3         Q.  Okay.  And can you tell me what this is?

4         A.  This is -- this is all of our regions and

5    our outside retail showing -- I think there should

6    be a header on this.  I don't know if it's for the

7    full year, but I think it's for the full year.

8         Q.  That was my next question.  When is this --

9    what year is this for?  This is how it was produced

10   to us, so if I show you -- let me load Exhibit 2,

11   which is metadata for the documents produced.  It

12   may help you identify when the documents were

13   produced -- or were created, I'm sorry.  Do you have

14   Exhibit 2 up?

15        A.  I do not.

16        Q.  Okay.  Let's just stay with No. 1 and we'll

17   come back to that in a minute.  So you don't know

18   what year this is prepared for?

19        A.  I don't see year on here.

20        Q.  Can you tell from looking at it?

21        A.  I don't see year on here.

22        Q.  And remind me of your title at NAF.

23        A.  COO.

24        Q.  So just from looking at this, you have no

25   way of identifying what year this is for?

Christy Bunce                                              March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                          Page 7

1          A.   No.

2          Q.   Okay.  And tell me what it purports to show

3     for us.

4          A.   It shows our net profit and loss for each

5     region.  And the regions are in Column A.  And then

6     it shows the grand total of volume, units funded,

7     gross profit margin, LM, which is all different

8     acronyms for how we manage things here.  And then at

9     the bottom, it shows our net -- our gross loss.

10         Q.   So the bottom says Grand Total, and the

11    very last entry on the far right, is that the gross

12    loss?

13         A.   Yes.

14         Q.   Okay.  So -- and that says CM3 at the top.

15    Is that -- can you tell me what CM3 stands for?

16         A.   CM3 is our fully loaded P&L.

17         Q.   And what does that mean?

18         A.   So it shows all loss, all expenses for the

19    company that would hit the outside retail region.

20         Q.   And where -- so these are expenses that

21    have -- is that correct, or am I not getting that

22    right?

23         A.   This is a full P&L.

24              MR. PERLOWSKI:  Object to the form.

25              You can answer.

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 8

1        A.   This is a P&L, so it has all the profits

2    and all the losses.   So it has expenses, it has the

3    gains, it has income.

4    BY MS. GIBSON:

5        Q.   Okay.   And I believe last time you

6    testified about CM1, 2, and 3.   So I don't see CM1

7    and 2 on here.   Does CM3 include CM1 and 2?

8        A.   It does.

9        Q.   Okay.   And who created this P&L?

10       A.   Well, I'm assuming it was Jim Muth, or at

11   least his department.

12       Q.   Okay.   And tell me what the name of his

13   department is, please.

14       A.   He's in the finance department.

15       Q.   Finance, okay.   And who would have access

16   to this P&L?

17       A.   Jason, Jim, myself, Jan, Jon at the time.

18       Q.   So the SVPs would not see --

19           MR. PERLOWSKI:   Were you finished with your

20   answer, Ms. Bunce?

21           THE WITNESS:   I am.

22           MR. PERLOWSKI:   Okay.

23   BY MS. GIBSON:

24       Q.   You were finished, Ms. Bunce?

25       A.   Yes.

Christy Bunce
March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 9

1      Q.   Would the SVP see this P&L?

2      A.   Not that I recall.

3      Q.   And how would we find out what year this is

4  for?

5      A.   Well, I would have to -- I'd have to go --

6  I'd have to ask Jim Muth.

7      Q.   Okay.  Can you upload Exhibit 2?

8           (Plaintiff's Exhibit 2 marked)

9  BY MS. GIBSON:

10     Q.   Are you familiar with what metadata is?

11     A.   To a certain extent.

12     Q.   Okay.  Have you seen this document before,

13  Exhibit 2?

14     A.   I don't have Exhibit 2 yet.

15     Q.   Okay.

16     A.   I've got it up right now.

17     Q.   So looking at Exhibit 2, if you go down to

18  the second column to NAF 774, about three-quarters

19  of the way down.  Do you see that?

20     A.   Yeah.

21     Q.   And that says it has a creation and

22  modified date of January 7th, 2022.  Is that when

23  this document was created?  Do you know?

24          MR. PERLOWSKI:  Object to the form.

25     A.   I would not know.

Christy Bunce                          March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 10

1    BY MS. GIBSON:

2         Q.   Okay.  All right.  Can you upload Exhibit

3    3.

4              (Plaintiff's Exhibit 3 marked)

5         A.   Okay.  I have it up on my screen.

6    BY MS. GIBSON:

7         Q.   And can you tell me what this is?

8         A.   It's Kevlar reporting, it says in the upper

9    left-hand corner, Rolling P&L from January 2018 to

10   September 2018 for the southeast.

11        Q.   And do you know why it's for a period of

12   nine months?

13        A.   I do not.

14        Q.   Okay.  And can you tell me what this

15   purports to show us?

16        A.   Rolling P&L, so it's showing profit and

17   loss month by month, it looks like from January

18   through September.

19        Q.   And it identifies corporate margin at the

20   bottom.  Is this CM1, 2, or 3?

21        A.   I would not know.

22        Q.   Do you know who would know?

23        A.   Jim Muth or Jason Obradovich.

24        Q.   And who had access to these reports?

25        A.   The SVPs had access, and then the high

Christy Bunce                                       March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 11

1   levels -- Jon, Jason, myself; Jim would have also

2   had access as well.

3        Q.  And so this one is actually through

4   September 2018, but in looking at this, you cannot

5   tell me if this corporate margin reflects CM1, CM2,

6   or CM3; is that correct?

7            MR. PERLOWSKI:  Objection.  Asked and

8   answered.

9            You can answer.

10       A.  Correct.  I don't see any headers for me to

11  know that for sure.

12  BY MS. GIBSON:

13       Q.  Okay.  So for anyone looking at this, they

14  would have no way of knowing if this is CM1, 2, or

15  3; is that correct?

16       A.  I don't think I can really answer that

17  because I don't know who's looking at it and what

18  log-ins they were looking under.  Everybody knew in

19  Kevlar what they were looking at, but just looking

20  at this snapshot, I can't tell you.

21       Q.  So if I were to go into -- if I worked at

22  NAF -- or for you working at NAF in September 2018,

23  if you went into Kevlar as of September 2018, you

24  could look at a screen that would show you CM1, 2,

25  or 3?

Page 12

1      A.   That's correct.

2      Q.   Okay.

3           MR. PERLOWSKI:  Ms. Cormier, could you

4      please repeat that question?

5               (The reporter read the requested material.)

6           MR. PERLOWSKI:  Thank you.

7      BY MS. GIBSON:

8      Q.   I just want to understand the testimony

9      that Kevlar in 2018 showed CM1, CM2, and CM3; is

10     that correct?

11     A.   As far as I know, yes.  I don't go into

12     Kevlar.  So we -- my understanding is we had

13     different views for different people, like I said.

14     So the SVPs manage to CM1, and then the higher level

15     people like Jan, Jon, Jason, myself, I had access,

16     we would have access all the way to CM3.

17     Q.   Okay.  So if Ms. Spearman went into Kevlar

18     in September 2018, she would only see CM1; is that

19     correct?

20     A.   As far as --

21          MR. PERLOWSKI:  Objection.  Foundation.

22          You can answer.

23     A.   As far as I know, yes.

24     BY MS. GIBSON:

25     Q.   Okay.  And did that change at any point

Christy Bunce
March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 13

1    where an SVP could go into Kevlar and see CM3?

2          A.   I -- I don't know.  I don't know if that

3    had changed or not.

4          Q.   Does NAF still use Kevlar?

5          A.   We do.

6          Q.   Okay.  Do you know if an SVP -- could

7    Ms. Allison go in there right now into Kevlar and

8    see CM3?

9          A.   Well, it's -- it's different now because

10   we're on a P&L model, so this was a different model.

11         Q.   So in 2019 when you were still on the CM1,

12   2, and 3, when NAF was still using those

13   allocations, do you know if it changed between 2018

14   and 2019 where an SVP could go in and see the

15   different CM allocations?

16         A.   I don't know.

17         Q.   Okay.  Who would know that?

18         A.   Jason or Jim.

19         Q.   Okay.  If you look -- I just want to

20   understand, or see if you can help me understand,

21   reading this.  You go to the bottom of that screen,

22   and it says -- and you may have already explained

23   this, the corporate allocation -- let me make sure

24   I'm on the right one.

25              Strike that.  I'm going to load another

Christy Bunce                          March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 14

1   exhibit.

2         Actually, go to the bottom of that page.

3   And it says Corporate Margin all the way across, and

4   on the far right it shows a loss, is that correct,

5   as of September 2018?

6         MR. PERLOWSKI:  We're still on Exhibit 3?

7         MS. GIBSON:  Yes, Henry.

8         MR. PERLOWSKI:  Okay.

9         MS. GIBSON:  Sorry.  I was going to change,

10  but I didn't.  I just want to make sure I understand

11  this.

12        MR. PERLOWSKI:  Object to the form.

13        You can answer.

14        A.  That's correct.

15  BY MS. GIBSON:

16        Q.  And -- but you don't know, just looking

17  from this document, if this is CM1, 2, or 3?

18        A.  Correct.

19        Q.  Okay.  Load another exhibit.  Okay.  I just

20  loaded Exhibit 4.

21           (Plaintiff's Exhibit 4 marked)

22        A.  Okay.  I've got it up.

23  BY MS. GIBSON:

24        Q.  I know it's similar to what we just looked

25  at, but can you tell me what this is?

1       A.  It looks exactly the same just for

2   different dates, rolling P&L for 10/18 through 12/18

3   for the southeast.  Looks to be the same.  It looks

4   like maybe they added a column where it broke down

5   the dollar total into bips as well.

6       Q.  And looking at the bottom of that where it

7   says "corporate allocation," do you know if this is

8   CM1, 2, or 3?

9       A.  No, I do not.

10      Q.  Okay.  And if this was a document that

11  Ms. Spearman looked at, she would only be able to

12  see CM1; is that correct?

