NOTES RE:

KELLY'S ORIGINAL AGREEMENTS:

AMENDED OFFER:

1. Section 1 – says that the Company is offering a provision to Kelly's agreement to indicate that if Kelly terminated without cause, then she will be paid for 120 days on loans in the pipeline (less recoverable advances and Carry-Forwards)

2. Salary – $3,520 per month ($1,760 bi-weekly)

3. Signing bonus of $500,000

4. Guaranteed Compensation set forth in Section 3 (reduced by bonuses, etc. paid)

    (i) Says that "at the conclusion of your Guarantee Period, you will revert to New American Funding's standard Loan Consultant compensation plan."

    (ii) Section 3 also says that Section 10.1 of principal agreement is to be amended to provide for payment up to 120 days on self-originated loans (section 10.2 deals with Override Bonus, and is not mentioned in document).

5. Non-Solicit – standard provisions will not be in effect for initial team brought on board by Kelly and Gina.

6. Marketing – supposed to receive 7.5bps per loan "for duration of employment to be used for approved marketing purposes on eligible banked funded volume."

7. End of letter offer states that "This letter contains the entire agreement with respect to your employment."

    (i) Says "you understand that no other offer, representation, inducements or promises not included in this letter are valid or binding."

    (ii) Also says that "The material terms of your employment as set out in this letter may not be modified or amended by verbal agreement or course of conduct, but only by a written agreement presented by Human Resources, COO (presently Christy Bunce) or CEO (presently Rick Arvielo)."

    (iii) Divisional Manager Agreement referenced in Section 4 – but not actually incorporated into the offer (says "as outlined on Schedule 1 of Divisional Manager Agreement)

8. Note that Sections 4 and 5 outline the bonus compensation – and under the prior integration provisions, those sections would control the actual compensation.


PLAINTIFF'S EXHIBIT 1

    (i)    Still have problem with Override Bonus going beyond date of termination.

DIVISION MANAGER AGREEMENT

1. Section 5.2 – Commissions / Override Bonus.

    (i) Commissions / monthly bonus-Overrides are paid pursuant to terms of Schedule 1 and/or the Outside Loan Originator Agreement Exhibit A – Commission Schedule.

    (ii) Schedules can be adjusted by the Company in its sole discretion – however, "Any changes to the commission schedule will be reviewed with Kelly Morrison prior to the change date."

    (iii) If conflict between main agreement and schedules, the schedules control.

2. Section 10.1 – First sentence says that in the event of termination (including resignation), Kelly to be paid for 30 days following termination with respect to loans she originated. Second sentence says if terminated without cause (*i.e.*, if Company fires Kelly without cause), then compensated for 120 days "on loans in the pipeline".

    (i) Does not say she will be paid for 120 days if she quits.

3. Section 10.2 – This section addresses Override Bonus. Initial sentence says must be employed as of last day of month to be compensated for month of termination. Second sentence says if terminated without cause, then compensated for 120 days on loans in the pipeline

    (i) Second sentence is identical to second sentence in 10.1

4. Section 12.4 – Georgia law to control (State in which employee resides)

5. Letter offer and Division Manager Agreement signed at the same time.

    (i) Division Manager Agreement also has integration clause.

SCHEDULE 1 – Compensation Details

1. Section 1.2 says that commissions on self-originated loans not applicable (so much for Section 10.1 of the Division Manager Agreement).

2. Section 1.3 – says that Override Bonus continues for 120 days after separation (no restriction on why) less recoverables.

    (i)    Since terms of schedules override terms of Division Manager Agreement, the 120 days applies.

    (ii)    Interestingly, it says that bonus is earned as of the last day of the month, but does not say that Kelly has to be employed as of the last day of the month to get bonus (which is consistent with the idea of being paid for 120 following end of month).

        +    Conflict with Section 3.2 which states she has to be employed on first and last day of month to receive Override Bonus and that New American "is offering Kelly Morrison 120 days following separation" less recoverables.

    (iii)    Section 1.4.B exclusion from Override Bonus not applicable (thus should be included in computation).

    (iv)    Section 1.4.C deductions from Override Bonus not applicable. Similarly, Sections 1.4.D and 1.4.E are not applicable.