13          MR. PERLOWSKI:  Objection.  Form,

14  foundation.

15  BY MS. GIBSON:

16      Q.  Could Ms. Spearman see CM1, 2, and 3 in

17  2018 on Kevlar?

18          MR. PERLOWSKI:  Object to the form.

19  Foundation.

20          You can answer.

21      A.  Yeah.  As far as I know, no, she was -- all

22  SVPs were managing off of CM1.

23  BY MS. GIBSON:

24      Q.  And do you know why this was printed out

25  for just the three months?

Page 16

```
 1        A.  I do not.

 2        Q.  And where does the data come from that goes

 3   into this document?

 4        A.  It's pulled in from different sources.  So

 5   I don't know, like, from all different avenues of

 6   where -- where this data is coming from.

 7        Q.  Who would know where this data comes from?

 8        A.  Jason Obradovich or Jim Muth.

 9        Q.  And who would have access to the data that

10   goes into this spreadsheet?

11        A.  Both Jason and Jim.

12        Q.  Do you have access to that data?

13        A.  I don't access the data, so I couldn't say

14   for sure if I did or if I didn't.

15        Q.  Going to load Exhibit 5.

16            (Plaintiff's Exhibit 5 marked)

17        A.  I have it on the screen.

18   BY MS. GIBSON:

19        Q.  And what is this document?

20        A.  Looks like a compilation of the P&Ls for

21   the year 2017 month by month.

22        Q.  Who would have prepared this?

23        A.  I can assume it was Jim Muth.

24        Q.  So what does this purport to show?

25        A.  It's showing month-by-month profit and
```

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

Page 17

1   loss.  There's no header on the report, so I can't

2   say for what regions.

3        Q.  Do you know where this document came from?

4        A.  What do you mean where it came from?

5        Q.  Well, you said there's no header.  So if we

6   wanted to know from what regions this information

7   related to, how would we find that out?

8        A.  Jim Muth would have that information.

9        Q.  And this document has columns with CM1, 2,

10   and 3; is that correct?

11        A.  That's correct.

12        Q.  Okay.  And is this information in Kevlar,

13   or is this maintained somewhere else?

14        A.  Back in 2018, I can assume it was in

15   Kevlar; but like I had said, I didn't go into

16   Kevlar.  These reports were produced for me every

17   single month.

18        Q.  Who produced them for you every month?

19        A.  Jim Muth.

20        Q.  And how did he deliver them to you?

21        A.  Paper copy.

22        Q.  I'm sorry, did you say that it's in Kevlar?

23        MR. PERLOWSKI:  Object to the form.  Asked

24   and answered.

25        You can answer again, Ms. Bunce.

Christy Bunce                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 18

```
 1      A.  Yeah.  I would have to assume it's in
 2  Kevlar.  I don't use Kevlar, so I don't know for
 3  sure.
 4  BY MS. GIBSON:
 5      Q.  But you don't know where this document came
 6  from?
 7      A.  I know that it came from Jim Muth.  Jim
 8  Muth is the one that produces all the P&Ls.
 9      Q.  I'm loading another exhibit for you, and it
10  will be Exhibit 6.
11          (Plaintiff's Exhibit 6 marked)
12      A.  Okay.  I've got it up on my screen.
13  BY MS. GIBSON:
14      Q.  Can you tell me what this is?
15      A.  Looks much the same as the last document,
16  the compilation of the P&L for a couple months in
17  '16, all of '17, all of '18, all of '19, and three
18  months in 2020.
19      Q.  And is this for the entire company?
20      A.  No.  The only reason I know that for sure
21  is because that's not the total volume that we
22  funded.
23      Q.  Do you know why this was produced in this
24  litigation?
25      A.  I do not.
```

Christy Bunce
March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 19

1        Q.   Do you know what it is purporting to show?

2        A.   You want me to answer what I assume?

3        Q.   Just if you know what -- you know, what

4    this shows.  If you're familiar with the

5    spreadsheets and you know; then if not, that's --

6    you know, you can tell me you don't know.

7        A.   Well, without the header --

8             MR. PERLOWSKI:  I just want to add, I don't

9    want you to speculate; but if you know what the

10   document purports to represent, please answer.

11       A.   Yeah.  It looks to be the southeast

12   production.

13   BY MS. GIBSON:

14       Q.   And how do you know that?

15       A.   Just from the numbers and from what I

16   reviewed that Henry had sent me.

17       Q.   Did he send you anything else with this

18   document that would indicate it's the southeast

19   numbers?

20       A.   Not that I know.  Not that I can recall.

21       Q.   All right.  And then if I look at the last

22   column on this page, it says CM.  Do you know if

23   that's CM1, 2, or 3?

24       A.   I'm going to assume it's CM1.

25       Q.   And why?

Christy Bunce                          March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                               Page 20

1        A.   Because our headers were pretty clear

2    whether it was CM1, 2, or 3, from what I recall from

3    that reporting.

4    ████████████████████████████  ████████████

5    ████████████

6       ████████████████████████  ████████████████

7        Q.   It's your understanding this is for the

8    southeast region?

9        A.   That's my understanding.

10       Q.   Is this something that would have been sent

11   to the SVPs?

12       A.   Yes.

13       Q.   So this lists January through December of

14   2018, just for example.  Would they receive a

15   spreadsheet each month that breaks this down for

16   them, these numbers?

17       A.   I don't recall if we sent them to them.  We

18   would review them periodically.  They weren't paid

19   on a P&L, so we didn't review them every month.

20       Q.   When you say "we would review," who is we?

21       A.   Jan, Jon, and I.

22       Q.   Okay.  So I'm -- I'm asking if the -- if

23   you reviewed these with the SVPs or if the SVPs saw

24   this.

25       A.   I don't know --

Christy Bunce                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 21

1          MR. PERLOWSKI:  Object to the form.

2     Foundation and speculation.

3          You can answer.

4     A.  Yeah, I don't know if Jon reviewed these

5     P&Ls with them every single month.

6     BY MS. GIBSON:

7     Q.  So if I recall, I want to try and

8     understand the documents that the SVPs would see on

9     a monthly basis.  And that would be -- and is

10    that -- is that the BMAM recaps?

11    A.  That's totally different than anything

12    we're talking about here with the P&L.

13    Q.  Okay.  Tell me what the BMAM recaps are and

14    what they show.

15    A.  Those show -- really, it just is a

16    breakdown of every single loan that was funded and

17    what they're getting paid on.

18    Q.  And what the volume is?

19    A.  I don't have it in front of me, but I think

20    it does total the loan volume.

21    Q.  Okay.  When you say that's something

22    totally different, explain to me what the

23    differences are.  And I know you don't have it in

24    front of you, but just general.

25          MR. PERLOWSKI:  Object to form.

1    BY MS. GIBSON:

2         Q.   You can answer.

3         A.   So what we are reviewing so far today is

4    all P&L documents.  Recap is what the commissions

5    team would send to the SVPs to show them what loans

6    were funded and the commissions that they were being

7    paid under.

8         Q.   Okay.  And up through March 1 of 2020, SVPs

9    were not paid on P&Ls; is that correct?

10        A.   That's correct.

11        Q.   Okay.  I'm going to upload the next

12   exhibit.  Do you see Exhibit 7?

13             (Plaintiff's Exhibit 7 marked)

14        A.   Yes, I have that on my screen.

15   BY MS. GIBSON:

16        Q.   And can you tell me what that is.

17        A.   That is a document that we produced, if I

18   remember correctly, in our leadership meeting that

19   we had discussed the last time we had met, showing

20   all the different costs of the company and the

21   breakdown of how it was hitting the OLA division.

22        Q.   And who prepared this document?

23        A.   Jim Muth.

24        Q.   And so you said this was prepared and

25   presented at the leadership meeting and distributed

 1   to everyone present?

 2          A.   As far as I remember, yes.

 3          Q.   Okay.  And what was the purpose of

 4   distributing this at the leadership meeting?

 5          A.   Just so that they had optics into the costs

 6   and how they were being allocated.

 7          Q.   And do you know what the total costs

 8   represented on this exhibit are?

 9          A.   You mean the total dollar amount?

10          Q.   Yes.

11          A.   I don't think we have it totaled on here.

12   I don't see a total.

13          Q.   So if I were to add these numbers in this

14   chart, that would represent -- tell me what that

15   would represent, I guess is what I'm trying to find

16   out.  Is this CM1, 2, or 3?

17          A.   It's -- it's all --

18               MR. PERLOWSKI:  Object to the form.

19               THE WITNESS:  Sorry.

20   BY MS. GIBSON:

21          Q.   Go ahead.  You can answer.

22          A.   If I recall correctly, it's all of the

23   costs, all the corporate costs would be CM3.

24          Q.   Who prepared this?

25          A.   Jim Muth.

Christy Bunce                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 24

1        Q.   Okay.   And were these costs reflected in
2    the P&Ls?
3        A.   I couldn't tell you exactly what costs were
4    reflected in the P&Ls.   The P&Ls I saw with CM3,
5    those costs were reflected in the P&Ls.
6        Q.   When you say those are the P&Ls that you
7    saw, because you had access to the P&Ls that
8    reflected CM3; is that correct?
9        A.   That's correct.
10       Q.   I'm going to upload the next exhibit.   And
11   this will be Exhibit 8.
12            (Plaintiff's Exhibit 8 marked)
13       A.   I have that on my screen.
14   BY MS. GIBSON:
15       Q.   Do you know when the pie chart that we just
16   looked at was prepared?
17       A.   It was presented, as far as I remember, in
18   that leadership meeting.   So it would have been
19   January or February 2019.
20       Q.   Okay.   Looking at Exhibit 10 -- I'm sorry,
21   8, can you tell me what this is?
22       A.   It shows southeast discretionary and
23   marketing expenses and looks like a breakdown of all
24   the costs.
25       Q.   Do you know when this was prepared?