3. For commissions on self-originated loans, payout is for 120 days following separation (regardless of reason of separation) (Section 3.1)

4. Section 4 requires that any changes to compensation have to be discussed with Kelly first.

SCHEDULE 4 – Eliminates Override with respect to Loan Officer guarantee periods (and is a modification of Schedule 1)

    (i)    Signed in January, 2019 – doesn't change basic terms of Schedule 1

SCHEDULE 6 – Allocates expenses for recruiting

    (i)    Signed in January, 2019 – doesn't change basic terms of Schedule 1

SCHEDULE 7 – Allows allocation of portion of override to personnel

    (i)    Signed in April, 2019 – doesn't change method for computing compensation, only causes portions of the computed override to be paid out to specified personnel

PERSONNEL STATUS CHANGE

    (i)    Dated May 6, 2019 – says that effective as of March 15, 2019, no longer receive overrides on Miguel Mouriz or Monica Martinez or their direct reports.

    (ii)    Does not indicate any other changes, and would only be effective on a prospective basis.

   (iii) Interestingly, indicates that it was done by "John Reed" – is he HR, or COO? If not, may not be binding upon anyone (per letter offer).

GINA'S ORIGINAL AGREEMENT

LETTER OFFER:

1. Similar, but not identical to Kelly's

  (i) Contains references to a "Loan Consultant Agreement" (presumably to be applied to the people Kelly/Gina are bringing in)

   + Section also has a minimum monthly funding requirement for Kelly's and Gina's division ($50M per month by 5th month) – presumably, division = region.

   + Also states that Loan Consultants are to fund at least 2 loans per month

  (ii) Strange to have those provisions in Gina's employment offer.

2. Has the same integration provision and requirements regarding modification of the agreement

3. Regional Manager Agreement is similar (but not identical) to Kelly's Divisional Manager Agreement

  (i) Clause in Section 5.2 of Kelly's agreement requiring consultation prior to change of compensation is not in Gina's agreement

  (ii) The Letter Agreement states that Gina will be paid 120 days for Commissions under Section 10.1 (although the actual 10.1 doesn't have that provision).

4. Schedule 1 – Section 1.4. Kelly's has an additional override item (relating to loan production by branch manager)

5. Gina's Section 3.1 and 3.2 of Schedule 1 do not have the 120 day language.

Notes:

General: Is this schedule to apply to both Kelly and to Gina (not clear given the use of the title "Regional Senior Vice President Agreement")?

1. The new Production Bonus computation is similar to (but not exactly the same as) the existing Production Bonus computation.

    + Existing Applicable Basis Points are (i) 140 basis points (1.4%) for self generated loans/house accounts, and (ii) 75 basis points (0.75%) for all other loan volume (subject to certain items being excluded). The bonuses are to be split 70/30 between Kelly and Gina.

        ++ Presumably, there will be a new agreement for each of Kelly and Gina, and their new agreements each will adjust the basis points to reflect the 70/30 split.

    + Kelly's existing contract anticipated that the monthly loan volume would be $50,000,000.

        ++ Would appear to mean that at the 0.75% rate that the annual bonuses to be $4.5M ($50M x 12 x 0.75%) *minus* Overrides to Authorized Personnel (which are to be set forth on a schedule) (and the $50M is subject to reductions for certain items listed in Section 2.3.4)

    + Section 2.3.5 contains the same "Company can unilaterally change this" type language that was in the existing agreements. So long as the Region is significantly profitable, unlikely to do so.

        ++ Section 4 also has that language.

2. Regional Bonus. Creates a 3-tier bonus structure, with each tier presumably having a higher percentage of profits.

    + Anything over $250,000 is to be paid to employee, and anything over $600,000 is required to be paid out unless consented to by NAF.

        ++ Not sure why employee would want to obtain consent to have more than $600,000 in their account (or anything significantly over $250,000 for that matter), unless they thought that there were going to be losses in future months.

    + The determination as to whether the higher tiers apply is determined by reference to increases in volume in the first 12 months

- ++ While part of the wording appears to indicate that the percentages become permanent ("Base Allocation shall be increased"), the balance of the wording appears to make it a one-time bonus.

+ The draws against the Regional Bonus are "recoverable". Section 3.4 states that $X will be paid as a draw and that it "is subject to repayment in accordance with this Schedule".

  - ++ Presumably, it would be repaid if the account balance dropped below $250,000, but the Schedule does not say under what circumstances the Draw is to be repaid, when the determination of a required repayment is to be made, or if repayment would include taxes withheld.

Would be helpful to have the Agreement effective 3/1/20