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 25

1        A.   No, I do not.  There's no date on it.

2        Q.   Have you ever seen this before?

3        A.   I have seen it, yes.

4        Q.   And what was the purpose for preparing

5   this?

6        A.   I can assume that it was just to show Kelly

7   and Gina what the total expense was for a certain

8   period of time, which looks like all of 2018 on

9   this.

10       Q.   Do you remember going over with this

11  Ms. Spearman or Ms. Allison?

12       A.   I vaguely remember this being part of the

13  documents that we went over in the leadership

14  meeting with them.

15       Q.   And do you know who prepared this?

16       A.   It would be Jim Muth.

17       Q.   And so this was -- these are the marketing

18  expenses for the southeast.  And these -- if I

19  understood you correctly, these were shared with

20  Ms. Spearman and Ms. Allison at the leadership

21  meeting?

22       A.   If I remember correctly, yes.

23       Q.   And do you know why these were shared with

24  them at that point in time?

25       A.   Because we were talking about marketing

Christy Bunce                                  March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

1    expenses in that -- in those meetings.

2        Q.  What specifically were you talking about

3    marketing expenses as it relates to this?

4        A.  We were talking about changing our policy

5    on the way the marketing expenses were being

6    allocated to a region.

7        Q.  And how are you going to change how they

8    were allocated to the regions?

9        A.  We were going to put that back onto the

10   SVPs to pay for.

11       Q.  And did you prepare one of these for each

12   of the regions?

13       A.  As far as I remember, yes.

14       Q.  And when you -- when you discussed this or

15   presented this to Ms. Allison and Ms. Spearman at

16   the leadership meeting, what was their reaction?

17       A.  I don't really recall their reaction.  I

18   mean, they -- I think they knew what they had spent,

19   so I don't think that they were shocked by it or

20   anything like that.

21       Q.  Were they shocked at all by NAF telling

22   them they were going to put marketing expenses back

23   on the SVPs to pay?

24            MR. PERLOWSKI:  Objection.  Asked and

25   answered.

Christy Bunce                                      March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 27

1              You can answer it, ma'am.

2              MS. GIBSON:  I don't think I've asked that.

3              MR. PERLOWSKI:  You asked her in the last

4      round.  Go ahead.

5         A.  I don't think they were shocked.

6      BY MS. GIBSON:

7         Q.  When did NAF decide to hire a CFO?

8         A.  Very early on in 2019.

9         Q.  Why did NAF decide to hire a CFO?

10        A.  We just had felt that it was the right time

11     to do it, that this business is getting more

12     complicated to run, and that we felt like it was

13     time to move outside retail to a more standardized

14     compensation level, which is a P&L model.  And we

15     didn't have the expertise to do that.

16        Q.  And did NAF announce that it was going to

17     hire a CFO at that leadership meeting?

18        A.  Yes.

19        Q.  Okay.  And were there any other reasons

20     besides going to a P&L model that NAF decided to

21     hire a CFO?

22        A.  Yeah.  It just -- I just answered that.

23     Said that we decided that we were getting more

24     complicated to run and we had always had Rick and

25     Jason kind of tag-teaming as a CFO-type position.

Christy Bunce                              March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 28

1    And so we decided that it was the right time to hire

2    a CFO.

3         Q.   And did the hiring of the CFO have anything

4    to do with the way corporate allocations were

5    handled in the P&Ls?

6         A.   Yes.  I mean, we -- we needed a more

7    sophisticated process to how we were doing things.

8         Q.   When was the first time that you thought

9    Ms. Spearman was going to leave NAF?

10        A.   When she resigned.

11        Q.   So you didn't have any indication that she

12   might leave prior to that?

13        A.   No.

14        Q.   Okay.  Do you recall attending a meeting in

15   Tustin after the leadership meeting with

16   Ms. Spearman and the other SVPs?

17        A.   What -- what year?

18        Q.   After the leadership meeting in 2019.

19        A.   I don't recall having another SVP

20   roundtable, no.

21        Q.   Not exactly a roundtable.  I was just

22   wondering if you recall a meeting, more informal,

23   where Gina and some of the other SVPs flew out to

24   Tustin, basically on their own dime, just to meet

25   with y'all to discuss what was -- what occurred at

1    the leadership meeting.

2              MR. PERLOWSKI:  Objection.  Foundation.

3              You can answer.

4         A.  I do not recall having a subsequent meeting

5    to that meeting.

6    BY MS. GIBSON:

7         Q.  How long did it take for NAF to hire a CFO?

8         A.  From what time?

9         Q.  That's a good point.  I thought you just

10   told me that NAF decided, and I could be wrong, so

11   you tell me.

12             When did NAF decide to hire a CFO?  Was it

13   at the leadership meeting?

14        A.  No.  We had discussed it before the

15   leadership meeting, so we knew we were going to take

16   on that endeavor that year.

17        Q.  Was it announced at the leadership meeting?

18        A.  Yes.

19        Q.  And what was the reaction of those in

20   attendance at the leadership meeting to that

21   announcement?

22             MR. PERLOWSKI:  Objection.  Foundation.

23   Speculation.

24             Answer if you can.

25   BY MS. GIBSON:

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 30

1          Q.   If you -- you were there, so did you see

2     any reaction or did you -- do you recall the

3     reaction of the SVPs present to that announcement?

4          A.   Overall, it was met with positive favor.

5          Q.   Prior to the leadership meeting, had SVPs

6     asked NAF to hire a CFO?

7          A.   Not that I recall.

8          Q.   Had you heard from anyone at NAF that

9     Ms. Spearman was considering leaving before she

10    actually resigned?

11         A.   I had not.

12         Q.   Do you know if anyone encouraged

13    Ms. Spearman to stay employed at NAF after the

14    leadership meeting?

15         A.   I'm not really following your question.

16         Q.   Do you know -- so the leadership meeting

17    occurred.  After the leadership meeting, did anyone

18    at NAF, any officers encourage Ms. Spearman to stay

19    employed at NAF?

20         A.   Not that I know of.  I don't think anyone

21    thought Gina was leaving.

22         Q.   Do you know whether Mr. and Mrs. Arvielo

23    flew to Atlanta after the leadership meeting to meet

24    with Ms. Spearman and Ms. Allison?

25         A.   I do.

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

Page 31

1          Q.   Do you know why they did that?

2          A.   I think it was just -- it was a meeting

3    that Kelly and Gina had asked for.  And Patty and

4    Rick wanted to make sure that, you know, that they

5    were all good.

6          Q.   What do you mean "that they were all good"?

7          A.   Well, nobody was really thrilled about, you

8    know, what the conversation had been at the

9    leadership conference.  And Kelly and Gina had

10   questions.  And, you know, they're very important to

11   us, so Rick and Patty flew out -- I think they went

12   to dinner.  I think it was a real quick visit.

13         Q.   When you say you knew they weren't

14   thrilled, what do you mean by that?

15         A.   Well, I'll reiterate what I said last time

16   we met.  Nobody was happy in 2019 after coming off

17   of 2018.  So the mortgage market had really taken a

18   bad dip, and so we were getting prepared for a rough

19   year in 2019.

20         Q.   Well, wasn't it actually a surprise to

21   Ms. Spearman and Ms. Allison that 2018 was a bad

22   year?

23              MR. PERLOWSKI:  Objection.  Speculation.

24              You can answer it.

25         A.   I don't think it was a surprise for anybody

Case 1:20-cv-04981-CAP   Document 108   Filed 04/28/22   Page 32 of 57
Christy Bunce                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 32

1    that 2018 ended poorly, no.

2    BY MS. GIBSON:

3         Q.  I'm not asking about anybody.  I'm asking

4    specifically about Ms. Spearman and Ms. Allison and

5    what they expressed to you.

6         A.  No, I don't think they --

7              MR. PERLOWSKI:  One second.  Is that a

8    question, because it -- what was your last question?

9              MS. GIBSON:  Yes, it was a question.

10   BY MS. GIBSON:

11        Q.  You can finish your answer.

12        A.  Can you repeat the question?

13             MS. GIBSON:  Can you repeat the question,

14   LaRita?

15             (The reporter read the requested material.)

16             THE WITNESS:  I think you're going to have

17   to read back the question before that.

18             THE REPORTER:  Okay.

19             "Well, wasn't it actually a surprise to

20   Ms. Spearman and Ms. Allison that 2018 was a bad

21   year?"

22        A.  So my answer is still the same.  I don't

23   think that they were surprised.

24   BY MS. GIBSON:

25        Q.  Did the Arvielos fly to Atlanta to

Christy Bunce                              March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 33

1    encourage Ms. Spearman and Ms. Allison to stay

2    employed at NAF?

3            MR. PERLOWSKI:  Objection.  Asked and

4    answered, speculation.

5            You can answer, Ms. Bunce.

6        A.  I don't think that they were at all

7    concerned that they were leaving NAF at that time.

8    BY MS. GIBSON:

9        Q.  Did you have discussions with the Arvielos

10   before they flew to Atlanta to meet with them?

11       A.  Not that I recall specifically about that

12   meeting.

13           MS. GIBSON:  Okay.  Let me take a quick

14   five-minute break and we'll come back.

15           (Recess 3:46 to 3:52 p.m.)

16   BY MS. GIBSON:

17       Q.  Ms. Bunce, I have loaded Exhibit 9, and

18   it's a large spreadsheet.  So after you open it,

19   you'll actually need to -- it will send you a

20   download link.  If you can download it and let me

21   know when it's open.

22           (Plaintiff's Exhibit 9 marked)

23           (Off-the-record discussion.)

24       A.  Okay.  It's on my screen.

25   BY MS. GIBSON:

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 34

1     Q.  You'll see at the bottom it has three tabs.

2  And if you're at the first tab, which is branch

3  totals YTD 2/18.  First of all, can you just tell me

4  what this spreadsheet is?

5     A.  It looks like it's marketing expenses,

6  printer expenses, holiday party expenses, and it's a

7  total of expenses.  And looks like it's all of the

8  southeast branches.

9     Q.  And who prepared this document?  Do you

10  know?

11    A.  I can assume it was Jim Muth.

12    Q.  Do you know when it was created?

13    A.  I don't see a date.

14    Q.  Do you know where -- I'm sorry?

15    A.  Sorry.  The tab shows branch totals year to

16  date 2018 at the bottom there.

17    Q.  Yeah.  But you don't know when it was

18  actually created, do you?

19    A.  I would not know.

20    Q.  Okay.  Do you know where the data comes

21  from that is input into this spreadsheet?

22    A.  Oh, this is all expenses, so I would assume

23  it was -- it would come from accounting.

24    Q.  Did accounting have a database that

25  maintains all expenses?

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 35

1        A.   Yes.

2        Q.   And what's the name of that database?

3        A.   The system they use is AMB.

4        Q.   Okay.  And who has access to this

5   spreadsheet?

6        A.   I would assume Jim Muth and Jason

7   Obradovich.

8        Q.   Was this ever shared with Ms. Spearman and

9   Ms. Kelly -- I mean, Ms. Allison?

10       A.   I did not.  I don't recall sharing it with

11  them.

12       Q.   Do you know if this document was prepared

13  for the litigation?

14       A.   I do not know.

15       Q.   Okay.  And if you go to the next tab, the

16  southeast region, tell me what this purports to show

17  me.

18       A.   Without going through it line by line, I

19  would say this is the back end of that spreadsheet.

20  So this is showing every check that was written, all

21  the expenses broken out.

22  ████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████

25  ████████████████████████████████

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 36

1      Q.  And three columns over from that, it says

2   Corp.  What are those expenses?

3      A.  It looks like, if your roll over back under

4   the Category, it shows Expense Reimbursement.

5      Q.  It's a reimbursement under corporate

6   expenditures; is that correct?

7          MR. PERLOWSKI:  Object to the form.

8      A.  That's what it looks like.

9   BY MS. GIBSON:

10     Q.  So is that money, then, that would have

11  been reimbursed to Kelly and Gina?

12         MR. PERLOWSKI:  Object to the form.

13     A.  I can only assume it is.  I don't look at

14  these reports.  I would have to ask Jim.

15  BY MS. GIBSON:

16     Q.  Do you think Mr. Muth would be able to tell

17  us what these columns mean?

18     A.  Yes.

19     Q.  Okay.  And then the third tab is Gina and

20  Kelly's expenses.  So explain to me how this is

21  different from this other tab, southeast region.

22     A.  I don't know.

23     Q.  Okay.  Who would know?

24     A.  Again, it would most likely be Jim Muth.

25     Q.  Okay.  All right.  I'm going to upload

1   another spreadsheet.

2        A.   I'm going to close out of this one.  Is

3   that fine?

4        Q.   Yeah, that's fine.  Again, this one is a

5   large one that you'll need to download.

6        A.   Okay.  I've got it up.

7        Q.   And this is Exhibit 10, NAF 789.

8        A.   Yes.

9             (Plaintiff's Exhibit 10 marked)

10  BY MS. GIBSON:

11       Q.   Okay.  And can you tell me what this

12  purports to show?

13       A.   It looks the same as the other one.

14       Q.   So it's just a duplicate of the last

15  spreadsheet?

16       A.   I'd have to look at the numbers, but it's

17  the same form.

18       Q.   Do you know who prepared this?

19       A.   I'd have to assume Jim Muth.

20       Q.   And if I wanted to know what the columns

21  meant and where the data came from, would I have to

22  ask Jim Muth?

23       A.   Yes.

24       Q.   Okay.  You can close out of that.  I've got

25  one last spreadsheet I'd like to show you.  Again,

Case 1:20-cv-04981-CAP   Document 108   Filed 04/28/22   Page 38 of 57
Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 38

1    it's a large one, so you'll have to download it.

2            (Plaintiff's Exhibit 11 marked.)

3        A.   Okay.  I've got it up here.

4    BY MS. GIBSON:

5        Q.   Can you tell me what this spreadsheet is?

6        A.   Looks like it's along the same lines.  It's

7    showing marketing expenses, printer, says

8    reimbursement, same thing.

9        Q.   And what year is this for?

10       A.   I don't see a year, but let me see here.

11   You can see a few dates on here that show 2018, so

12   we can assume it's 2018.

13       Q.   And what is -- why was this document

14   produced in the litigation?  Do you know?

15       A.   I do not.

16       Q.   What does this document purport to show?

17           MR. PERLOWSKI:  Objection.  Asked and

18   answered.

19   BY MS. GIBSON:

20       Q.   You may answer.

21       A.   It looks like it's showing all the

22   marketing for the southeast.

23       Q.   So this would be all of the marketing

24   expenses for the southeast for what year?

25       A.   I just said you can assume it's 2018, but

Page 39

1  we would have to ask Jim, because I see some notes

2  in here about 2018.

3      Q.  I don't see notes in here about 2018.

4  Where -- what line are you on?  Can you look to the

5  left and tell me?

6      A.  I'm in column S.  And the first time I see

7  2018, looks like line 194.  You can see there's

8  notes there, 2018.  Line 201, 2018.

9      Q.  Okay.  And who prepared this document?

10     A.  I'm assuming it was Jim Muth.

11     Q.  And so across the top, again, it has

12  marketing expenses and a column also for corporate.

13  Can you explain to me what those two columns show

14  me?

15     A.  So it looks like the marketing expense

16  column is all the checks that were written to cover

17  expenses.  Looks like there's some American Express

18  charges along the same lines.  And then corporate

19  looks like they're labeled as expense reimbursements

20  or check requests, so one could assume it's a

21  reimbursement.

22  

23

24

25

Christy Bunce                                March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 40

1   ▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

2   ▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨

3            MR. PERLOWSKI:  Object to form.

4            You can answer.

5        A.  I'm trying to get there.  Hold on.  My bar

6   is not working, so I've got to scroll through it.

7   That's what I see as the total at the bottom of that

8   column.

9   BY MS. GIBSON:

10       Q.  And so your understanding is that this for

11  2018 -- so that would represent the amount of

12  marketing expenses NAF paid on behalf of

13  Ms. Spearman and Ms. Allison for the southeast

14  region; correct?

15       A.  You would have to ask Jim if that's all of

16  the expenses.

17       Q.  So Jim would know, but there could be more,

18  is what you're telling me?

19       A.  I just don't know.

20       ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

21  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

22  ▨▨▨▨▨▨▨

23       A.  Again, you'd have to ask Jim to know for

24  sure.

25       Q.  Okay.

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                    Page 41

1           MS. GIBSON:  Okay.  I don't have any other

2    exhibits, and I don't have any additional questions.

3           MR. PERLOWSKI:  Great.  You are concluded.

4    Thank you very much.

5           MS. GIBSON:  Thank you for coming back

6    today.  Appreciate it.

7           (Deposition concluded at 4:07 p.m.)

8           (Signature reserved.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

```
 1                VERITEXT LEGAL SOLUTIONS

 2              FIRM CERTIFICATE AND DISCLOSURE

 3

 4   Veritext represents that the foregoing transcript as

 5   produced by our Production Coordinators, Georgia

 6   Certified Notaries, is a true, correct and complete

 7   transcript of the colloquies, questions and answers

 8   as submitted by the certified court reporter in this

 9   case.  Veritext further represents that the attached

10   exhibits, if any, are a true, correct and complete

11   copy as submitted by the certified reporter,

12   attorneys or witness in this case; and that the

13   exhibits were handled and produced exclusively

14   through our Production Coordinators, Georgia

15   Certified Notaries.  Copies of notarized production

16   certificates related to this proceeding are

17   available upon request to litsup-ga@veritext.com.

18

19   Veritext is not taking this deposition under any

20   relationship that is prohibited by OCGA 15-14-37(a)

21   and (b).  Case-specific discounts are automatically

22   applied to all parties, at such time as any party

23   receives a discount.  Ancillary services such as

24   calendar and financial reports are available to all

25   parties upon request.
```

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 43

1                        CERTIFICATE
2    STATE OF GEORGIA:
     COUNTY OF FULTON:
3

          I hereby certify that the foregoing
4    transcript was taken down, as stated in the caption,
     and the colloquies, questions and answers were
5    reduced to typewriting under my direction; that the
     transcript is a true and correct record of the
6    evidence given upon said proceeding.
          I further certify that I am not a relative
7    or employee or attorney of any party, nor am I
     financially interested in the outcome of this
8    action.
          I have no relationship of interest in this
9    matter which would disqualify me from maintaining my
     obligation of impartiality in compliance with the
10   Code of Professional Ethics.
          I have no direct contract with any party in
11   this action and my compensation is based solely on
     the terms of my subcontractor agreement.
12        Nothing in the arrangements made for this
     proceeding impacts my absolute commitment to serve
13   all parties as an impartial officer of the court.
14        This th

15        *LaRita J. Cormier* (signature)

16        _____
17        LaRita J. Cormier, RPR, CCR No. 2578
18
19
20
21
22
23
24
25

Page 44

```
 1   To:  HENRY PERLOWSKI
 2   Re:  Signature of Deponent Christy Bunce
 3   Date Errata due back at our offices: 30 Days
 4
 5   Greetings:
 6   The deponent has reserved the right to read and
     sign.  Please have the deponent review the attached
 7   PDF transcript, noting any changes or corrections on
     the attached PDF Errata.  The deponent may fill out
 8   the Errata electronically or print and fill out
     manually.
 9
10   Once the Errata is signed by the deponent and
     notarized, please mail it to the office of Veritext
11   (below).
12
     When the signed Errata is returned to us, we will
13   seal and forward to the taking attorney to file with
     the original transcript.  We will also send copies
14   of the Errata to all ordering parties.
15
     If the signed Errata is not returned within the time
16   above, the original transcript may be filed with the
     court without the signature of the deponent.
17
18
     Please send completed Errata to:
19
     Veritext Production Facility
20
     20 Mansell Court
21
     Suite 300
22
     Roswell, GA  30076
23
     (770) 343-9696
24
25
```

Christy Bunce                                   March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

                                                        Page 45

1   ERRATA
2   I, the undersigned, do hereby certify that I have
    read the transcript of my testimony and that
3
    ___ There are no changes noted.
4
    ___ The following changes are noted:
5
6   Pursuant to Rule 30(7)(e) of the Federal Rules of
    Civil Procedure and/or OCGA 9-11-30(e), any changes
7   in form or substance which you desire to make to
    your testimony shall be entered upon the deposition
8   with a statement of the reasons given for making
    them.  To assist you in making any such corrections,
9   please use the form below.  If additional pages are
    necessary, please furnish same and attach.
10
11  Page ____ Line ____ Change _____
12  _____
13  Reason for change _____
14  Page ____ Line ____ Change _____
15  _____
16  Reason for change _____
17  Page ____ Line ____ Change _____
18  _____
19  Reason for change _____
20  Page ____ Line ____ Change _____
21  _____
22  Reason for change _____
23  Page ____ Line ____ Change _____
24  _____
25  Reason for change _____

Christy Bunce                                    March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

Page 46

1    Page _____ Line _____ Change _____
2    _____
3    Reason for change _____
4    Page _____ Line _____ Change _____
5    _____
6    Reason for change _____
7    Page _____ Line _____ Change _____
8    _____
9    Reason for change _____
10   Page _____ Line _____ Change _____
11   _____
12   Reason for change _____
13   Page _____ Line _____ Change _____
14   _____
15   Reason for change _____
     Page _____ Line _____ Change _____
16
     _____
17
     Reason for change _____
18
19
                        _____
20                      DEPONENT'S SIGNATURE
21   Sworn to and subscribed before me this _____ day of
     _____, _____.
22
23   _____
     NOTARY PUBLIC
24
25   My Commission Expires: _____

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

[0000738 - answer]

Page 1

| 0 | | |
|---|---|---|
| **0000738** 2:14 | | |
| **0000739** 2:13 | | |
| **0000743** 2:8 | | |
| **0000774** 2:4 | | |
| **0000781** 2:6 | | |
| **0000782** 2:10 | | |
| **0000783** 2:11 | | |
| **0000784** 2:16 | | |
| **0000789** 2:17 | | |
| **0000795** 2:18 | | |
| **01/18** 2:6 | | |
| **04981** 1:6 | | |
| **05** 2:4 | | |
| **09** 2:5 | | |
| **09/18** 2:7 | | |

| 1 |
|---|
| **1** 2:4 5:3,23,25 6:16 22:8 |
| **10** 2:6,17 24:20 37:7,9 |
| **10/18** 15:2 |
| **10/18-12/18** 2:9 |
| **11** 2:18 38:2 |
| **112,253** 40:21 |
| **11:03** 1:15 |
| **12/18** 15:2 |
| **13621** 43:15 |
| **14** 2:8 3:8 |
| **15-14-37** 42:20 |
| **16** 2:10 18:17 |
| **17** 18:17 |
| **171** 3:17 |
| **17th** 3:17 |
| **18** 2:11 18:17 |
| **19** 18:17 |
| **194** 39:7 |
| **1:20** 1:6 |

| 2 |
|---|
| **2** 2:5 6:10,14 8:6,7 8:7 9:7,8,13,14,17 10:20 11:14,24 13:12 14:17 15:8 15:16 17:9 19:23 20:2 23:16 |
| **2/18** 34:3 |
| **20** 44:20 |
| **201** 39:8 |
| **2017** 2:10 16:21 |
| **2018** 10:9,10 11:4 11:22,23 12:9,18 13:13 14:5 15:17 17:14 20:4,14 25:8 31:17,21 32:1,20 34:16 35:24 38:11,12,25 39:2,3,7,8,8 40:11 |
| **2019** 13:11,14 24:19 27:8 28:18 31:16,19 |
| **2020** 18:18 22:8 |
| **2022** 1:14 9:22 43:14 |
| **20th** 43:14 |
| **2100** 3:18 |
| **22** 2:13 |
| **230** 3:8 |
| **24** 2:14 |
| **2578** 1:17 43:17 |
| **29** 1:14 |

| 3 |
|---|
| **3** 2:6 8:6 10:3,4,20 11:15,25 13:12 14:6,17 15:8,16 17:10 19:23 20:2 23:16 |
| **30** 4:8 44:3 45:6 |

| 300 | 44:21 |
|---|---|
| **30076** 44:22 |
| **30305** 3:9 |
| **30363** 3:19 |
| **33** 2:16 |
| **343-9696** 44:23 |
| **3535** 3:7 |
| **37** 2:17 |
| **38** 2:18 |
| **3:46** 33:15 |
| **3:52** 33:15 |

| 4 |
|---|
| **4** 2:8 14:20,21 |
| **4:07** 41:7 |

| 5 |
|---|
| **5** 2:10 16:15,16 |
| **526,000** 20:6 |
| **570,465** 39:24 |

| 6 |
|---|
| **6** 2:11 4:8 18:10 18:11 |
| **603,000** 35:23,25 |

| 7 |
|---|
| **7** 2:13 22:12,13 45:6 |
| **770** 44:23 |
| **774** 9:18 |
| **789** 37:7 |
| **7th** 9:22 |

| 8 |
|---|
| **8** 2:14 24:11,12,21 |

| 9 |
|---|
| **9** 2:16 33:17,22 |
| **9-11-30** 45:6 |

| a |
|---|
| **a.m.** 1:15 |
| **able** 5:3 15:11 36:16 |

| absolute | 43:12 |
|---|---|
| **access** 8:15 10:24 10:25 11:2 12:15 12:16 16:9,12,13 24:7 35:4 |
| **accounting** 34:23 34:24 |
| **acronyms** 7:8 |
| **action** 43:8,11 |
| **add** 19:8 23:13 |
| **added** 15:4 |
| **additional** 4:12 41:2 45:9 |
| **afternoon** 4:6 |
| **agg.com** 3:20 |
| **agreement** 43:11 |
| **ahead** 23:21 27:4 |
| **allison** 13:7 25:11 25:20 26:15 30:24 31:21 32:4,20 33:1 35:9 40:13 |
| **allocated** 23:6 26:6,8 |
| **allocation** 13:23 15:7 |
| **allocations** 13:13 13:15 28:4 |
| **allowed** 4:13 |
| **amb** 35:3 |
| **american** 1:8 39:17 |
| **amount** 23:9 39:24 40:11 |
| **ancillary** 42:23 |
| **andrew** 3:24 |
| **announce** 27:16 |
| **announced** 29:17 |
| **announcement** 29:21 30:3 |
| **answer** 7:25 8:20 11:9,16 12:22 |

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al
March 31, 2022

[answer - commitment]

Page 2

14:13 15:20 17:25
19:2,10 21:3 22:2
23:21 27:1 29:3
29:24 31:24 32:11
32:22 33:5 38:20
40:4
**answered**  11:8
17:24 26:25 27:22
33:4 38:18
**answers**  42:7 43:4
**anybody**  31:25
32:3
**appearances**  3:1
**applied**  42:22
**appreciate**  41:6
**april**  43:14
**arnall**  3:16
**arrangements**
43:12
**arvielo**  30:22
**arvielos**  32:25
33:9
**asked**  11:7 17:23
26:24 27:2,3 30:6
31:3 33:3 38:17
**asking**  20:22 32:3
32:3
**assist**  45:8
**assume**  16:23
17:14 18:1 19:2
19:24 25:6 34:11
34:22 35:6 36:13
37:19 38:12,25
39:20
**assuming**  8:10
39:10
**atlanta**  1:3 3:9,19
30:23 32:25 33:10
**attach**  45:9
**attached**  42:9 44:6
44:7

**attendance**  29:20
**attending**  28:14
**attorney**  43:7
44:13
**attorneys**  42:12
**automatically**
42:21
**available**  42:17,24
**avenues**  16:5

| b |
|---|

**b**  1:8 4:8 42:21
**back**  4:7 6:17
17:14 26:9,22
32:17 33:14 35:19
36:3 41:5 44:3
**bad**  31:18,21
32:20
**balloon**  5:13
**bar**  40:5
**based**  43:11
**basically**  28:24
**basis**  21:9
**behalf**  3:2,14
39:25 40:12
**belated**  5:17
**believe**  8:5
**bips**  15:5
**birthday**  5:15,17
**block**  3:23
**blue**  40:21
**bmam**  21:10,13
**bottom**  7:9,10
10:20 13:21 14:2
15:6 34:1,16
35:24 39:22 40:7
40:21
**branch**  34:2,15
**branches**  34:8
**break**  4:18 33:14
**breakdown**  21:16
22:21 24:23

**breaks**  20:15
**broke**  15:4
**broken**  35:21
**broker**  1:7
**building**  3:8
**bunce**  1:13 4:1,6
8:20,24 17:25
33:5,17 44:2
**business**  27:11

| c |
|---|

**c**  3:4
**calendar**  42:24
**cap**  1:6
**capacity**  4:9
**caption**  43:4
**case**  1:5 42:9,12
42:21
**category**  36:4
**ccr**  1:17 43:17
**certain**  9:11 25:7
**certificate**  42:2
43:1
**certificates**  42:16
**certified**  42:6,8,11
42:15
**certify**  43:3,6 45:2
**cfo**  27:7,9,17,21,25
28:2,3 29:7,12
30:6
**change**  12:25 14:9
26:7 45:11,13,14
45:16,17,19,20,22
45:23,25 46:1,3,4
46:6,7,9,10,12,13
46:15,15,17
**changed**  13:3,13
**changes**  44:7 45:3
45:4,6
**changing**  26:4
**charges**  39:18

**chart**  23:14 24:15
**check**  35:20 39:20
**checks**  39:16
**christy**  1:13 4:1
44:2
**civil**  45:6
**clear**  20:1
**click**  5:2
**close**  37:2,24
**cm**  2:13 13:15
19:22
**cm1**  8:6,6,7 10:20
11:5,14,24 12:9,14
12:18 13:11 14:17
15:8,12,16,22 17:9
19:23,24 20:2,5
23:16
**cm2**  11:5 12:9
**cm3**  7:14,15,16
8:7 11:6 12:9,16
13:1,8 23:23 24:4
24:8
**code**  43:10
**colloquies**  42:7
43:4
**column**  7:5 9:18
15:4 19:22 35:22
39:6,12,16,23 40:8
40:20
**columns**  17:9 36:1
36:17 37:20 39:13
**come**  6:17 16:2
33:14 34:23
**comes**  16:7 34:20
**coming**  16:6 31:16
41:5
**commission**  46:25
**commissions**  22:4
22:6
**commitment**
43:12

[company - examined]                                           Page 3

**company** 7:19
18:19 22:20
**compensation**
27:14 43:11
**compilation** 16:20
18:16
**complete** 42:6,10
**completed** 44:18
**compliance** 43:9
**complicated** 27:12
27:24
**computer** 4:21
**concerned** 33:7
**concluded** 41:3,7
**conference** 1:16
31:9
**confidential** 2:11
**considering** 30:9
**contract** 43:10
**conversation** 31:8
**coo** 6:23
**coordinators** 42:5
42:14
**copies** 42:15 44:13
**copy** 2:5 17:21
42:11
**cormier** 1:17 12:3
43:17
**corner** 10:9
**corp** 36:2
**corporate** 10:19
11:5 13:23 14:3
15:7 23:23 28:4
36:5 39:12,18
40:20
**correct** 7:21 11:6
11:10,15 12:1,10
12:19 14:4,14,18
15:12 17:10,11
22:9,10 24:8,9
35:24 36:6 40:2

40:14 42:6,10
43:5
**corrections** 44:7
45:8
**correctly** 22:18
23:22 25:19,22
**costs** 22:20 23:5,7
23:23,23 24:1,3,5
24:24
**counsel** 3:1,23,24
**counts** 4:12
**county** 43:2
**couple** 18:16
**court** 1:4 1:12
42:8 43:13 44:16
44:20
**cover** 39:16
**created** 6:13 8:9
9:23 34:12,18
**creation** 9:21
**cv** 1:6

**d**

**d** 1:8
**data** 16:2,6,7,9,12
16:13 34:20 37:21
**database** 34:24
35:2
**date** 9:22 25:1
34:13,16 44:3
**dates** 15:2 38:11
**day** 43:14 46:21
**days** 44:3
**december** 20:13
**decide** 27:7,9
29:12
**decided** 27:20,23
28:1 29:10
**defendant** 1:9
3:14
**deliver** 17:20

**department** 8:11
8:13,14
**deponent** 44:2,6,6
44:7,10,16
**deponent's** 46:20
**deposition** 1:12
4:8,10,12 5:5,21
41:7 42:19 45:7
**description** 2:2
**desire** 45:7
**differences** 21:23
**different** 7:7 12:13
12:13 13:9,10,15
15:2 16:4,5 21:11
21:22 22:20 36:21
**dime** 28:24
**dinner** 31:12
**dip** 31:18
**direct** 43:10
**direction** 43:5
**disclosure** 42:2
**discount** 42:23
**discounts** 42:21
**discretionary** 2:14
24:22
**discuss** 4:10 28:25
**discussed** 22:19
26:14 29:14
**discussion** 4:23
5:8 33:23
**discussions** 33:9
**disqualify** 43:9
**distributed** 22:25
**distributing** 23:4
**district** 1:1,2
**division** 1:3 2:13
22:21
**document** 9:12,23
14:17 15:10 16:3
16:19 17:3,9 18:5
18:15 19:10,18

22:17,22 34:9
35:12 38:13,16
39:9
**documents** 4:11
6:11,12 21:8 22:4
25:13
**doing** 28:7
**dollar** 15:5 23:9
**download** 33:20
33:20 37:5 38:1
**due** 44:3
**duly** 4:2
**duplicate** 37:14

**e**

**e** 45:6,6
**early** 27:8
**electronically** 44:8
**employed** 30:13
30:19 33:2
**employee** 43:7
**encourage** 30:18
33:1
**encouraged** 30:12
**endeavor** 29:16
**ended** 32:1
**entered** 45:7
**entire** 18:19
**entry** 7:11
**errata** 44:3,7,8,10
44:12,14,15,18
45:1
**esquire** 3:3,4,5,15
**est** 1:15
**ethics** 43:10
**everybody** 11:18
**evidence** 43:6
**exactly** 15:1 24:3
28:21
**examination** 4:4
**examined** 4:2

Christy Bunce                                March 31, 2022
Spearman, Gina v. Broker Solutions, Inc. Et Al

[example - impacts]                                        Page 4

**example** 20:14
**exclusively** 42:13
**exhibit** 2:2,4,5,6,8
  2:10,11,13,14,16
  2:17,18 4:20 5:3
  5:23,25 6:10,14
  9:7,8,13,14,17
  10:2,4 14:1,6,19
  14:20,21 16:15,16
  18:9,10,11 22:12
  22:12,13 23:8
  24:10,11,12,20
  33:17,22 37:7,9
  38:2
**exhibits** 2:1 5:2
  41:2 42:10,13
**expenditures** 36:6
**expense** 25:7 36:4
  39:15,19
**expenses** 2:15 7:18
  7:20 8:2 24:23
  25:18 26:1,3,5,22
  34:5,6,6,7,22,25
  35:21,23 36:2,20
  38:7,24 39:12,17
  39:24 40:12,16
**expertise** 27:15
**expires** 46:25
**explain** 21:22
  36:20 39:13
**explained** 13:22
**express** 39:17
**expressed** 32:5
**extent** 9:11

**f**

**facility** 44:19
**familiar** 9:10 19:4
**far** 7:11 12:11,20
  12:23 14:4 15:21
  22:3 23:2 24:17
  26:13

**favor** 30:4
**february** 24:19
**federal** 45:6
**felt** 27:10,12
**file** 44:13
**filed** 44:16
**fill** 44:7,8
**finance** 8:14,15
**financial** 42:24
**financially** 43:7
**find** 9:3 17:7 23:15
**fine** 37:3,4
**finish** 32:11
**finished** 8:19,24
**finley** 3:6
**firm** 3:6 42:2
**first** 4:2 28:8 34:2
  34:3 39:6
**five** 33:14
**flew** 28:23 30:23
  31:11 33:10
**fly** 32:25
**following** 30:15
  45:4
**follows** 4:3
**foregoing** 42:4
  43:3
**form** 7:24 9:24
  14:12 15:13,18
  17:23 21:1,25
  23:18 36:7,12
  37:17 40:3 45:7,9
**forward** 44:13
**foundation** 12:21
  15:14,19 21:2
  29:2,22
**front** 21:19,24
**full** 6:7,7 7:23
**fully** 7:16
**fulton** 43:2

**funded** 7:6 18:22
  21:16 22:6
**funding** 1:8
**furnish** 45:9
**further** 42:9 43:6

**g**

**ga** 42:17 44:22
**gains** 8:3
**general** 3:23 21:24
**georgia** 1:2 3:9,19
  42:5,14 43:2
**getting** 7:21 21:17
  27:11,23 31:18
**gibson** 3:3 4:5 5:1
  5:10,24 8:4,23 9:9
  10:1,6 11:12 12:7
  12:24 14:7,9,15,23
  15:15,23 16:18
  18:4,13 19:13
  21:6 22:1,15
  23:20 24:14 27:2
  27:6 29:6,25 32:2
  32:9,10,13,24 33:8
  33:13,16,25 36:9
  36:15 37:10 38:4
  38:19 40:9 41:1,5
**gina** 1:4 3:25 25:7
  28:23 30:21 31:3
  31:9 36:11,19
**given** 43:6 45:8
**go** 4:15 9:5,17
  11:21 12:11 13:1
  13:7,14,21 14:2
  17:15 23:21 27:4
  35:15 39:22
**goes** 16:2,10
**going** 13:25 14:9
  16:15 19:24 22:11
  24:10 25:10 26:7
  26:9,22 27:16,20
  28:9 29:15 32:16

35:18 36:25 37:2
**golden** 3:16
**good** 4:6 29:9 31:5
  31:6
**grand** 7:6,10
**great** 41:3
**greetings** 44:5
**gregory** 3:16
**gross** 7:7,9,11
**guess** 23:15

**h**

**hand** 10:9
**handled** 28:5
  42:13
**happy** 5:17 31:16
**hargrove** 3:4
**header** 6:6 17:1,5
  19:7
**headers** 11:10
  20:1
**heard** 30:8
**help** 6:12 13:20
**henry** 3:15 5:9,20
  14:7 19:16 44:1
**high** 10:25
**higher** 12:14
**hire** 27:7,9,17,21
  28:1 29:7,12 30:6
**hiring** 28:3
**hit** 7:19
**hitting** 22:21
**hold** 5:6 40:5
**holiday** 34:6
**hperlowski** 3:20

**i**

**identifies** 10:19
**identify** 6:12
**identifying** 6:25
**impacts** 43:12

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al
March 31, 2022

**impartial** 43:13
**impartiality** 43:9
**important** 31:10
**include** 8:7
**income** 8:3
**index** 2:1
**indicate** 19:18
**indication** 28:11
**individual** 4:9
**informal** 28:22
**information** 17:6
  17:8,12
**initial** 4:8,15
**input** 34:21
**ins** 11:18
**instructions** 4:14
**interest** 43:8
**interested** 43:7

**j**

**j** 1:17 43:17
**jackson** 3:5
**jan** 8:17 12:15
  20:21
**january** 4:7 9:22
  10:9,17 20:13
  24:19
**jason** 8:17 10:23
  11:1 12:15 13:18
  16:8,11 27:25
  35:6
**jim** 8:10,17 9:6
  10:23 11:1 13:18
  16:8,11,23 17:8,19
  18:7,7 22:23
  23:25 25:16 34:11
  35:6 36:14,24
  37:19,22 39:1,10
  40:15,17,23
**jon** 8:17 11:1
  12:15 20:21 21:4

**k**

**kelly** 25:6 31:3,9
  35:9 36:11
**kelly's** 36:20
**ken** 3:23
**kevlar** 2:8 10:8
  11:19,23 12:9,12
  12:17 13:1,4,7
  15:17 17:12,15,16
  17:22 18:2,2
**kind** 27:25
**knew** 11:18 26:18
  29:15 31:13
**know** 4:19 5:6,11
  6:6,17 9:23,25
  10:11,21,22,22
  11:11,17 12:11,23
  13:2,2,6,13,16,17
  14:16,24 15:7,21
  15:24 16:5,7 17:3
  17:6 18:2,5,7,20
  18:23 19:1,3,3,5,6
  19:6,9,14,20,22
  20:25 21:4,23
  23:7 24:15,25
  25:15,23 30:12,16
  30:20,22 31:1,4,8
  31:10 33:21 34:10
  34:12,14,17,19,20
  35:12,14 36:22,23
  37:18,20 38:14
  40:17,19,23
**knowing** 11:14

**l**

**labeled** 39:19
**large** 33:18 37:5
  38:1
**larita** 1:17 32:14
  43:17

**leadership** 22:18
  22:25 23:4 24:18
  25:13,20 26:16
  27:17 28:15,18
  29:1,13,15,17,20
  30:5,14,16,17,23
  31:9
**leave** 28:9,12
**leaving** 30:9,21
  33:7
**left** 10:9 39:5
**legal** 42:1
**level** 12:14 27:14
**levels** 11:1
**line** 35:18,18 39:4
  39:7,8 45:11,14,17
  45:20,23 46:1,4,7
  46:10,13,15
**lines** 38:6 39:18
**link** 33:20
**lists** 20:13
**litigation** 5:12
  18:24 35:13 38:14
**litsup** 42:17
**llp** 3:16
**lm** 7:7
**load** 6:10 13:25
  14:19 16:15
**loaded** 7:16 14:20
  33:17
**loading** 18:9
**loan** 21:16,20
**loans** 22:5
**log** 11:18
**long** 29:7
**look** 5:4 11:24
  13:19 19:21 36:13
  37:16 39:4
**looked** 14:24
  15:11 24:16

**looking** 6:20,24
  9:17 11:4,13,17,18
  11:19,19 14:16
  15:6 24:20
**looks** 10:17 15:1,3
  15:3 16:20 18:15
  19:11 24:23 25:8
  34:5,7 35:25 36:3
  36:8 37:13 38:6
  38:21 39:7,15,17
  39:19
**loss** 7:4,9,12,18
  10:17 14:4 17:1
  20:6
**losses** 8:2

**m**

**m** 3:15
**ma'am** 27:1
**mail** 44:10
**maintained** 17:13
**maintaining** 43:9
**maintains** 34:25
**making** 45:8,8
**manage** 7:8 12:14
**managing** 15:22
**mansell** 44:20
**manually** 44:8
**march** 1:14 22:8
**margin** 7:7 10:19
  11:5 14:3
**marked** 5:2,23 9:8
  10:4 14:21 16:16
  18:11 22:13 24:12
  33:22 37:9 38:2
**market** 31:17
**marketing** 2:15
  24:23 25:17,25
  26:3,5,22 34:5
  35:23 38:7,22,23
  39:12,15,23,24
  40:12

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

[marybeth - perlowski]

Page 6

**marybeth** 3:3
**material** 12:5
  32:15
**matter** 43:9
**mean** 7:17 17:4
  23:9 26:18 28:6
  31:6,14 35:9
  36:17 40:22
**meant** 37:21
**meet** 28:24 30:23
  33:10
**meeting** 4:15
  22:18,25 23:4
  24:18 25:14,21
  26:16 27:17 28:14
  28:15,18,22 29:1,4
  29:5,13,15,17,20
  30:5,14,16,17,23
  31:2 33:12
**meetings** 26:1
**met** 4:7 22:19 30:4
  31:16
**metadata** 2:5 6:11
  9:10
**mgibson** 3:11
**minute** 6:17 33:14
**model** 13:10,10
  27:14,20
**modified** 9:22
**money** 36:10
**month** 10:17,17
  16:21,21,25,25
  17:17,18 20:15,19
  21:5
**monthly** 21:9
**months** 10:12
  15:25 18:16,18
**mortgage** 31:17
**move** 27:13
**muth** 8:10 9:6
  10:23 16:8,23

17:8,19 18:7,8
22:23 23:25 25:16
34:11 35:6 36:16
36:24 37:19,22
39:10

**n**

**n** 3:5
**naf** 2:4,5,6,8,10,11
  2:13,14,16,17,18
  3:23,24 4:8 6:22
  9:18 11:22,22
  13:4,12 26:21
  27:7,9,16,20 28:9
  29:7,10,12 30:6,8
  30:13,18,19 33:2,7
  37:7 39:25 40:12
**name** 8:12 35:2
**necessary** 45:9
**need** 4:18,19 33:19
  37:5
**needed** 28:6
**net** 7:4,9
**new** 1:8
**nickolas** 3:5
**nine** 10:12
**njackson** 3:12
**northern** 1:2
**notaries** 42:6,15
**notarized** 42:15
  44:10
**notary** 46:23
**noted** 45:3,4
**notes** 39:1,3,8
**noting** 44:7
**numbers** 19:15,19
  20:16 23:13 37:16
**nw** 3:17

**o**

**object** 7:24 9:24
  14:12 15:18 17:23

21:1,25 23:18
36:7,12 40:3
**objection** 11:7
  12:21 15:13 26:24
  29:2,22 31:23
  33:3 38:17
**obligation** 43:9
**obradovich** 10:23
  16:8 35:7
**occurred** 28:25
  30:17
**ocga** 42:20 45:6
**office** 5:13 44:10
**officer** 43:13
**officers** 30:18
**offices** 44:3
**oh** 34:22
**okay** 4:18,24 5:19
  5:25 6:3,16 7:2,14
  8:5,9,12,15,22 9:7
  9:12,15 10:2,5,14
  11:13 12:2,17,25
  13:6,17,19 14:8,19
  14:19,22 15:10
  17:12 18:12 20:22
  21:13,21 22:8,11
  23:3 24:1,20
  27:19 28:14 32:18
  33:13,24 34:20
  35:4,15 36:19,23
  36:25 37:6,11,24
  38:3 39:9 40:25
  41:1
**ola** 2:13 22:21
**once** 44:10
**open** 33:18,21
**optics** 23:5
**ordering** 44:14
**original** 44:13,16
**outcome** 43:7

**outside** 6:5 7:19
  27:13
**overall** 30:4

**p**

**p&l** 2:6,8 7:16,23
  8:1,9,16 9:1 10:9
  10:16 13:10 15:2
  18:16 20:19 21:12
  22:4 27:14,20
**p&ls** 5:9,11,19 6:1
  16:20 18:8 21:5
  22:9 24:2,4,4,5,6,7
  28:5
**p.c.** 3:6
**p.m.** 33:15 41:7
**page** 2:2 14:2
  19:22 45:11,14,17
  45:20,23 46:1,4,7
  46:10,13,15
**pages** 45:9
**paid** 20:18 21:17
  22:7,9 39:25
  40:12
**paper** 17:21
**part** 25:12
**partially** 4:9
**parties** 42:22,25
  43:13 44:14
**party** 34:6 42:22
  43:7,10
**patty** 31:3,11
**pay** 26:10,23
**pdf** 44:7,7
**people** 12:13,15
**period** 10:11 25:8
**periodically** 20:18
**perlowski** 3:15
  7:24 8:19,22 9:24
  11:7 12:3,6,21
  14:6,8,12 15:13,18
  17:23 19:8 21:1

Christy Bunce

March 31, 2022

Spearman, Gina v. Broker Solutions, Inc. Et Al

**[perlowski - reviewing]**

Page 7

21:25 23:18 26:24
27:3 29:2,22
31:23 32:7 33:3
36:7,12 38:17
40:3 41:3 44:1
**pie** 24:15
**piedmont** 3:7
**plaintiff** 1:5 3:2
**plaintiff's** 2:3 5:23
9:8 10:4 14:21
16:16 18:11 22:13
24:12 33:22 37:9
38:2
**please** 8:13 12:4
19:10 44:6,10,18
45:9,9
**point** 12:25 25:24
29:9
**policy** 26:4
**poorly** 32:1
**popped** 5:14
**position** 27:25
**positive** 30:4
**prepare** 5:5,20
26:11
**prepared** 6:18
16:22 22:22,24
23:24 24:16,25
25:15 31:18 34:9
35:12 37:18 39:9
**preparing** 25:4
**present** 3:22 23:1
30:3
**presented** 22:25
24:17 26:15
**pretty** 20:1
**print** 44:8
**printed** 15:24
**printer** 34:6 38:7
**prior** 28:12 30:5

**procedure** 45:6
**proceeding** 42:16
43:6,12
**process** 28:7
**produced** 4:11
5:12 6:9,11,13
17:16,18 18:23
22:17 38:14 42:5
42:13
**produces** 18:8
**production** 19:12
42:5,14,15 44:19
**professional** 43:10
**profit** 7:4,7 10:16
16:25
**profits** 8:1
**prohibited** 42:20
**public** 46:23
**pull** 4:22
**pulled** 16:4
**purport** 16:24
38:16
**purporting** 19:1
**purports** 7:2
10:15 19:10 35:16
37:12
**purpose** 23:3 25:4
**pursuant** 45:6
**put** 26:9,22

**q**

**quarters** 9:18
**question** 6:8 12:4
30:15 32:8,8,9,12
32:13,17
**questions** 31:10
41:2 42:7 43:4
**quick** 31:12 33:13

**r**

**reaction** 26:16,17
29:19 30:2,3

**read** 12:5 32:15,17
44:6 45:2
**reading** 13:21
**real** 31:12
**really** 11:16 21:15
26:17 30:15 31:7
31:17
**reason** 18:20
45:13,16,19,22,25
46:3,6,9,12,15,17
**reasons** 27:19 45:8
**recall** 9:2 19:20
20:2,17 21:7
23:22 26:17 28:14
28:19,22 29:4
30:2,7 33:11
35:10
**recap** 22:4
**recaps** 21:10,13
**receive** 20:14
**receives** 42:23
**recess** 33:15
**record** 4:23 5:8
33:23 43:5
**reduced** 43:5
**reflected** 24:1,4,5
24:8
**reflects** 11:5
**regarding** 20:5
**region** 7:5,19 20:8
26:6 35:16 36:21
39:25 40:2,14
**regions** 6:4 7:5
17:2,6 26:8,12
**reimbursed** 36:11
**reimbursement**
36:4,5 38:8 39:21
**reimbursements**
39:19
**reiterate** 31:15

**related** 17:7 42:16
**relates** 26:3
**relationship** 42:20
43:8
**relative** 43:6
**remember** 4:7,14
4:17 22:18 23:2
24:17 25:10,12,22
26:13
**remind** 6:22
**remote** 1:16
**repeat** 4:19 12:4
32:12,13
**report** 17:1
**reporter** 12:5
32:15,18 42:8,11
**reporting** 10:8
20:3
**reports** 10:24
17:16 36:14 42:24
**represent** 19:10
23:14,15 40:11
**represented** 23:8
**represents** 42:4,9
**request** 42:17,25
**requested** 12:5
32:15
**requests** 39:20
**reserved** 41:8 44:6
**resigned** 28:10
30:10
**resume** 4:10
**retail** 6:5 7:19
27:13
**returned** 44:12,15
**review** 5:19 20:18
20:19,20 44:6
**reviewed** 5:9 6:1
19:16 20:23 21:4
**reviewing** 22:3

Christy Bunce
Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

[rick - teaming]

Page 8

**rick** 27:24 31:4,11
**right** 5:7 7:11,22
  9:16 10:2 13:7,24
  14:4 19:21 27:10
  28:1 36:25 44:6
**road** 3:7
**roll** 36:3
**rolling** 2:6,8 10:9
  10:16 15:2
**roswell** 44:22
**rough** 31:18
**round** 27:4
**roundtable** 28:20
  28:21
**rpr** 1:17 43:17
**rule** 45:6
**rules** 45:6
**run** 27:12,24

**s**

**s** 39:6
**saw** 20:23 24:4,7
**says** 7:10,14 9:21
  10:8 13:22 14:3
  15:7 19:22 36:1
  38:7
**screen** 6:1 10:5
  11:24 13:21 16:17
  18:12 22:14 24:13
  33:24
**scroll** 40:6
**se** 2:14
**seal** 44:13
**second** 5:6 9:18
  32:7
**see** 5:3 6:19,21 8:6
  8:18 9:1,19 11:10
  12:18 13:1,8,14,20
  15:12,16 21:8
  22:12 23:12 30:1
  34:1,13 35:22
  38:10,10,11 39:1,3

39:6,7 40:7
**seen** 9:12 25:2,3
**send** 19:17 22:5
  33:19 44:13,18
**senior** 3:24
**sent** 5:9,20 19:16
  20:10,17
**september** 10:10
  10:18 11:4,22,23
  12:18 14:5
**serve** 43:12
**services** 42:23
**share** 4:20
**shared** 25:19,23
  35:8
**sharing** 35:10
**shocked** 26:19,21
  27:5
**show** 6:10 7:2
  10:15 11:24 16:24
  19:1 21:14,15
  22:5 25:6 35:16
  37:12,25 38:11,16
  39:13
**showed** 12:9
**showing** 6:5 10:16
  16:25 22:19 35:20
  38:7,21
**shows** 7:4,6,9,18
  14:4 19:4 24:22
  34:15 36:4
**sign** 44:6
**signature** 41:8
  43:15 44:2,16
  46:20
**signed** 44:10,12,15
**similar** 14:24
**single** 17:17 21:5
  21:16
**snapshot** 11:20

**solely** 43:11
**solutions** 1:7 42:1
**sophisticated** 28:7
**sorry** 5:13,18 6:13
  14:9 17:22 23:19
  24:20 34:14,15
**sources** 16:4
**southeast** 10:10
  15:3 19:11,18
  20:8 24:22 25:18
  34:8 35:16 36:21
  38:22,24 39:25
  40:1,13
**spearman** 1:4 3:25
  12:17 15:11,16
  25:11,20 26:15
  28:9,16 30:9,13,18
  30:24 31:21 32:4
  32:20 33:1 35:8
  40:13
**specific** 42:21
**specifically** 26:2
  32:4 33:11
**speculate** 19:9
**speculation** 21:2
  29:23 31:23 33:4
**spent** 26:18
**spreadsheet** 2:4
  2:12,16,17,18
  16:10 20:15 33:18
  34:4,21 35:5,19
  37:1,15,25 38:5
  39:23
**spreadsheets** 19:5
**standardized**
  27:13
**stands** 7:15
**state** 43:2
**stated** 43:4
**statement** 45:8

**states** 1:1
**stay** 6:16 30:13,18
  33:1
**street** 3:17
**strike** 13:25 40:1
**subcontractor**
  43:11
**submitted** 42:8,11
**subscribed** 46:21
**subsequent** 29:4
**substance** 45:7
**suite** 3:8,18 44:21
**sure** 11:11 13:23
  14:10 16:14 18:3
  18:20 31:4 40:24
**surprise** 31:20,25
  32:19
**surprised** 32:23
**svp** 9:1 13:1,6,14
  28:19
**svps** 8:18 10:25
  12:14 15:22 20:11
  20:23,23 21:8
  22:5,8 26:10,23
  28:16,23 30:3,5
**sworn** 4:2 46:21
**system** 35:3

**t**

**tab** 34:2,15 35:15
  36:19,21
**tabs** 34:1
**tag** 27:25
**take** 29:7,15 33:13
**taken** 1:16 31:17
  43:4
**talking** 21:12
  25:25 26:2,4
**te** 39:22
**team** 22:5
**teaming** 27:25

Christy Bunce

Spearman, Gina v. Broker Solutions, Inc. Et Al

March 31, 2022

**[tell - ytd]**

Page 9

**tell** 5:4 6:3,20 7:2
7:15 8:12 10:7,14
11:5,20 14:25
18:14 19:6 21:13
22:16 23:14 24:3
24:21 29:11 34:3
35:16 36:16 37:11
38:5 39:5
**telling** 20:4 26:21
40:18
**terms** 43:11
**testified** 4:3 8:6
**testimony** 12:8
45:2,7
**thank** 12:6 41:4,5
**thargrove** 3:10
**thefinleyfirm.com**
3:10,11,12
**thing** 5:7 38:8
**things** 7:8 28:7
**think** 6:5,7 11:16
21:19 23:11 26:18
26:19 27:2,5
30:20 31:2,11,12
31:25 32:6,16,23
33:6 36:16
**third** 36:19
**thought** 28:8 29:9
30:21
**three** 9:18 15:25
18:17 34:1 36:1
**thrilled** 31:7,14
**time** 8:5,17 22:19
25:8,24 27:10,13
28:1,8 29:8 31:15
33:7 39:6 42:22
44:15
**title** 6:22
**today** 5:5,21 22:3
41:6

**told** 29:10
**top** 7:14 39:11
**total** 7:6,10 15:5
18:21 21:20 23:7
23:9,12 25:7 34:7
35:23 39:23 40:7
**totaled** 23:11
**totally** 21:11,22
**totals** 34:3,15
**transcript** 42:4,7
43:4,5 44:7,13,16
45:2
**travis** 3:4
**true** 42:6,10 43:5
**try** 21:7
**trying** 23:15 40:5
**tustin** 28:15,24
**two** 39:13
**type** 27:25
**typewriting** 43:5

**u**

**undersigned** 45:2
**understand** 12:8
13:20,20 14:10
21:8
**understanding**
12:12 20:7,9
40:10
**understood** 25:19
**united** 1:1
**units** 7:6
**upload** 9:7 10:2
22:11 24:10 36:25
**upper** 10:8
**use** 13:4 18:2 35:3
45:9

**v**

**v** 3:3
**vaguely** 25:12

**veritext** 42:1,4,9
42:19 44:10,19
**veritext.com.**
42:17
**video** 1:16
**views** 12:13
**visit** 31:12
**volume** 7:6 18:21
21:18,20
**vs** 1:6

**w**

**want** 12:8 13:19
14:10 19:2,8,9
21:7
**wanted** 17:6 31:4
37:20
**way** 6:25 9:19
11:14 12:16 14:3
26:5 28:4
**went** 11:23 12:17
25:13 31:11
**westle** 3:24
**witness** 4:8 8:21
23:19 32:16 42:12
**wondering** 28:22
**worked** 11:21
**working** 11:22
40:6
**written** 35:20
39:16
**wrong** 29:10

**y**

**y'all** 28:25
**yeah** 9:20 15:21
18:1 19:11 21:4
27:22 34:17 35:25
37:4
**year** 6:7,7,9,18,19
6:21,25 9:3 16:21
20:6 28:17 29:16

31:19,22 32:21
34:15 38:9,10,24
**yellow** 35:22
**yesterday** 5:16
**ytd** 34:3

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.